

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK
PREMIUM LITIGATION

MDL Docket No. 1143

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLIAM J. McLEAN, NAOMI DRISCOLL and
ROGER K. BROWN and THOMAS C. BROWN,
TRUSTEES OF THE RICHARD L. BROWN
IRREVOCABLE TRUST NO. 2, DTD 3/17/90,
individually and on behalf of all others similarly
situated,

Plaintiffs,

v.

Civil Action No. 96-10411-EFH

MONY LIFE INSURANCE COMPANY F/K/A
MUTUAL LIFE INSURANCE COMPANY OF
NEW YORK,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


**NUTTER, McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
617 439-2000

*-and-*

**DEWEY BALLANTINE LLP**
1301 Avenue of the Americas
New York, NY 10019-6092
212 259-8000

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. ...................................1

STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY
PURSUANT TO LOCAL RULE 56.1 ...............................................................................5

    I.     MONY IS FACED WITH A WAVE OF DUPLICATIVE CLASS
        ACTION LITIGATION IN MULTIPLE JURISDICTIONS ......................5

    II.    MONY SEEKS AND OBTAINS MDL TREATMENT AND ALL
        PARTIES AGREE TO TREAT THE CERTIFIED *GOSHEN*
        ACTION AS THE "LEAD CASE" ..........................................................7

        A.    Certification Of A Nationwide Class Action In *Goshen* .................7

        B.    The JPML Transfers All Deceptive Sales Practices Cases
            Against The Company To This Court............................................10

        C.    The CMO Is Entered By This Court, Making *Goshen* The
            "Lead Action" And Recognizing That The Constituent
            Actions That Comprise The MDL Proceedings All "Arise
            Out Of The Same Transactions Or Occurrences" As
            *Goshen* .....................................................................................12

    III.   DISMISSAL OF THE *GOSHEN* CASE....................................................13

    IV.   AFTER SITTING ON THEIR HANDS FOR MORE THAN FIVE
        YEARS, PLAINTIFFS REACT TO *GOSHEN* BY SEEKING TO
        AMEND THEIR COMPLAINT................................................................17

ARGUMENT......................................................................................................18

    I.     THE STANDARD ..................................................................................18

    II.    *ALL* CLAIMS OF NON-OPT-OUT MEMBERS OF THE
        *GOSHEN* CLASS WHO PURCHASED THEIR POLICIES
        OUTSIDE NEW YORK -- INCLUDING McLEAN AND
        DRISCOLL -- ARE BARRED BY *RES JUDICATA* ................................20

        A.    This Court Must Apply New York's Principles of *Res
            Judicata*........................................................................................20

B.    Plaintiffs' Belated Attempt To Assert Claims Under
Chapter 93A Is Barred Under New York's Transactional
Approach To *Res Judicata* .............................................................23

    1.    The Claims Of All Non-New York Class Members
In *Goshen* Have Been Dismissed On The Merits. .............23

    2.    Absent Class Members Are Bound By The
Decisions in *Goshen*. ..........................................................24

    3.    Absent Class Members Are Barred From Asserting
Any Claims Which "Arise Out Of The Same
Transaction Or Series Of Transactions" (And Thus
"Might Have Been Litigated") In *Goshen*. .........................25

    4.    Plaintiffs' Purported Claims Under 93A Arise Out
Of The Same Transactions At Issue (And Thus
Could Have Been Litigated) In *Goshen*..............................28

C.    Even Assuming, *Arguendo*, That The Massachusetts
Plaintiffs' Claims Are Not Barred By *Res Judicata*, They
Must Nevertheless Be Dismissed As A Matter Of Law On
A Variety Of Other, Equally Dispositive Grounds.........................30

III.    THE BROWNS' ICFA CLAIM IS ALSO RIPE FOR SUMMARY
JUDGMENT ...........................................................................................31

A.    The Browns' Allegations Are Conradicted By The Express
Terms Of Their Insurance Policy And Illustrations And
Belied By Their Own Testimony.....................................................31

B.    The Statute Of Limitations Bars The Browns' ICFA Claim .........35

C.    The Browns' Class Allegations Must Be Dismissed Under
Any Circumstances ........................................................................36

CONCLUSION...............................................................................................38

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page(s)</u>

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ................................ 22

*In re Baylis*, 217 F.3d 66 (1st Cir. 2000) ........................................................................ 24

*In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.,* Nos. 03-1379,
    2003 WL 21418413 (7th Cir. June 20, 2003) ........................................................ 36

*Bunny v. Coughlin*, 187 A.D.2d 119, 593 N.Y.S.2d 354 (N.Y. App. Div.
    1993), *appeal dismissed*, 82 N.Y.2d 679, 601 N.Y.S.2d 567 (1993) .................... 24

*Charles Hester Enter., Inc. v. Illinois Founders Ins. Co.,* 484 N.E.2d 349
    (Ill. App. Ct. 1985) ................................................................................................ 37

*Chisholm-Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d
    70 (N.Y. App. Div. 1980) ...................................................................................... 26

*Chongris v. Board of Appeals*, 614 F. Supp. 998 (D. Mass. 1985), *aff'd*,
    811 F.2d 36 (1st Cir. 1987) .................................................................................... 19

*Cochran v.Quest Software, Inc.,* 328 F.3d 1 (1st Cir. 2003) ............................................ 19

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003) .............................. 19

*Cox v. American Cast Iron Pipe Co.,*784 F.2d 1546 (11th Cir. 1986) .............................. 37

*CRK Contracting of Suffolk, Inc. v. Jeffrey M. Brown & Assocs., Inc.*, 260
    A.D.2d 530, 688 N.Y.S.2d 249 (N.Y. App. Div. 1999) ......................................... 26

*Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999) ........................................................ 22

*Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177
    (1999) .................................................................................................................... 15

*Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973) ........................................................... 22

