rendered (here New York).[19]  Here, it is beyond dispute that the procedures employed in the *Goshen* action comported with the constitutional requirements of due process, both in terms of the scope and content of the notice provided to the class and the adequacy of the representation afforded by the designated class representative and class counsel.  *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940) (due process inquiry has two components: sufficiency of notice and adequacy of representation); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same).

       *First*, as noted above, the mailed and publication notice provided to class members in *Goshen* was, as plaintiffs' counsel therein agreed, the best notice practicable under the circumstances, individual notice having been given to all class members who could be identified through reasonable effort.  *See* Gleason Aff. Ex.7 ¶3 (MONY's "procedure [for identifying mailed notice recipients using, *inter alia*, billing election forms], in conjunction with publication notice, is the best we are able to do by way of identifying [class members] given the available information"); Gleason Aff. Ex. 6 (expressly finding that notice afforded *Goshen* class members satisfied due process and was "best notice

---

[19] The Full Faith and Credit Clause of the United States Constitution provides, in pertinent part, that:

> Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State.

U.S. Const. Art. IV, §1.  Similarly, the so-called Full Faith and Credit Statute, 28 U.S.C. §1738, provides, in pertinent part, that the:

> judicial proceedings [of any court of any state] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the Courts of such State . . . from which they were taken.

The judgment of a state court in a class action is the product of a "judicial proceeding" within the meaning of §1738, and is therefore entitled to full faith and credit. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).

21

practicable under the circumstances").[20] It is well settled that the "best notice practicable" standard does not require *actual* notice to all class members.[21] Thus, if the notice regime itself satisfied due process, as it did here, then all absent class members are bound by the result, irrespective of whether or not they actually received a notice in the mail or saw it in the newspaper. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (expressly rejecting argument that Supreme Court's decision in *Shutts* "change[d] the traditional standard for class notice from 'best practicable' to 'actually received' notice"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 261 (S.D. Ca. 1988) (same).

       *Second*, there can be no doubt that the *Goshen* class was adequately represented by Mr. Goshen and the highly experienced plaintiffs' class action firm of Milberg Weiss Bershad Hynes & Lerach, which zealously litigated the case all the way up to the highest court in New York on permissive appeals -- not once, but *twice*. *See, e.g., Sosna v. Iowa*, 419 U.S. 393 (1975); *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998); *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973).

---

[20] *See, e.g., Shutts*, 472 U.S. at 812; *In re Sequoia Sys., Inc. Sec. Litig.*, Civ. A. No. 93-11331-WD, 1993 WL 616694, at *1, 2 (D. Mass Sept. 10, 1993) (mailed notice to list compiled from party's existing files combined with publication on one or two occasions in *Wall Street Journal* and *Boston Globe* was "best notice practicable"); *Weiss v. Zayre Corp.*, Civ. A. No. 86-2919-Z, 1989 WL 168766, at *1, 2 (D. Mass. Aug. 16, 1989) (mailed notice to list of "ascertainable" class members combined with publication in *Wall Street Journal* constituted "best notice practicable").

[21] *See In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987); *Hartman v. Powell*, No. 00-5656, 2001 WL 410461 (D.C. Cir. Mar. 15, 2001); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *SR 7 Leasing, Inc. v. Curtis*, 189 F.R.D. 681 (M.D. Ala. 1999), *aff'd*, 228 F.3d 417 (11th Cir. 2000); *In re Prudential Ins. Co. of Am. Sales Practices Litig*, 962 F. Supp. 450, 528 n.52 (D.N.J. 1997). *aff'd*, 148 F.3d 283 (3d Cir. 1998); *Gross v. Barnett Banks, Inc.*, 934 F. Supp. 1340, 1344 (M.D. Fla. 1995); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994); *Langford v. Devitt*, 127 F.R.D. 41, 44 (S.D.N.Y. 1989); *Jordan v. Global Nat'l Res., Inc.*, 102 F.R.D. 45, 51 (S.D. Ohio 1984).