*Goshen v. Mutual. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858
    (2002) ............................................................................................................ *passim*

*Goshen v. Mutual. Life Ins. Co. of N.Y.*, No. 600466, 95-006, 1997 WL
    710669 (N.Y. Sup. Ct. Oct. 21, 1997) ............................................................ *passim*

*Gowan v. Tully*, 45 N.Y.2d 32, 407 N.Y.S.2d 650 (1978) ............................................... 26

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d
    308 (1979) ............................................................................................................. 26

Cases (cont.)                                                                    Page(s)

*Gross v. Barnett Banks, Inc.*, 934 F. Supp. 1340 (M.D. Fla. 1995)....................................22

*Hansbury v.Lee.*, 311 U.S. 32 (1940)..................................................................21

*Hartman v. Powell*, No. 00-5656, 2001 WL 410461 (D.C. Cir. Mar. 15,
    2001) ......................................................................................22

*Hyman v. Hillelson*, 79 A.D.2d 725, 434 N.Y.S.2d 742 (N.Y. App. Div.
    1980), *aff'd*, 55 N.Y.2d 624, 446 N.Y.S.2d 251 (1981) .........................................26

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)..................................22

*Joem Int'l, Ltd. v. Swedwall, Inc.*, 215 A.D.2d 530, 627 N.Y.S.2d 51 (N.Y.
    App. Div. 1995) ...........................................................................26

*Jordan v. Global Nat'l Res., Inc.*, 102 F.R.D. 45 (S.D. Ohio 1984)..................................22

*Kremer v. Chemical Const. Corp.*, 456 U.S. 461 (1982).....................................................23

*Lagen v. Balcor Co.*, 653 N.E.2d 968 (Ill. App. Ct. 1995) ..................................................31

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)........................................22

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989).............................................................22

*Loguidice v. Metropolitan Life Ins. Co.*, No. 02-2538,
    2003 WL1639236, *5 (1st Cir. July 14, 2003) .............................................30

*Lynch v. Board of State Exam'rs of Electricians*, 218 F. Supp. 2d 3 (D.
    Mass. 2002)...............................................................................23

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ..........................................22

*Marinelli Assocs. v. Helmsley-Noyes Co.*, 265 A.D.2d 1, 705 N.Y.S.2d
    571 (N.Y. App. Div. 2000) ................................................................26

*Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60
    (D. Mass. 2001)......................................................................30-31, 37

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).............................................21

*McAdams v. Massachusetts Mutual Life. Ins. Co.*, No. Civ.A.99-30284-
    FHF, 2002 WL 1067449 (D. Mass. May 15, 2002)..................................................37

*McCann v. Davis, Malm & D'Agostine*, 669 N.E.2d 1077 (Mass. 1996)...........................30

Cases (cont.)                                                                Page(s)

*Migra v. Warren City School Dist.*, 465 U.S. 75 (1984)................................................. 23

*Mulvihill v. Top-Flight Golf Co.*, No.02-2494, 2003 WL 21508373
    (1st Cir. July 2, 2003) ......................................................................... 18-19

*Newton Garment Carriers, Inc. v. Consol. Carriers Corp.*, 250 A.D.2d
    482, 673 N.Y.S.2d 631 (N.Y. App. Div. 1998) ....................................................... 26

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981)........................25-26

*Perez v. Citicorp Mortgage, Inc.*,703 N.E.2d 518 (Ill. App. Ct. 1998) .............................. 31

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................21-22

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450
    (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)................................................... 22

*Robinson v. Toyota Motor Credit Corp.*, No. 90242, 2002 WL 1038728
    (Ill. May 22, 2002) .......................................................................................... 31

*Schulz v. New York Legislature*, 278 A.D.2d 710, 718 N.Y.S.2d 422 (N.Y.
    App. Div. 2000) ............................................................................................. 26

*In re Sequoia Sys., Inc. Sec. Litig.*, Civ. A. No. 93-11331-WD, 1993 WL
    616694 (D. Mass Sept. 10, 1993) ...................................................................... 22

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)....................................................... 22

*Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (N.Y. App. Div. 1998),
    *aff'd*, 94 N.Y.2d 43 (1999)..........................................................................26-27

*Sosna v. Iowa*, 419 U.S. 393 (1975) ..................................................................... 22

*Sound Distrib. Corp. v. Ponce Acquisition Corp.*, 179 A.D.2d 469, 577
    N.Y.S.2d 863 (N.Y. App. Div. 1992) ...............................................................26-27

*SR 7 Leasing, Inc. v. Curtis*, 189 F.R.D. 681 (M.D. Ala. 1999), *aff'd*, 228
    F.3d 417 (11th Cir. 2000) ................................................................................ 22

*Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242 (1st Cir. 1987)....................................23

*Weiss v. Zayre Corp.*, Civ. A. No. 86-2919-Z, 1989 WL 168766 (D. Mass.
    Aug. 16, 1989) .............................................................................................. 22

*Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853 (Ill. 1998) .................................... 34

Statutes and Rules

U.S. Const. Art, IV, §1 ......................................................................................... 21

28 U.S.C. §1407 ............................................................................................... 11-12

28 U.S.C. §1738 ............................................................................................. *passim*

Fed. R. Civ. P. 23 .............................................................................................. 36-37

Fed. R. Civ. P. 56 ......................................................................................... 1, 18-19

Illinois Consumer Fraud and Deceptive Business Practices Act ................ ........................ *passim*

Massachusetts Consumer Fraud Act, Massachusetts General Laws Chapter 93A ...... *passim*

N.Y. Gen. Bus. Law §349 ............................................................................... *passim*

Defendant MONY Life Insurance Company (formerly The Mutual Life Insurance Company of New York) ("MONY" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Fed R. Civ. P. 56, for summary judgment dismissing in its entirety the First Amended Class Action Complaint in *McLean, et al. v. MONY Life Insurance Company*, Civ. No. 96-10411-EFH (D. Mass.), one of the anchor cases in these MDL proceedings.[1] Although the instant motion is directed solely at the *McLean* action, MONY submits that, for many of the same reasons discussed herein, the time is ripe to address the merits of plaintiffs' claims in *all* of the constituent actions before this Court, all of which are susceptible to dispositive motions on substantially similar grounds. MONY is prepared to brief these motions either together (which we submit would further the interests of judicial economy and efficiency that the MDL was intended to serve) or *seriatim*, and hereby reiterates its request that the Court grant defendants relief from the stay for that purpose.