22

Accordingly, due process having been complied with, this Court must give the *Goshen* judgment the same *res judicata* effect it would be given by a New York court, applying New York *res judicata* principles. *See* 28 U.S.C. §1738; *see, e.g., Migra v. Warren City School Dist. Bd. Of Ed.*, 465 U.S. 75, 81 (1984); *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 (1982); *In re Baylis*, 217 F.3d 66, 70-71 (1st Cir. 2000); *Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242, 245 (1st Cir. 1987); *Lynch v. Board of State Exam'rs of Electricians*, 218 F. Supp. 2d 3 (D. Mass. 2002).

**B.    Plaintiffs' Belated Attempt To Assert Claims Under Chapter 93A Is Barred Under New York's Transactional Approach To *Res Judicata***

New York, like many other states, has adopted a so-called "transactional" approach to *res judicata* whereby all claims arising out of the same transactions or occurrences as the claims which have been finally determined will be barred, *even if those claims seek different relief or are based upon different legal theories with materially different elements of proof.* In other words, any claims which "might have been litigated" in the earlier action are precluded by *res judicata*, regardless of whether or not they were *actually* litigated. *See infra.*

**1.    The Claims Of All Non-New York Class Members In *Goshen* Have Been Dismissed On The Merits**

As a threshold matter, in order to be afforded *res judicata* effect under New York law, the prior action must have reached a final judgment on the merits. This requirement is clearly satisfied here. As previously noted, *all* claims of all non-New York class members in the *Goshen* action -- common law and statutory -- have now been finally adjudicated and dismissed *on the merits*. *See* Gleason Aff. Ex. 10 (judgment dismissing action "*in its entirety with prejudice on the merits*") (emphasis added); Gleason Aff. Ex. 12

23

at 10 (order reaffirming dismissal of GBL §349 claims of non-New York purchasers).

Indeed, while unnecessary to render the judgment "final" under New York Law, the

judgment dismissing the claims of non-New York purchasers has now been *twice* affirmed

by New York's highest court (in 1999 with respect to all common law and New York

Insurance Law claims, and in 2002 with respect to their GBL §349 claim). *See* Gleason Aff.

Ex. 11 (affirming judgment dismissing eight of nine causes of action originally asserted);

Gleason Aff. Ex. 13 (affirming dismissal of GBL §349 claims of non-New York

purchasers).[22]

### 2.    Absent Class Members Are Bound By The Decisions In *Goshen*

In addition to the requirement of a final judgment, in order for a decision in a

prior action to bar claims asserted in a later action, the second action must involve the same

parties or those in privity with the parties to the prior suit. In the class action context, this

means that the party to be bound must have been a member of a prior class the certification

of which satisfied due process. *See Bunny v. Coughlin*, 187 A.D.2d 119, 122, 593 N.Y.S.2d

354, 357 (N.Y. App. Div. 1993), *appeal dismissed*, 82 N.Y.2d 679, 601 N.Y.S.2d 567

(1993) (dismissing second class action on *res judicata* grounds based upon judgment in prior

---

[22] Any contention that the Court of Appeals' July 2, 2002 affirmance of the dismissal of the GBL §349 claims of non-New York purchasers in *Goshen* was merely on "standing" grounds and was therefore not "on the merits" ignores reality. The word "standing" appears *nowhere* in the decision. On the contrary, the Court of Appeals unanimously affirmed the dismissal of Mr. Goshen's claim and the claims of all other policyholders who purchased their policies outside of New York on the grounds that it is an *element of a claim* under GBL §349 that "the transaction in which the consumer is [allegedly] deceived must occur in New York." Gleason Aff. Ex. 13 at 4 (emphasis added). Thus, the decision turned not on issues of "standing," but on the very nature of an actionable "deceptive act or practice" under the statute. Even leaving aside the dispositive fact that the judgment it affirmed expressly so stated, the Court of Appeals' decision makes clear that this was, without a doubt, a dismissal "on the merits."