## PRELIMINARY STATEMENT

This multidistrict litigation arose out of a series of competing putative class actions filed against MONY in the mid-1990s in a variety of jurisdictions across the country, all of which alleged, *inter alia*, that beginning in the early 1980s, the Company engaged in a pervasive nationwide scheme to mislead prospective policyholders in connection with the marketing and sale of MONY's whole and universal life insurance policies.[2]

---

[1] A true and correct copy of the First Amended Class Action Complaint in *McLean*, filed herein on or about July 1, 2003, is annexed as Ex. 1 to the accompanying affidavit of Daniel J. Gleason, sworn to July 31, 2003 and submitted herewith (the "Gleason Aff.").

[2] Most (but not all) of these claims focused on the sale of policies on a so-called "vanishing premium" basis. The "vanishing premium" or "premium offset" billing concept permitted

*continued on the following page...*

In March 1997, after the two primary constituent actions (*McLean* and *Snipes,*

*et al. v. The Mutual Life Insurance Co. of New York*, Civ. A. No. 4:95CV400-B-D (N.D.

Miss.)) and any tag-along "vanishing premium" and deceptive sales practices actions against

the Company had been transferred to this Court for coordinated and/or consolidated pretrial

proceedings by the Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel"),[3] the

parties agreed to, and this Court so ordered and entered, a Stipulated Case Management

Order and Coordination Plan ("CMO"), providing, *inter alia*, that all proceedings herein

(with certain limited exceptions) would remain stayed pending the final outcome of the first-

filed "vanishing premium" action against the Company, a certified, nationwide class action

entitled *Goshen v. The Mutual Life Insurance Company of New York, et al.*, Index No. 95-

600466 ("*Goshen*"), which had been commenced in November 1995 in the Commercial

---

*...continued from the preceding page*

policyholders to elect to apply non-guaranteed dividends or interest credited to their policies to accumulate sufficient cash value to cover future premiums after a certain point in time. MONY's whole life policies were often sold during the class period by independent agents or "field underwriters" who may or may not have used, among many other things, a pre-sale illustration demonstrating how this "premium offset" or "vanishing premium" billing option could work, assuming the continuation of then-current, non-guaranteed dividend and interest rates. A "premium offset" billing option does not, of course, obviate the contractual obligation to pay premiums, which remain payable in accordance with the express contractual provisions contained in the policy. Rather, it permits dividends to pay for, or offset, all or a portion of those premiums. The "premium offset" billing option can thus be used to reduce the number of years during which a policyholder must make the required premium payments out-of-pocket. However, under the express terms of the policy, the policyholder remains responsible for the full premium amount and is billed for any balance not offset by dividends. As discussed in greater detail below, the policies and aforementioned pre-sale illustrations also contained express admonitions that (a) dividends and amounts dependent on them are not guaranteed (or even estimates of future results), and (b) the policy and application are the entire contract and cannot be modified orally or in writing by any field underwriter.

[3] A true and correct copy of the December 9, 1996 order of the JPML transferring these cases to this Court is annexed as Ex. 2 to the Gleason Aff.

2

Division of the New York State Supreme Court in Manhattan.[4] In the CMO, all parties explicitly recognized that the *Goshen* case was the "lead action" and that the MDL litigation arose out of the "same transactions and occurrences as" *Goshen*, and, as discussed in greater detail below, thereby implicitly admitted that the outcome in *Goshen* would as a practical matter be determinative of most, if not all, of the claims in each of the constituent actions.

The *Goshen* case is now nearing its conclusion and is in fact over for all non-New York purchasers. The claims of *all* non-New York purchasers who did not elect to opt out of the *Goshen* action -- including, among others, two of the named plaintiffs in this case, Mr. McLean himself and fellow Massachusetts resident Naomi Driscoll, who was recently added to the caption (collectively, the "Massachusetts plaintiffs") -- have been dismissed, on the merits, by the New York court, and such dismissal has been affirmed by the New York Court of Appeals, New York's highest court.[5]

Having lost in New York, plaintiffs have recently sought and been granted leave to totally revamp their complaint, (a) deleting (and thus dismissing) all causes of action alleged in their original, nationwide class action complaint; (b) adding a new Massachusetts statewide class action claim under Chapter 93A of Massachusetts' Consumer Fraud Act based on the same set of facts; and (c) adding several new plaintiffs, including, in addition to Ms. Driscoll, two Illinois plaintiffs (the Browns) who, following (i) the voluntary dismissal of an abortive putative class action in Illinois, and (ii) a stint as co-named plaintiffs in

---

[4] A true and correct copy of the CMO, with exhibits, is annexed as Ex. 3 to the Gleason Aff. (A true and correct copy of the amended complaint in *Goshen* is Ex. A to the CMO.)

[5] Only one claim remains in *Goshen* -- a claim on behalf of New York purchasers under Section 349 of New York's General Business Law ("GBL").