federal class action). Here, it is indisputable both that (a) the Massachusetts plaintiffs are members of the *Goshen* class; and (b) as discussed at length above, the certification of that class comported with due process. *See supra*.[23]

3. **Absent Class Members Are Barred From Asserting Any Claims Which "Arise Out Of The Same Transaction Or Series Of Transactions" (And Thus "Might Have Been Litigated") In *Goshen***

As noted above, under New York's "transactional" approach to *res judicata*, any claims which "arise out of the same transaction or series of transactions," or "might have been litigated," in the earlier action are precluded, regardless of whether or not they were *actually* litigated. *See O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) (holding that where alternative theories are available to recover what is essentially the same relief for harm arising out of the same "factual grouping" plaintiff is not justified in bringing two different actions, even where theories involve materially different elements of

---

[23] As noted above, the class definition in *Goshen* includes:

> all persons or entities . . . who have, or at the time of the policy's termination had, an interest in one or more whole life or universal life insurance policies issued by Defendants . . . and were harmed due to Defendants' alleged wrongful conduct with respect to the sale of Policies on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995.

Gleason Aff. Ex. 4. That clearly encompasses McLean and Driscoll, who together now seek to represent a class consisting of:

> all persons or entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life insurance policies issued by Defendant and purchased in Massachusetts, and were harmed due to Defendant's alleged wrongful conduct with respect to the sale of such policies on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995.

Compl. ¶21. But for the limitation to Massachusetts purchasers -- *identical*. Moreover, Mr. McLean does not (and cannot) dispute that he in fact received a copy of the individual mailed notice, and both McLean and Driscoll appear to admit -- as they must -- that they did not timely opt out of the *Goshen* class.

proof); *Schulz v. New York Legislature*, 278 A.D.2d 710, 712, 718 N.Y.S.2d 422, 425 (N.Y.

App. Div. 2000) (same); *Marinelli Assocs. v. Helmsley-Noyes Co.*, 265 A.D.2d 1, 5, 705

N.Y.S.2d 571, 574 (N.Y. App. Div. 2000) (same); *CRK Contracting of Suffolk, Inc. v.

Jefferey M. Brown & Assocs., Inc.*, 260 A.D.2d 530, 688 N.Y.S.2d 249, 250 (N.Y. App. Div.

1999) (applying *res judicata* where claim should have or could have been litigated in prior

action); *Newton Garment Carriers, Inc. v. Consolidated Carriers Corp.*, 250 A.D.2d 482,

673 N.Y.S.2d 631, 632 (N.Y. App. Div. 1998) (applying *res judicata* not only against claims

actually litigated, but also those which *might have been litigated*) (citing *Gramatan Home

Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308 (1979)); *Small v. Lorillard

Tobacco Co.*, 679 N.Y.S.2d 593 (N.Y. App. Div. 1998), *aff'd*, 94 N.Y.2d 43 (1999)

(discussed *infra*); *Joem Int'l, Ltd. v. Swedwall, Inc.*, 215 A.D.2d 530, 627 N.Y.S.2d 51 (N.Y.

App. Div. 1995) (holding that all claims arising out of same agreement were part of same

"transaction" and thus were barred by *res judicata*); *Sound Distrib. Corp. v. Ponce

Acquisition Corp.* 179 A.D.2d 469, 577 N.Y.S.2d 863 (N.Y. App. Div. 1992) (discussed

*infra*); *Hyman v. Hillelson*, 79 A.D.2d 725, 434 N.Y.S.2d 742 (N.Y. App. Div. 1980)

(barring plaintiffs from bringing adverse possession claim arising out of same conveyance of

land as earlier unsuccessful action for reformation of deed on grounds that the "gravamen of

the wrong" was the same in both suits), *aff'd*, 55 N.Y.2d 624, 446 N.Y.S.2d 251 (1981);

*Chisholm-Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70 (N.Y. App.

Div. 1980).