3

another of the anchor cases herein (the *Snipes* case, in which all class action claims were recently voluntarily dismissed), have now apparently chosen to switch allegiances and join the *McLean* action in order to pursue a new *statewide* class action claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

Counsel in *McLean* apparently recognize, as they must, the dispositive *res judicata* impact of *Goshen* with respect to the common law claims for breach of contract, breach of fiduciary, unjust enrichment, negligence and fraudulent inducement asserted in Mr. McLean's original complaint -- all of which they have now prudently (and with MONY's consent) deleted (and thereby dismissed) -- and, by adding Ms. Driscoll, have clearly telegraphed their recognition that Massachusetts policyholders who, like McLean, received mailed notice but failed to opt out of the *Goshen* class are barred from pursuing *any* further claims. Nevertheless, plaintiffs proceed as if non-opt-out *Goshen* class members like McLean and Driscoll remain free to pursue claims under Chapter 93A in a separate action here in Massachusetts.

They are wrong. The Massachusetts plaintiffs (by choosing not to opt out of the *Goshen* class) have had their day in court -- *and lost*. Under New York's transactional approach to *res judicata*, which the Full Faith and Credit Clause of the United States Constitution and 28 U.S.C. §1738 require this Court to apply in determining the preclusive effect of the *Goshen* decisions, any and all claims arising out of plaintiffs' purchase of MONY policies on a so-called "vanish" basis -- whether styled as claims for common law fraud or purported violations of Chapter 93A -- have been extinguished.

Meanwhile, the Browns, who, unlike the Massachusetts plaintiffs, did in fact opt out of the *Goshen* class, are ultimately in no better position for having done so. For not

4

only is the alleged "misrepresentation" on which they seek to rely flatly contradicted by the express terms of the insurance contract and pre-sale illustrations at issue, but Richard Brown's own testimony belies any claim that the Browns were in any sense "deceived" or that the alleged "misrepresentation" actually "caused" any purported injury that they claim to have suffered. For many of the same reasons, the Browns' newly-minted claim is also time-barred.

Moreover, and in any event, even assuming, *arguendo*, that the Browns could ever make out a claim under the ICFA on an *individual* basis, their *class* allegations would still have to be dismissed, since (a) as discussed above with respect to McLean and Driscoll, the only MONY policyholders with "live" claims are those who opted-out of *Goshen*, (b) a class action brought by or on behalf of a class composed of opt-outs from another certified class could *never* be certified, and (c) even if it could, plaintiffs still could not satisfy, *inter alia*, the numerosity requirement given that only *eleven* Illinois policyholders opted out of *Goshen*. In other words, for all of their caption-hopping and claim-splitting, the Browns are right back where they started. They have simply jumped from one sinking ship to another.

## STATEMENT OF MATERIAL FACTS AND
## PROCEDURAL HISTORY PURSUANT TO LOCAL RULE 56.1

**I.    MONY Is Faced With A Wave of Duplicative
Class Action Litigation In Multiple Jurisdictions**

On November 29, 1995, the *Goshen* case was filed in New York State Supreme Court in Manhattan, alleging deceptive sales practices in connection with the sale of whole and universal life insurance policies on a so-called "vanishing premium" basis from 1982 to 1995. *See* Gleason Aff. Ex. 3 (Tab A). More specifically, in *Goshen*, the first putative "vanishing premium" class action brought against MONY, plaintiff alleged nine

5

separate causes of action based on the alleged existence of a fraudulent "scheme" on the part of MONY's top-level management with respect to the marketing and sale of policies during that period, and sought certification of a nationwide class with respect thereto. *See id.*[6]

Shortly after the filing of the *Goshen* complaint, copycat class actions (including the instant case) were filed in federal court against MONY in Massachusetts, Mississippi and Illinois, alleging substantially similar claims. The first of these actions, the *Snipes* action, was filed in mid-December 1995 in the United States District Court for the Northern District of Mississippi. *Snipes*, which was for all intents and purposes a carbon copy of *Goshen*, was, like *Goshen*, purportedly brought on behalf of a nationwide class of MONY policyholders. As originally filed, the *Snipes* complaint, similar to the *Goshen* complaint, contained causes of action for intentional misrepresentation, fraudulent inducement, fraudulent concealment, fraud and deceptive sales practices, negligence, negligent misrepresentation, and intentional interference with contract rights, based on the same allegedly deceptive sales practices at issue in *Goshen*, but named only purported Mississippi residents Snipes, Cox, Henry and Horton as would-be class representatives.[7]

Thereafter, on February 28, 1996, the instant action, another purported nationwide "vanishing premium" class action, was filed in this Court by Mr. McLean, a

---

[6] The amended *Goshen* complaint asserted causes of action for breach of contract, fraud, fraudulent inducement, negligent misrepresentation, negligence, breach of fiduciary duty and violations of GBL §349 and N.Y. Insurance Law §§2123 and 4226. *See id.*

[7] In late January 1996, after the voluntary dismissal of an abortive putative class action in Illinois, an amended complaint was filed in *Snipes* naming alleged Illinois residents Roger and Thomas Brown, as Trustees of the Richard L. Brown Irrevocable Trust #2, 3/17/90 (the "Browns"), as additional purported class representatives. As noted above (and further discussed below), the Browns, having apparently switched allegiances, now appear as co-named plaintiffs in the instant action. *See infra.*

769856

Massachusetts resident, on behalf of a virtually identical putative class, asserting virtually identical claims for breach of contract, breach of fiduciary duty, unjust enrichment, negligence, reckless, wanton and/or negligent supervision, fraudulent inducement and negligent misrepresentation. Significantly, for reasons that have never been explained, the original *McLean* complaint, unlike the complaint in *Goshen*, did not purport to assert a claim under *any* state's consumer fraud statute.

With the filing of these copycat actions, MONY was faced with a decision: litigate each of these cases separately (and risk inconsistent adjudications and spiraling defense costs in fending off multiple plaintiffs) or find some way to centralize them and reduce (if not eliminate) the risk of multiple-track state and federal litigation across the country and the myriad problems attendant thereto. For obvious reasons, MONY chose the latter course.