The New York Court of Appeals has applied the transactional approach in

evaluating the *res judicata* effect of a class action suit. *See Gowan v. Tully*, 45 N.Y.2d 32,

34, 407 N.Y.S.2d 650 (1978) (class members not permitted to advance additional legal

26

769856

theories not presented in prior class action). Similarly, in *Sound Distributing Corporation v. Ponce Acquisition Corp.*, in the context of dismissing one of defendant's counterclaims based upon the preclusive effect of a prior class action judgment rendered by a New York federal court, the New York Appellate Division, First Department (the intermediate appellate court for New York County, where the *Goshen* action is pending) reconfirmed that:

> [U]nder New York's transactional analysis to deciding *res judicata* issues, "once a claim is brought to a final conclusion, all other claims *arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking different relief*."

179 A.D.2d at 469, 577 N.Y.S.2d at 863 (emphasis added; citations omitted). More recently, in *Small v. Lorillard Tobacco Co.*, an action alleging common law fraud, violations of GBL §§349 and 350 and civil conspiracy, the First Department, in the context of decertifying several classes of New York smokers on predominance, manageability and other grounds, observed that:

> Under New York's transactional approach to *res judicata*, once a claim is brought to final conclusion, all other claims *arising out of the same transactions* are barred, *even if based on a different theory or seeking a different remedy*. Should these plaintiffs prevail, they will preclude all [absent class members'] chances of bringing potentially more lucrative damages claims for personal injury and emotional distress from nicotine addiction.

679 N.Y.S.2d at 601 (emphasis added). Here, MONY having prevailed, the claims of all absent class members who did not opt out of *Goshen* are similarly precluded.

27

769856

4.     **Plaintiffs' Purported Claims Under Chapter 93A Arise Out Of The Same Transactions At Issue (And Thus Could Have Been Litigated) in *Goshen***

In light of the foregoing, this Court, applying (as it must) New York's

principles of *res judicata*, must inevitably conclude that any claims of *Goshen* class

members arising out of "the same transaction or series of transactions at issue" in *Goshen* --

*i.e.*, any allegedly deceptive sales practices in connection with the sale of whole or universal

life insurance policies on a so-called "vanish" basis from January 1982 through December

1995 -- are barred by the *res judicata* effect of the *Goshen* decisions.

Dispositively, plaintiffs herein have already admitted that:

the claims asserted in these coordinated and consolidated pre-trial proceedings [including the *McLean* action] *arise out of the same transactions or occurrences as* . . . the claims asserted in the [*Goshen*] action

Gleason Aff. Ex. 3. In other words, plaintiffs have in effect already admitted that their

claims satisfy New York's "transactional" test for *res judicata* vis-à-vis the *Goshen* case.

Accordingly, neither of the Massachusetts plaintiffs -- given their status as members of the

*Goshen* class -- has the right to assert *any* claim, let alone a claim under Chapter 93A, in this

Court (or anywhere else). End of story.[24]

Any other ruling would stand traditional notions of "full faith and credit" and

the doctrines of *res judicata* and collateral estoppel on their head. The *Goshen* plaintiffs

made a strategic decision to proceed with a GBL §349 claim on behalf of a nationwide class

---

[24] Indeed, the only Massachusetts purchasers who could conceivably assert a claim under Chapter 93A would be those who opted out of the *Goshen* class. However, (a) as noted above, MONY's records indicate that there were *no* Massachusetts opt outs from the *Goshen* class (*see* Gleason Aff. ¶3), and (b) as discussed in greater detail below, opt-outs can in any event only sue on an individual, not a class action, basis.

on the theory that if any state's consumer fraud act could constitutionally be applied to all members of the class, it would be New York's, since plaintiffs were alleging a nationwide scheme "hatched" or "orchestrated" from MONY's New York headquarters. Obviously, this was a calculated decision taken in an attempt to avoid the insurmountable obstacles that application of the statutes of all fifty states would have presented to class certification. Again, that was *plaintiffs'* strategic decision, not MONY's.