## II. MONY Seeks And Obtains MDL Treatment And All Parties Agree To Treat The Certified *Goshen* Action As The "Lead Case"

### A. Certification Of A Nationwide Class In *Goshen*

The pendency of multiple, overlapping class actions in various far-flung jurisdictions, coupled with the "top-down" nature of plaintiffs' allegations and the fact that MONY was convinced that such claims could be decided by reference to uniform policy language and the standardized disclosures accompanying all Company-approved pre-sale illustrations, ultimately led the Company to agree to, and the New York trial court to order, certification of a nationwide class in the *Goshen* action. The *Goshen* case was selected as the lead case because, in addition to being the first-filed case, MONY was incorporated and headquartered in New York, its activities were heavily regulated by the New York State Insurance Department, the *Goshen* complaint was the most comprehensive and the claims

7

asserted therein (including statutory claims under the New York Insurance and General Business Laws) were governed by the law of New York, which all parties agreed was the only state whose law could constitutionally be applied to all class members nationwide.

Accordingly, on June 7, 1996, the New York court issued a decision granting certification of *Goshen* as a nationwide class action. The class ultimately certified included:

> all persons or entities . . . who have, or at the time of the policy's termination had, an interest in one or more whole life or universal life insurance policies issued by Defendants . . . and were harmed due to Defendants' alleged wrongful conduct with respect to the sale of Policies on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995. [8]

Notice of the certification in *Goshen* was thereafter provided by U.S. mail to the approximately 97,000 policyholders nationwide who could be identified through reasonable effort -- including Mr. McLean and the Browns -- and to the balance of the class by publication of a copy of the notice in the national editions of the *New York Times* and *USA Today*.[9]

In addition to, among other things, the class definition and a description of the litigation, the *Goshen* class notice contained the following information:

---

[8] Copies of the June 7, 1996 decision granting certification in *Goshen*, together with the original and amended class certification orders entered pursuant thereto, dated August 13, 1996 and December 6, 1996, respectively, are annexed as collective Ex. 4 to the Gleason Aff.

[9] True and correct copies of the mailed and publication notices in *Goshen* are annexed as collective Ex. 5 to the Gleason Aff. Because Ms. Driscoll had at that time failed to execute a so-called "billing election" form in connection with her alleged purchase of a MONY policy on a "vanish" basis, she was not identified to receive mailed notice. However, if and to the extent she in fact purchased on a "vanish" basis, Ms. Driscoll is clearly a member of the Goshen class as defined and had the benefit of the publication notice described in the text.

769856

### YOUR STATUS AS A CLASS MEMBER

*If you are a member of the Class, you will be bound by any judgment in the Action, whether favorable or unfavorable.* As a member of the Class, you may share in any recovery or relief obtained on behalf of the Class and *you will be precluded from prosecuting your claim individually.*

\* \* \*

If you are and wish to remain a member of the Class, you do not have to take any further steps at this time. *You will automatically be a member of the Class, unless you request exclusion in accordance with the procedure set forth in paragraph (e) below.*

\* \* \*

(e) Any member of the Class may request to be excluded and not bound by these proceedings. *If you do not wish to be included as a Class member, you must ask the Court to exclude you from the Class* by mailing a signed letter requesting exclusion to:

| | |
|---|---|
| Regina L. LaPolla, Esq. | James P. Smith III, Esq. |
| MILBERG WEISS BERSHAD  and | DEWEY BALLANTINE |
| HYNES & LERACH LLP | 1301 Avenue of the Americas |
| One Pennsylvania Plaza | New York, New York 10019- |
| New York, New York 10119-0165 | 6092 |

The request for exclusion must . . . be postmarked on or before January 21, 1997. If your request for exclusion is timely mailed, you will be excluded from the Class, and you will not be bound by any judgment, favorable or unfavorable, entered in the Action, and you will not share in the recovery, if any, or be precluded from prosecuting you own claim. . . . *Persons who do not exclude themselves in the manner described herein will be deemed to have consented to the Court's exercise of jurisdiction over the Class and each member thereof.*

Gleason Aff. Ex. 5 at 2 (bold in original; italics added).

Plaintiffs and defendants agreed, and the New York trial court expressly found, that the method, form and content of the notice:

meet the requirements of Article 9 of [New York's] Civil Practice Law and Rules and due process and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

9

Order Providing for Notice to the Class, dated December 6, 1996.[10]

While the Browns opted out of the *Goshen* class, McLean and Driscoll did not. In fact, MONY's records indicate that there were *no* Massachusetts opt outs from the *Goshen* class and only *eleven* Illinois opt-outs -- including the Browns. *See* Gleason Aff. ¶3.

**B.     The JPML Transfers All Deceptive Sales
        Practices Cases Against The Company To This Court**

Meanwhile, MONY had filed a motion before the JPML pursuant to 28 U.S.C. §1407 to centralize this action and the *Snipes* case (the only two putative "vanishing premium" class actions against the Company then pending in federal court) either in the Southern District of New York or, alternatively, in this Court, on the grounds, *inter alia*, that such centralization would facilitate coordination with the first-filed *Goshen* action.  On December 9, 1996, consistent with its treatment of other life insurance companies faced with similar deceptive sales practice claims, the JPML recognized the enormous burden -- both for the parties and the courts -- of litigating such actions in multiple fora and ordered the centralization of the *McLean* and *Snipes* actions in this Court as MDL No. 1143. *See In re Mutual Life Insurance Company of New York Premium Litig.*, MDL Docket No. 1143, Transfer Or. (J.P.M.L. Dec. 9, 1996) (Gleason Aff. Ex. 2).