Dispositively, moreover, McLean, Driscoll and all other non-opt out members of the *Goshen* class signed on to that decision, opting to remain part of the class knowing full well that the *Goshen* plaintiffs had chosen to put all their eggs in one consumer fraud act basket rather than proceed under other similar state statutes for non-New York purchasers. That plaintiffs ultimately lost this gamble does not mean that the claims they chose, for strategic reasons, not to assert "could not have been litigated" in the *Goshen* action, only that they weren't. As such, they have been extinguished.

Indeed, the very theory underlying representative litigation is that when the Massachusetts plaintiffs made the decision not to opt out of the *Goshen* class, the *Goshen* lawyers became *their lawyers*, and the decisions of the *Goshen* lawyers (both before and after plaintiffs made their elections to remain in the class) became *their decisions*. The very purpose of the transactional approach to *res judicata* is to prevent plaintiffs from doing exactly what the Massachusetts plaintiffs are attempting to do here, *i.e.*, bringing *some* of their claims, playing "wait and see," and then, if those claims prove unsuccessful, suing on some other previously unasserted claims held in reserve. Simply put, the Massachusetts plaintiffs (and every other non-New York, non-opt-out member of the *Goshen* class) have had their day in court -- in New York -- and lost.

**C. Even Assuming, *Arguendo*, That The Massachusetts Plaintiffs' Claims Are Not Barred By *Res Judicata*, They Must Nevertheless Be Dismissed <u>As A Matter Of Law On A Variety Of Other, Equally Dispositive Grounds</u>**

Even apart from the insurmountable hurdles posed by the *res judicata* effect of the *Goshen* decision, any claim under Chapter 93A on behalf of the Massachusetts plaintiffs would, in any event, be subject to summary dismissal. As this Court has held, in order to establish a violation of that statute, plaintiffs would be required to demonstrate, at a minimum, not only that MONY's alleged "misrepresentation" constituted a deceptive act or practice, but also that that "misrepresentation" actually "caused" their purported injuries. *See Markarian v. Connecticut Mutual Life Ins. Co.*, 202 F.R.D. 60, 68 (D. Mass. 2001) (Wolf, J.); *see also McCann v. Davis, Malm & D'Agostine*, 669 N.E.2d 1077, 1079 (Mass. 1996) (affirming jury verdict in favor of defendant where, even assuming, without deciding, that defendant's conduct constituted a 93A violation, plaintiff failed to establish causation).

Here, in light of the fact that, among other things, the alleged "misrepresentation" is flatly contradicted by the express terms of the policies and explicit disclaimers in the pre-sale illustrations at issue, plaintiffs can establish neither deception nor causation. The policy terms and illustration disclaimers also establish that the applicable four-year statute of limitations began to run at or before the time of purchase, well more than four years before this action was filed. *See Loguidice v. Metropolitan Life Ins. Co.*, No. 02-2538, 2003 WL 21639236, *5 (1st Cir. July 14, 2003) (noting that "[t]he Massachusetts courts require plaintiffs seeking to invoke the discovery rule to read . . . their insurance policies, any illustrations that accompany the policies, and their annual statements," and affirming the dismissal of, *inter alia*, plaintiff's 93A claim where a review of her insurance policy and accompanying marketing materials "would have put her on inquiry notice of her

30

claims" at the time of purchase). These grounds for dismissal, which are equally applicable under the ICFA, are discussed at greater length in the following section.

Finally, even assuming a 93A claim could withstand a dispositive motion based on the standardized, top-down documents, it would by definition be uncertifiable as a class action, since such a claim would involve a host of non-common, point-of-sale issues that would eclipse any issues common to the putative class. *See Markarian*, 202 F.R.D. at 66-69.