---

[10] A true and correct copy of December 6, 1996 order is annexed as Ex. 6 to the Gleason Aff. *See also* Affidavit of Anthony F. Recine, Vice President and Chief Litigation Counsel for MONY, sworn to November 14, 1996 and submitted to the New York trial court (a true and correct copy of which is annexed as Ex. 7 to the Gleason Aff.), which details the procedure undertaken by MONY to identify absent class members; and Affidavits of Regina L. LaPolla of Milberg Weiss Bershad Hynes & Lerach LLP, counsel of record for the *Goshen* class, sworn to February 3, 1997 and March 21, 1997, respectively (copies of which are annexed as collective Ex. 8 to the Gleason Aff.), which were submitted to the New York trial court as proof of compliance with the court's order providing for notice to the class.

769856

In its Order, the Panel found that the consolidated actions:

> involve common questions of fact arising out of allegations that MONY fraudulently misled plaintiffs, and the overlapping nationwide classes they seek to represent, to purchase MONY insurance policies through the use of a scheme orchestrated from MONY's headquarters with policy illustrations and sales techniques showing that the premiums would "vanish" after a certain number of years.

*Id.* The Panel thus concluded that:

> Centralization under Section 1407 in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, while accordingly being desirable in order to avoid duplication of discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

*Id.* Significantly, in ordering transfer, the Panel was "persuaded that the District of Massachusetts is the appropriate transferee forum for this docket" in large part because "Massachusetts is reasonably close and accessible to New York, where . . . a related New York state court action is pending." *Id.*

Since the inception of MDL No. 1143, more than a dozen additional class or individual "tag-along" actions, asserting essentially the same or similar allegations in connection with the sale of whole and universal life policies, have been transferred to MDL No. 1143.[11]   All of these cases are premised on a common legal theory, namely, the

---

[11] *See Ballard v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 6:96-3019 (N.D. Ala.); *Marshall v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 6:96-3179 (N.D. Ala.); *Lewis v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 2:97-252 (M.D. Ala.); *Farrior v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 2:97-302 (M.D. Ala.); *Griffith v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 7:97-411 (N.D. Ala.); *Woodson, et al. v. Mutual Life Ins. Co. of New York, et al.,* C.A. No. 6:97-609 (W.D. La.); *Jones, et al. v. Mutual Life Ins. Co. of New York and MONY Life Ins. Co. of Am.,* C.A. No. 2:97-4392 (E.D. Pa.); *Rosen v. MONY Life Ins. Co. of Am.,* Civ. A. No. 99-118 (E.D. Ky.); *Plaster v. MONY Life Ins. Co., et al.,* No. 99-3228-CV-S-4-DBB (W.D. Mo.); *Goeke v. MONY Life Ins. Co. of Am.,* C.A. No. 3:00-918 (M.D. Pa.); *Grainger v. MONY Life Ins. Co.,* CV01-237 (S.D. Ga.) ("*Grainger I*"); *Pifalo, et al. v. MONY Life Ins. Co. of Am.,* No. 02-CIV-143 (W.D.

*continued on the following page...*

11

769856

existence of a purported fraudulent scheme whereby MONY allegedly promoted the use of

misleading illustrations, sales materials and/or policies that misrepresented or failed to

disclose material information relating to current and expected future investment

performance, dividends and interest rates, thereby leading policyholders to believe that after

the payment of either a single premium or a set number of premiums in a fixed amount over

a specified number of years, they would -- contrary to the express terms of their insurance

policies -- never have to pay additional premiums "out of pocket."[12]

C.    **The CMO Is Entered By This Court, Making *Goshen***
      **The "Lead Action" And Recognizing That The Constituent**
      **Actions That Comprise The MDL Proceedings All "Arise**
      **Out Of The Same Transactions Or Occurrences" As *Goshen***

Subsequent to the transfer of MDL No. 1143 to this Court, the parties

negotiated and ultimately agreed to the terms of the CMO, which was so ordered and

entered by this Court on or about March 14, 1997. *See* Gleason Aff. Ex. 3. Pursuant to the

CMO, plaintiffs' counsel in all of the constituent MDL cases were afforded access, if they so

chose, to all of the discovery materials generated in *Goshen*, while all other proceedings in

the multidistrict litigation (other than remand motions) were stayed pending the final

---

*...continued from the preceding page*

Pa.); *M&A Electric Co., et al. v. MONY Life Insurance Company of America,* No. CV-02-N-1824-S
(N.D. Ala.); *Grainger v. Laroche and The Mutual Life Insurance Company of New York,* No. C.A.
No. 4:02-259 (S.D. Ga.) ("*Grainger II*"); *Crook v. Mutual Life Ins. Co. of New York,* No. 1:03-537
(S.D. Miss.). All but five of these cases (all of the Alabama cases with the exception of *M&A
Electric* have been settled) remain pending in this Court as part of MDL No. 1143.

[12] A variation on this theme is presented by the *Rosen* and *M&A Electric* cases, in which the
plaintiffs allege that they were deceived into believing that -- contrary to the express terms of their
policies -- the payment of a so-called "scheduled amount" each year guaranteed the continuation of
their universal life insurance coverage in perpetuity.

12

outcome of the *Goshen* case.  *See id.*  The parties and the Court agreed that a stay was appropriate because, they agreed, *Goshen* should be treated as the "lead case."  *See id.*

> The CMO could not have been any clearer on this point:
>
> > [T]he claims asserted in these coordinated and consolidated pre-trial proceedings are *substantially similar to, and **arise out of the same transactions or occurrences** as,* the claims asserted in the certified class action entitled [*Goshen v. MONY*], which is currently pending in the Supreme Court of the State of New York[;] . . . the purported classes sought to be represented in the multidistrict litigation are *substantially identical* to the nationwide class previously certified in the *Goshen* action; . . . and the parties to this multidistrict litigation are . . . *willing to treat the Goshen action as the **lead action*** . . . .

*Id.* at 1 (emphasis added).  Not surprisingly, in light of these admissions,[13] this Court has at various status conferences indicated that upon final resolution of the *Goshen* action, it is prepared to address the issue of the *res judicata* effect of that decision on absent class members as a first order of business.  With respect to all such class members who purchased their policies outside New York and did not affirmatively opt out of the *Goshen* class, the time has come.