### III.

### THE BROWNS' ICFA CLAIM IS
### ALSO RIPE FOR SUMMARY JUDGMENT

**A.    The Browns' Allegations Are Contradicted By The Express Terms Of
Their Insurance Policy And Illustrations And Belied By Their Own Testimony**

The Browns, who, unlike the Massachusetts plaintiffs, did in fact opt out of the *Goshen* class, are ultimately in no better position for having done so. For it is well-settled that a claim cannot be maintained under the ICFA where the alleged misrepresentation at issue is contradicted by the express terms of the governing contract. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962 (Ill. 2002) (affirming dismissal of ICFA claim based on allegations that lease provisions regarding early termination and default charges were "deceptive," where plaintiffs' purported understanding of these provisions was belied by the express terms of the lease); *Perez v. Citicorp Mortgage, Inc.*, 703 N.E.2d 518, 525 (Ill. App. Ct. 1998) (affirming dismissal of ICFA claim

31

where "[t]he express terms of the mortgage contract and attendant documents clearly set forth the parties' obligations").[25]

Here, contrary to the Browns' purported understanding of how their policy worked (at least as articulated in the complaint, as opposed to their own testimony) -- *i.e.*, that five annual premiums would buy them a "paid-up" insurance policy for life -- the policy clearly states on its front cover that the "Premium Period" is "*42 Years.*"  *See* Brown policy, a copy of which is annexed as Ex. 15 to the Gleason Aff. (emphasis added).[26]  Additionally, the Statement of Policy Cost and Benefit Information states that "DIVIDENDS SHOWN ARE BASED UPON THE 1990 SCALE AND *ARE NEITHER GUARANTEES NOR ESTIMATES FOR THE FUTURE.*"  *See id.* (capitalization in original; italics added).[27]

In fact, not only is the Browns' purported understanding of how their policy worked inconsistent with the express terms of their contract, but the pre-sale illustrations which accompanied the policy stated in no uncertain terms that they were "*dependent on dividends*" and explained repeatedly (on each and every page of the illustration) that:

---

[25] *See also Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995) (affirming dismissal of, *inter alia*, ICFA claim where "cautionary language" in offering documents "negate[d] the materiality of any alleged misrepresentation or omission").

[26] Like all of MONY's policies, the Browns' policy also contained a merger/integration clause making clear that any oral or other representations outside the four corners of the policy and application form no part of the agreement between the parties and cannot modify the terms thereof. *See* Gleason Aff. Ex. 15 at §21 (providing, *inter alia*, that (a) "[t]he Policy and the application are the entire contract," and (b) "[n]o agent or other person has authority to . . . change this Policy or waive any of its provisions.").

[27] Moreover, Section 12 of the Policy, entitled "Dividends," states that "[t]his Policy's share [of dividends], *if any*, will be determined by us," clearly indicating that dividends were not only not guaranteed, but were completely discretionary with the Company.  Gleason Aff. Ex. 15 at §12 (emphasis added).

32

> *Premium payments may be required to maintain the Total Initial Death Benefit if dividends fall below the illustrated values.*

Brown Illustration, a copy of which is annexed as Ex. 16 to the Gleason Aff. (emphasis added). If that were not enough, each and every page of the illustration also referred the policyholder to the following caveat language appearing on the final page thereof:

> *Dividends shown and amounts dependent on them are based on the current dividend formula . . . .* Dividends payable on this policy will be sensitive to changes in the variable loan interest rate applicable to borrowed cash values and to the rates of return on non-borrowed investments. *Dividends illustrated are neither guarantees nor estimates of future results. If the dividends fall below the illustrated values then the non-guaranteed values shown will not be achieved. Premium offset illustrations are dependent on dividends, and premium payments will be required for a longer period of time than illustrated if dividends fall below the illustrated values. Policy value columns which are not specifically referred to as guaranteed include non-guaranteed elements (i.e., dividends) in whole or in part.*

*Id.* (emphasis added). The illustration also clearly states that it is "not valid unless accompanied by the LAST SURVIVOR WHOLE LIFE ILLUSTRATION LIMITATIONS AND DEFINITIONS disclosure form 13512SA" (a true and correct copy of which is annexed as Ex. 17 to the Gleason Aff.). That form, in turn, provides, *inter alia,* that:

> The policy with the application is the entire contract. *The illustration is not part of the contract. If values illustrated are inconsistent with the terms of the contract, the benefits, values, and premiums provided by the terms of the contract shall take precedence.*

Gleason Aff. Ex. 17 (emphasis added).