### III.   Dismissal Of The *Goshen* Case

Back in New York, subsequent to class certification, the parties to the *Goshen* action engaged in an extended period of negotiated discovery, including the production of approximately a quarter of a million pages of documents.  Then, on April 1,

---

[13] The CMO was signed, *inter alia,* by Richard T. Phillips of the Smith Phillips firm in Mississippi, counsel for plaintiffs in *Snipes*, and David Pastor of Pastor and Gilman, counsel for plaintiffs in the instant action, who were appointed Plaintiffs' Co-Lead/Liaison Counsel in the MDL proceedings pursuant to the CMO.  *See* Gleason Aff. Ex. 3 at 2.

769856

1997, the Company moved for summary judgment. Depositions of various high-ranking Company witnesses (at which Plaintiffs' Co-Lead Counsel herein appeared) followed.

In a memorandum decision and order dated October 21, 1997, the New York trial court granted MONY's motion in its entirety, dismissing all nine causes of action originally asserted in the *Goshen* complaint, primarily on the grounds that the standardized contractual provisions and disclosures in MONY's pre-sale illustrations precluded any claims sounding either in fraud or breach of contract, as well as any showing of a material misrepresentation or omission, as a matter of law.[14] That conclusion, the court held, was unaffected by any of the so-called "evidence" adduced by plaintiffs during discovery and submitted -- to an "excessive" degree -- in their attempt to fend off the Company's motion. *See Goshen v. The Mutual Life Ins. Co. of New York*, No. 600466, 95-006, 1997 WL 710669 (N.Y. Sup. Ct. Oct. 21, 1997).[15] Significantly, the New York trial court also dismissed the GBL §349 claims of the former class representative, Florida resident Paul A. Goshen, and all other non-New York purchasers, on the merits, on the alternative grounds that policyholders who did not purchase their policies in New York could not satisfy the element of the statute requiring that the alleged deceptive conduct occur during a consumer transaction "in this state":

> Initially, it is noted that, by its terms, GBL §349 is applicable herein only to those claims which arose out of transactions occurring in New York State, and so may not be raised in favor of any plaintiff who

---

[14] While styled a motion to dismiss and/or for summary judgment, MONY's motion sought, in essence, judgment on the pleadings on the force of the "top-down" policy and illustration language.

[15] A copy of the New York trial court's October 21, 1997 order is annexed as Ex. 9 to the Gleason Aff.

14

claims to have been injured by the purchase of insurance in any other jurisdiction. The parties' agreement that New York law should apply to this action cannot serve to alter the language and intent of the statute. Consequently, any valid claim under GBL §349 is necessarily limited to persons whose policies were sold to them in the State of New York.

* * *

Accordingly, it is

ORDERED that the motion for summary judgment dismissing the Complaint is granted; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

*Id.* at 13. Pursuant to that decision and order, on October 29, 1997, a *final judgment* dismissing all claims -- including the GBL §349 claims of Mr. Goshen and all other non-New York purchasers -- *"on the merits"* and *"with prejudice"* was entered in the Supreme Court, New York County. *See* Gleason Aff. Ex. 10 ("IT IS HEREBY ADJUDGED that the Complaint is dismissed *in its entirety with prejudice on the merits …."*) (emphasis added).

Plaintiffs thereafter appealed, and on December 20, 1999, the New York Court of Appeals affirmed, with one exception, finding that a triable issue of fact existed under GBL §349 with respect to whether, taking into account the entire circumstances surrounding the marketing and sale of a life insurance policy on a "vanishing premium" basis, a reasonable consumer acting reasonably would have been deceived in a material way. *See Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) (annexed as Ex. 11 to the Gleason Aff.).

On remittitur to the trial court, MONY responded by, *inter alia*, moving for decertification of the class with respect to the reinstated GBL §349 claim on the grounds, among others, that Mr. Goshen, as a Florida purchaser, was no longer an adequate or typical class representative, since, pursuant to the New York trial court's October 21, 1997 holding,

15

769856

which had remained undisturbed on appeal, only *New York* purchasers could ever even hope to satisfy the first element of a claim under GBL §349 -- deception in New York --it being axiomatic that a class representative must be a member of the class he or she represents. While the New York trial court denied the motion to decertify at that time, it nevertheless (a) reconfirmed that neither Mr. Goshen nor any other non-New York purchaser could pursue a GBL §349 claim and (b) determined that Mr. Goshen could therefore no longer serve as class representative and dismissed him from the case.[16]

Plaintiffs once again appealed, and on July 2, 2002, New York's highest court unanimously affirmed the dismissal of Mr. Goshen's claim and the claims of all other policyholders who purchased their policies outside of New York, holding that it is an *element of a claim* under GBL §349 that "the transaction in which the consumer is [allegedly] deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325, 746 N.Y.S.2d 858, 864 (2002) (annexed as Ex. 13 to the Gleason Aff.).[17] In so doing, the court not only reiterated its prior holding that in order to establish a §349 violation, the allegedly deceptive "acts or practices" must be misleading to a "reasonable consumer" acting reasonably under the circumstances (*see id.*), but also held that "'hatching

---

[16] A true and correct copy of the trial court's August 16, 2000 decision reconfirming its decision dismissing the GBL §349 claims of non-New York purchasers is annexed as Ex. 12 to the Gleason Aff. In connection with Goshen's dismissal, the court permitted Sara M. DeFilippo and Stephen M. DeFilippo (who are, allegedly, New York purchasers) to intervene.

[17] The court thus concluded that non-New York purchasers "have not stated a claim for relief under GBL §349." *Id.* To this extent, the July 2, 2002 decision constituted a reaffirmation of the final judgment entered pursuant to the trial court's October 21, 1997 decision in *Goshen* which, *inter alia*, dismissed the GBL §349 claims of non-New York purchasers for failure to establish a New York transaction and expressly stated that that judgment was "*with prejudice on the merits.*" *See* Gleason Aff. Ex. 10 (emphasis added).