Critically, and unsurprisingly in light of the foregoing, Richard Brown, who carried out *all* negotiations relating to the purchase of the Brown policy, testified in his

33

769856

deposition[28] that, at the time he received this illustration, *he knew and understood that his premiums might not "vanish"*:

Q:    In fact you had read the caveat language that was contained within Defendant's Brown Exhibit 7 [the illustration annexed as Ex. 16 to the Gleason Aff.] –

A:    Yes.            *        *        *

Q:    And that information stated, among other things:

"That if dividends fall below the illustrated values then the non-guaranteed values shown will not be achieved and that premium offset illustrations are dependent on dividends and premium payments will be required for a longer period of time than illustrated if dividends fall below the illustrated values."

Correct?

A:    That's correct.

Q:    So you understood that much, correct?

A:    Yes.

*See* R. Brown Dep. at 140-41 (Gleason Aff. Ex. 18).

In light of this admission, the Browns cannot seriously contend that MONY's actions were somehow "deceptive," *see, e.g., Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 861-62 (Ill. 1998) (recognizing that a party cannot assert a claim under the ICFA where he or she was not "deceived"), or that any alleged "misrepresentations" by MONY "caused" any purported injury that the Browns claim to have suffered, *see id.* (granting summary judgment on ICFA claim on grounds that alleged misrepresentation

---

[28] The Browns were deposed in connection with the class certification motion filed in *Snipes* prior to MDL transfer and entry of the CMO. Excerpts from the deposition of Richard Brown, taken on June 7, 1996, are annexed as Ex. 18 to the Gleason Aff.

34

could not possibly have "caused" any purported injury where plaintiff's deposition testimony revealed that he was not in fact "deceived"). Indeed, in addition to his admission that he knew and understood at the time of purchase that the Browns might have to pay out-of-pocket premiums beyond the illustrated "vanish" date in the event dividends were reduced, Mr. Brown also admitted that his primary reason for deciding to purchase a MONY policy was not any "vanish" presentation, but his personal friendship with the MONY sales agent who showed him the illustration. *See* R. Brown Dep. at 151-52 (Gleason Aff. Ex. 18). In other words, but for this relationship, the Browns never would have purchased a MONY policy in the first place.

**B.    The Statute Of Limitations Bars The Browns' ICFA Claim**

The Browns' claim under the ICFA is, in any event, time-barred under the three-year statute of limitations applicable to such claims for the simple reason that they purchased their policy in 1990, a full five years prior to filing their complaint. *See* 815 ILCS 505/10a(e) (plaintiff must bring ICFA claim within three years of date cause of action accrues). As his own testimony once again reveals, Mr. Brown understood *at the time he received the illustration* (*i.e.*, even *before* he purchased the policy) that future premium payments might be required if dividends were to decline. Thus, even applying a "discovery rule" to the accrual of the Browns' ICFA claim would not render it timely.

Moreover, in his deposition, Mr. Brown conceded that in March of 1992, his friend and MONY agent, William Davis, informed him that "things hadn't gone as well as expected, and there would be a need for some additional premiums." R. Brown Dep. at 109 (Gleason Aff. Ex. 18). Thus, at the absolute *latest*, the Browns were fully aware in March of 1992 -- more than three years before the filing of their complaint -- that their policy would

35

769856

not generate dividends sufficient to cause their premiums to "vanish" within five years of its purchase.

**C.    The Browns' Class Allegations Must Be Dismissed Under Any Circumstances**

Finally, even assuming, *arguendo*, that the Browns could ever proceed on an individual basis with respect to their ICFA claim (which, as demonstrated above, they cannot), it is beyond dispute that class certification would *never* be appropriate under the circumstances present here and that all of their class action allegations should therefore be stricken. There are several reasons for this.