16

a scheme' or originating a marketing campaign" -- in other words, "top-down" conduct -- cannot "in and of itself constitute an actionable deceptive act or practice under the statute." *Id.*

On the contrary, the court stressed that "[t]he phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Id.* Accordingly, the court held that "[t]he origin of any advertising or promotional conduct is irrelevant if the deception itself . . . did not result in a transaction in which the consumer was harmed." *Id.* Such deception and the resulting transaction, the court held, must occur in New York. So ended the *Goshen* litigation for all non-New York purchasers.

## IV.   After Sitting On Their Hands For More Than Five Years, Plaintiffs React To *Goshen* By Seeking To Amend Their Complaint

Having previously acknowledged the controlling nature of *Goshen*, plaintiffs' counsel in the *McLean* case (and the other constituent actions) were content to play "wait and see" for approximately *five and a half years* while the *Goshen* case ran its course. On the heels of the New York Court of Appeals' most recent decision in that case, however -- it having become painfully apparent that plaintiffs had lost -- the *McLean* plaintiffs (along with plaintiffs in the *Snipes* and *Jones* cases), scrambled to rewrite their complaints in an effort to find a claim that had not already been rejected by the *Goshen* court.

On September 20, 2002, Mr. McLean filed a motion seeking leave to amend his complaint to: (a) delete (and thus dismiss) all causes of action alleged in his original, nationwide class action complaint; (b) add Ms. Driscoll and the Browns as co-named plaintiffs (having apparently recognized that Mr. McLean was barred from pursuing any claim by the clear preclusive effect of *Goshen*); and (c) add new statewide class action

17

claims under the Massachusetts Consumer Fraud Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, respectively. MONY acquiesced in the deletion and dismissal of all of McLean's original claims and class action allegations, but opposed the motion in all other respects as untimely and futile in light, *inter alia*, of the *res judicata* effect of *Goshen*, on the one hand, and the clear language of the Brown plaintiffs' policy and illustration, and their own damning admissions at deposition, on the other.

Recognizing that the same grounds MONY had identified as evidencing the futility of plaintiffs' proposed amendments could be addressed by a dispositive motion, on June 26, 2003, the Court granted the McLean plaintiffs leave to file their amended complaint, granted MONY's request for leave to file a dispositive motion directed at the amended complaint and stayed discovery herein pending determination of MONY's motion. (A true and correct copy of this Court's June 26, 2003 order is annexed as Ex. 14 to the Gleason Aff.) Plaintiffs' First Amended Class Action Complaint was thereafter filed on or about July 1, 2003.

## ARGUMENT

### I.

### THE STANDARD

The role of summary judgment is to "look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose." *Mulvihill v. Top-Flite Golf Co.*, No. 02-2494, 2003 WL 21508373, *2 (1st Cir. July 2, 2003). Thus, summary judgment is appropriate so long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

While, "in conducting this *tamisage*, the district court must scrutinize the record in the light most flattering to the party opposing the motion," this does not "relieve the nonmovant of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill*, 2003 WL 21508373, *3. Nor does it mean that the court "must swallow the predicate for the nonmovant's opposition hook, line, and sinker; among other things, [the court] may ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

Here, as demonstrated below, even a cursory review of the record leads ineluctably to the conclusion that MONY is entitled to judgment as a matter of law. Indeed, no evidence could ever be adduced to create any triable issues with respect to (a) the clear *res judicata* impact of *Goshen* on the claims of McLean and Driscoll (and all other non-opt-out members of the *Goshen* class),[18] or (b) the fact that Richard Brown's own sworn testimony about his understanding of the insurance policy the Browns bought (not to mention the clear terms of the policy and illustration disclaimers) negates any finding of "deception" or "causation" under the ICFA as a matter of law.

---

[18] *Res judicata* could just as easily dispose of McLean and Driscoll's claims on a motion to dismiss or for judgment on the pleadings. *See, e.g., In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003); *Chongris v. Board of Appeals*, 614 F. Supp. 998 (D. Mass. 1985), *aff'd on other grounds*, 811 F.2d 36 (1st Cir. 1987).

19

II.

## *ALL* CLAIMS OF NON-OPT-OUT MEMBERS OF THE *GOSHEN* CLASS WHO PURCHASED THEIR POLICIES OUTSIDE NEW YORK -- INCLUDING McLEAN AND DRISCOLL -- ARE BARRED BY *RES JUDICATA*

For the reasons discussed below, the Massachusetts plaintiffs' amendment of their complaint to add a claim under Chapter 93A gets them nowhere. This is so because *all* "vanishing premium" claims of *Goshen* class members who purchased their policies outside New York and failed to opt out of the class -- including McLean and Driscoll -- have now been extinguished. Such policyholders are not, as plaintiffs' counsel has previously suggested, in any state of "limbo." *See* Pls. Mot. for Lv. to File First Amended Compl., dated September 20, 2002, at 4. On the contrary, in light of the New York Court of Appeals' July 2, 2002 decision in *Goshen*, their situation could not be any clearer. *All* of their claims -- including their attempted claim under GBL §349 and any other potential claims arising out the same transactions or occurrences -- have been *dismissed* with prejudice and on the merits. In short, no amendment can salvage a claim by the Massachusetts plaintiffs and others like them who did not opt out of the nationwide *Goshen* class, *i.e.*, the overwhelming majority of the absent class members herein.

### A.    This Court Must Apply New York's Principles of *Res Judicata*

Federal "full faith and credit" principles require that, once due process has been satisfied, federal and state courts must give the same preclusive effect to the judgment of a foreign state's court as would be given it by the courts of the state in which it was

20

769856