First, as discussed in the preceding section, all non-opt-out members of the *Goshen* class have already had their claims dismissed. This leaves only the opt-outs from *Goshen* -- a mere 600 policyholders nationwide -- with "live" claims against the Company. But, as the Seventh Circuit has recently confirmed, certifying *any* class composed exclusively of opt outs from another class action is inappropriate because:

> a person who opts out receives the right to go it alone, not to launch a competing class action. Preserving the right to litigate *individually*, as one's own champion, is the point of opting out . . . . What such a person now lacks is the right to represent a . . . class of others similarly situated . . . .

*In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.*, Nos. 03-1379, 03-1564, 2003 WL 21418413, *5 (7th Cir. June 20, 2003) (emphasis added). Exactly.[29] After all, people choose to opt out of a class for a reason. Usually, they do so because they either want to

---

[29] *See also* Gleason Aff. Ex. 5 (advising policyholders of their right to opt out of the *Goshen* class for the purposes of "prosecuting your claim *individually*") (emphasis added).

769856

pursue their claims *individually* or want nothing to do with litigation (presumably because they have no gripe with the defendant).[30]

Moreover, and in any event, even if a purported class action were otherwise appropriate here (which it most decidedly is not), MONY's records indicate that a grand total of *eleven* Illinois residents -- *including the Browns* -- opted out of *Goshen*. *See* Gleason Aff. ¶3.[31] It is beyond cavil that a putative class comprised of a mere *eleven* absent class members fails utterly to satisfy the so-called "numerosity" requirement of Fed. R. Civ. P. 23(a)(1). *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ("while there is no fixed numerosity rule, generally less than twenty-one is inadequate") (citations and internal quotation marks omitted); *McAdams v. Massachusetts Mutual Life Ins. Co.*, No. Civ.A.99-30284-FHF, 2002 WL 1067449, *3 (D. Mass. May 15, 2002) ("generally, courts have approved of classes which include more than 40 individuals").

Finally, for precisely the same reasons noted above in connection with the Massachusetts plaintiffs' purported claim under Chapter 93A, even ignoring (a) the prohibition against certifying a class of opt-outs, and (b) the fact that the Browns could never satisfy the numerosity requirement, their class allegations would still have to be dismissed on the grounds that the claims at issue present a host of non-common, point-of-sale issues that would eclipse any issues common to the putative class. *See Markarian*, 202 F.R.D. at 66-69; *see also Charles Hester Enter., Inc. v. Illinois Founders Ins. Co.*, 484

---

[30] For this same reason, the *Woodson* action, another of the constituent putative class actions herein, could never be certified as a class action, as it explicitly purports to be brought on behalf of a class composed primarily of *Goshen* opt-outs.

[31] As noted above, *no one* from Massachusetts opted out. *See* Gleason Aff. ¶3.

37

N.E.2d 349, 361 (Ill. App. Ct. 1985) ("It . . . appears that the plaintiffs and the class they represent purchased their policies through independent insurance brokers, and differing factual bases of each separate purchase would have to be inquired into in order to establish the motives and particulars concerning policy limits desired and actually purchased. Thus, common questions do not predominate, and no effective savings in court time could be effected by a class action.").

## CONCLUSION

For all of the foregoing reasons, MONY respectfully requests that this Court grant summary judgment dismissing with prejudice the entirety of plaintiffs' First Amended Class Action Complaint.

Dated: July 31, 2003

Respectfully submitted,

NUTTER, McCLENNEN & FISH LLP

By: _____

Daniel J. Gleason (BBO #194900)
John A. Sten (BBO # 629577)
155 Seaport Boulevard
Boston, MA  02210-2604
617 439-2000

*Attorneys for Defendant*

*Of Counsel*
Harvey Kurzweil
Richard W. Reinthaler
James P. Smith III
John E. Schreiber
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019-6092
212 259-8000

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 7/31/03 _____

38

769856