**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
IN RE MUTUAL LIFE INSURANCE                         :
COMPANY OF NEW YORK                                 :
PREMIUM LITIGATION                                  :       MDL Docket No.  1143
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
WILLIAM J. McLEAN, NAOMI DRISCOLL and   :
ROGER K. BROWN and THOMAS C. BROWN,     :
TRUSTEES OF THE RICHARD L. BROWN        :
IRREVOCABLE TRUST NO. 2, DTD 3/17/90,   :
individually and on behalf of all others similarly :
situated,                                           :
                                                    :
                          Plaintiffs,               :
                                                    :
                    v.                              :       Civil Action No. 96-10411-EFH
                                                    :
MONY LIFE INSURANCE COMPANY F/K/A :
MUTUAL LIFE INSURANCE COMPANY OF :
NEW YORK,                                           :
                                                    :
                          Defendant.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NUTTER, McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2604
617 439-2000

*-and-*

**DEWEY BALLANTINE LLP**
1301 Avenue of the Americas
New York, NY 10019-6092
212 259-8000

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.........................................................................................................................2

I.    THE CLAIMS OF THE MASSACHUSETTS PLAINTIFFS ARE
      BARRED BY *RES JUDICATA* ...................................................................2

      A.    A Final Judgment Dismissing The Claims Of All Non-New
            York Class Members In *Goshen* Was Entered In 1997 ....................3

      B.    The New York Court Of Appeals' July 2, 2002 Decision In
            *Goshen* Left Nothing "Unresolved" Vis-à-vis The Claims
            Of Non-New York Class Members.................................................7

      C.    The Fact That Claims Under Chapter 93A Were Not
            Actually Litigated In *Goshen* Is Irrelevant Under New
            York's Transactional Approach To *Res Judicata* ............................9

      D.    The Notice In *Goshen* Comported With Due Process ...................13

      E.    The Massachusetts Plaintiffs' Claims Are Subject To
            Dismissal On A Variety Of Alternative Grounds...........................15

II.   THE BROWNS' ICFA CLAIM IS RIPE FOR SUMMARY
      JUDGMENT...............................................................................................18

      A.    The Browns Cannot Escape The Fact That The Central
            Allegation Of Their Complaint Is Contradicted By The
            Express Terms Of Their Insurance Policy And Illustrations
            And Belied By Their Own Testimony...........................................18

      B.    The Browns' Claim Is Time-Barred ..............................................20

      C.    The Browns' Class Action Allegations Must Be Dismissed .........21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                     <u>Page(s)</u>

*Bogard v. Cook*, 586 F.2d 339 (5th Cir. 1978) ................................................................. 15

*In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.*, Nos. 03-1379,
    2003 WL 21418413 (7th Cir. June 20, 2003) ............................................. 21-22

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) ............................................................... 13

*Chisholm-Ryder Co. v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d
    70 (N.Y. App. Div. 1980) ....................................................................................... 11

*CRK Contracting of Suffolk, Inc. v. Jeffrey M. Brown & Assocs., Inc.*, 260
    A.D.2d 530, 688 N.Y.S.2d 249 (N.Y. App. Div. 1999) ........................................ 11

*Da Silva v. Musso*, 76 N.Y.2d 436, 560 N.Y.S.2d 109 (N.Y. 1990) ................................ 4-5

*In re Farmers Group Stock Options Litig.*, D. Civ. A. No. 88-4994,
    1991 WL 332500 (E.D. Pa. Dec. 19, 1991) ........................................................... 14

*Flynn v. Sinclair Oil Corp.*, 20 A.D.2d 636, 246 N.Y.S.2d 360
    (N.Y. App. Div.) *aff'd* 14 N.Y.2d 853, 251 N.Y.S.2d 967 (1964) ........................... 5

*Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177
    (1999) .......................................................................................................... 5, 6 ,16

*Goshen v. Mutual. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858
    (2002) .................................................................................................................*passim*

*Goshen v. Mutual. Life Ins. Co. of N.Y.*, No. 600466, 95-006, 1997 WL
    710669 (N.Y. Sup. Ct. Oct. 21, 1997) ...............................................................*passim*

*Gowan v. Tally*, 45 N.Y.2d 32, 407 N.Y.S.2d 650 (1978) ................................................. 10

*Huff v. N.D.Cass Co.*, 485 F.2d 710 (5th Cir. 1973) ........................................................ 17

*Hyman v. Hillelson*, 79 A.D.2d 725, 434 N.Y.S.2d 742 (N.Y. App. Div.
    1980), *aff'd*, 55 N.Y.2d 624, 446 N.Y.S.2d 251 (1981) ........................................ 11

*Joem Int'l, Ltd. v. Swedwall, Inc.*, 215 A.D.2d 530, 627 N.Y.S.2d 51
    (N.Y. App. Div. 1995) ........................................................................................... 11

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) ..................................... 17

Cases (cont.)                                                                                           Page(s)

*Koch v. Stanard*, No. 90 C 5431, 1991 WL 36714
    (N.D. Ill. Mar. 15, 1991), *aff'd* 962 F.2d 605 (7th Cir. 1992) ................................ 17

*Lagen v. Balcor Co.*, 653 N.E.2d 968 (Ill. App. Ct. 1995).................................................. 19

*Litz Enterprises, Inc. v. Standard Steel Indus. Inc.*, 57 A.D.2d 34,
    394 N.Y.S.2d 765 (N.Y. App.Div. 1977) ................................................................. 8

*Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60
    (D. Mass. 2001)...................................................................................................... 18

*Marinelli Assocs. v. Helmsley-Noyes Co.*, 265 A.D.2d 1,
    705 N.Y.S.2d 571 (N.Y. App. Div. 2000) ............................................................. 11

*McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309 (D. Conn. 1995) ....................... 14

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) ........................ 14

*Newton Garment Carriers, Inc. v. Consol. Carriers Corp.*, 250 A.D.2d
    482, 673 N.Y.S.2d 631 (N.Y. App. Div. 1998) ..................................................... 11

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981)............................. 11

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478
    (N.Y. 1999) ........................................................................................................... 13

*People v. Lipsitz*, 664 N.Y.S.2d 468 (N.Y. Sup. Ct. 1997)................................................. 15

*Perez v. Citicorp Mortgage, Inc.*, 703 N.E.2d 518 (Ill. App. Ct. 1998) ............................. 19

*Robinson v. Toyota Motor Credit Corp.*, No. 90242, 2002 WL 1038728
    (Ill. May 22, 2002).................................................................................................. 19

*Schulz v. New York Legislature*, 278 A.D.2d 710, 718 N.Y.S.2d 422 (N.Y.
    App. Div. 2000) ..................................................................................................... 11

*Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 354 N.Y.S.2d 620
    (N.Y. 1974)............................................................................................................. 7

*Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (N.Y. App. Div. 1998),
    *aff'd*, 94 N.Y.2d 43 (1999)................................................................................. 10-11

*Sound Distrib. Corp. v. Ponce Acquisition Corp.*, 179 A.D.2d 469, 577
    N.Y.S.2d 863 (N.Y. App. Div. 1992) ..................................................................... 10

Cases (cont.)                                                          Page(s)

*Szymanski v. Boston Mut. Life Ins. Co.,* 778 N.E.2d 16
    (Mass. App. Ct. 2002)..............................................................................16

*Thaler v. Casella,* 960 F.Supp. 691 (S.D.N.Y. 1997) ............................................8

*Vasile v. Dean Witter Reynolds, Inc.,* 20 F. Supp. 2d 465 (S.D.N.Y. 1998) ....................7-8

*Zehner v. Central Berkshire Reg'l School Dist.,* 821 F.Supp. 850
    (D. Mass. 1995)..........................................................................................2

*Zekman v. Direct Am. Marketers, Inc.,* 695 N.E.2d 853 (Ill. 1998) ...................................20

## Statutes, Rules and Other Authority

Fed. R. Civ. P. 23 ...................................................................................... 17, 22

Fed. R. Civ. P. 56 .........................................................................................1-3

Illinois Consumer Fraud And Deceptive Business Practices Act................................*passim*

Massachusetts Consumer Fraud Act, Massachusetts General Laws Chapter 93A......*passim*

N.Y. Gen. Bus. Law §349.......................................................................................*passim*

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992)....... 14-15, 17

Defendant MONY Life Insurance Company (formerly The Mutual Life Insurance Company of New York) ("MONY" or the "Company") respectfully submits this reply memorandum in further support of its motion, pursuant to Fed R. Civ. P. 56, for summary judgment dismissing in its entirety plaintiffs' First Amended Class Action Complaint.

## PRELIMINARY STATEMENT

In opposing the Company's motion, plaintiffs display a truly astounding -- indeed, a near total -- disregard for what really occurred in the *Goshen* action, along with an uncanny knack for simply glossing over inconvenient facts and controlling, adverse legal authority. Remarkably, in their response, plaintiffs ignore, among other things: (a) critical aspects of the procedural history of, and the decisions rendered in, *Goshen*, including, *inter alia*, the fact that the New York trial court *expressly held* in 1997 that non-New York purchasers' GBL §349 claims were deficient because they could not allege deception in connection with a New York transaction, a holding which was reduced to judgment and remained undisturbed through all subsequent appeals; (b) fundamental principles of New York law with respect to the doctrine of *res judicata*, including the fact that New York courts have held time and again that a transactional approach -- not an "actually litigated" standard -- determines the *res judicata* effect of a prior judgment or order; and (c) where it suits them, their *own* testimony and allegations, including damning admissions about what they knew and when they knew it.

Instead, plaintiffs craft their own alternate reality, one in which (a) no classwide judgment was ever entered in *Goshen*; (b) decisions rendered by a state's highest court in a certified, nationwide class action do not actually bind absent class members; and (c) their own allegations (and the applicable law) mean the opposite of what they say. Having

thus radically altered the very shape of the table, what plaintiffs proceed to place on it almost appears palatable.

But no amount of smoke and mirrors can change cold, hard reality: the Massachusetts plaintiffs' newly-minted claims under Chapter 93A are barred by the *res judicata* impact of *Goshen*, and Richard Brown's own sworn testimony about his understanding of the insurance policy the Browns bought (not to mention the clear terms of the policy and illustration disclaimers) is fatal to the Browns' purported ICFA claim. Accordingly, as set forth below and in greater detail in the Company's moving memorandum, summary judgment is appropriate.[1]

## ARGUMENT

### I.

### THE CLAIMS OF THE MASSACHUSETTS PLAINTIFFS ARE BARRED BY *RES JUDICATA*

In responding to the instant motion, plaintiffs concede, as they must, that: (a) both McLean and Driscoll are members of the *Goshen* class (Pls. R. 56.1 Resp. at 8); (b) the

---

[1] Plaintiffs' lead argument, that MONY's "Statement of Material Facts and Procedural History" (MONY's Op. Br. at 5-17) does not comport with Local Rule 56.1 because it "does not separately itemize the facts" in numerical paragraphs but rather "contains captions" (Pls. Br. at 4-5), is a red herring. As plaintiffs themselves point out, Rule 56.1 requires only "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." MONY has complied with both the letter and the spirit of this provision. In any event, we submit that, even assuming, *arguendo*, that MONY's statement of material facts was in technical non-compliance with Rule 56.1, any such deficiency would be immaterial and easily remedied. *See, e.g., Zehner v. Central Berkshire Reg'l School Dist.*, 821 F. Supp. 850, 854 (D. Mass. 1995) (granting defendant's motion to dismiss notwithstanding failure to strictly comply with Rule 56.1). Moreover, given the nature of the issue -- *i.e.*, the *res judicata* effect of the *Goshen* decision, the material facts, by definition, relate to the scope and content of legal decisions, judgments, the allegations of plaintiffs' complaint and the procedural history and current posture of the *Goshen* case -- precisely what was set forth in MONY's Rule 56.1 statement and none of which raises any "triable" issue.

*res judicata* effect of the *Goshen* decision is determined by New York law; (c) *Goshen* bars each and every one of the common law claims asserted in their original complaint (Pls. Br. at 17-18);[2] (d) the issue of whether or not they and other *Goshen* class members who purchased their policies outside New York could proceed under GBL §349 has been "finally determined" (Pls. Br. at 3); and (e) their newly-minted claims under Chapter 93A "arise out of the same transactions or occurrences" at issue in *Goshen* (Pls. R. 56.1 Resp. at 14-15).

Remarkably, in light of the foregoing, plaintiffs nevertheless seek to avoid the preclusive effect of *Goshen* by arguing that: (a) "there has been no final classwide judgment in the New York action" (Pls. Br. at 10); (b) the fact that their 93A claims were not actually litigated in *Goshen* is somehow relevant (Pls. Br. at 1, 9); (c) they were somehow denied a "full an fair opportunity" to assert such claims in *Goshen* (notwithstanding that they had already chosen not to assert such claims in *this* case) (Pls. Br. at 1, 9, 15-18); and (d) the class notice they received in connection with the *Goshen* action did not comport with due process because it "did not warn non-New York plaintiffs that GBL §349 could only be raised by New York residents" (Pls. Br. 18), notwithstanding that that issue was, by plaintiffs' own account, not yet decided at the time the notice was sent. Each of these arguments is without merit and will be addressed in turn below.

## A.    A Final Judgment Dismissing The Claims Of All Non-New York Class Members In *Goshen* Was Entered In 1997

Plaintiffs' statement that "there has been no final classwide judgment in the New York action" (Pls. Br. at 10) is truly "through the looking-glass" and is thoroughly

---

[2] Notably, plaintiffs chose *not* to assert a consumer fraud act claim in their original complaint.

discredited by even a cursory review of the procedural history in *Goshen*. As set forth at length in MONY's moving memorandum, in its October 21, 1997 decision, the New York trial court dismissed the GBL §349 claims of the former class representative, Florida resident Paul A. Goshen, *and all other non-New York purchasers*, on the grounds, *inter alia*, that policyholders who did not purchase their policies in New York could not satisfy the element of the statute requiring that the alleged deceptive conduct occur during a consumer transaction "in this state."

> To reiterate, the October 21, 1997 decision holds, point-blank, that:

> by its terms, *GBL §349 is applicable herein only to those claims which arose out of transactions occurring in New York State,* and so *may not be raised in favor of any plaintiff who claims to have been injured by the purchase of insurance in any other jurisdiction.* The parties' agreement that New York law should apply to this action cannot serve to alter the language and intent of the statute. Consequently, *any valid claim under GBL §349 is necessarily limited to persons whose policies were sold to them in the State of New York.*

Gleason Aff. Ex. 9 at *13 (emphasis added). Plaintiffs omit any mention of this critical holding from their misleading discussion of the October 21, 1997 decision in *Goshen*. *See* Pls. Br. at 8.

And no wonder, for, as further discussed in MONY's moving memorandum, pursuant to that decision and order, on October 24, 1997, a *final judgment* dismissing all claims, *including* the GBL §349 claims of Mr. Goshen *and all other non-New York purchasers* -- "*on the merits* and with prejudice" -- was entered in the Supreme Court, New York County. *See* Gleason Aff. Ex. 10 (emphasis added). Under New York law, that judgment was *final* the moment it was entered and therefore constituted a "conclusive adjudication" of the parties' substantive rights unless and until -- and even then, *only to the extent* -- overturned on appeal. *See Da Silva v. Musso*, 76 N.Y.2d 436, 440, 560 N.Y.S.2d

4

109, 111 (N.Y. 1990).[3]

Here, it is beyond dispute that the portion of the judgment dismissing the GBL §349 claims of non-New York purchasers based on their inability to allege any deception in New York was *never* overturned on appeal. Although the New York Court of Appeals, in *Gaidon I*, did subsequently reverse the dismissal of the GBL §349 claim, it did so *only* to the extent that it rested upon a finding that *all* plaintiffs (New York and non-New York purchasers alike) had failed to allege an actionable "deceptive act or practice." *See* Gleason Aff. Ex. 11 at 6-7. The Court of Appeals did not disturb the New York trial court's determination in the October 21, 1997 decision that non-New York purchasers had failed to allege (and could never satisfy) an element of their GBL §349 claim, to wit, a deceptive act or practice in connection with a consumer transaction *in New York*.

Indeed, in response to MONY's post-remittitur motion to, *inter alia*, remove Mr. Goshen as the class representative on the grounds that *under the trial court's October 1997 decision on summary judgment*, the GBL §349 claims of all non-New York class members, including Mr. Goshen, *had already been dismissed (see* Reply Aff. Ex. 1 at 4, 11, 25-26),[4] the *Goshen* plaintiffs actually argued that by reinstating the GBL §349 claim, the

---

[3] Plaintiffs' citation to *Flynn v. Sinclair Oil Corp.*, 20 A.D.2d 636, 246 N.Y.S.2d 360 (N.Y. App. Div.), *aff'd*, 14 N.Y.2d 853, 251 N.Y.S.2d 967 (1964), to suggest a contrary rule in New York is misleading. In point of fact, *Flynn*, which predated the New York Court of Appeals' decision in *Da Silva* by 16 years, is perfectly in step with the approach outlined above. Indeed, the only difference between *Flynn* and the instant case is that, in *Flynn*, no appeal was taken from the dismissal of the earlier action. The case does not in any way alter the rule laid out in *Da Silva*.

[4] Copies of MONY's memorandum of law in support of its post-remittitur decertification motion, dated February 2, 2000, the *Goshen* plaintiffs' brief in opposition thereto, dated March 1, 2000, and MONY's reply, dated March 10, 2000, are annexed as Exhibits 1-3, respectively, to the Reply Affidavit of Daniel J. Gleason, sworn to September 5, 2003 and submitted herewith (the "Reply Aff.")

782561

Court of Appeals in *Gaidon I* had implicitly reversed the trial court on the so-called "extraterritoriality" issue (*see* Reply Aff. Ex. 2 at 23-25). In addressing that argument in its August 21, 2000 decision, the New York trial court began by stating that:

> This court has *previously determined, in the decision on the original summary judgment motion,* that only a party who purchased his or her policy in the State of New York may raise a claim under GBL §349.

Gleason Aff. Ex. 12 at 5 (emphasis added). Accordingly, the court went on to hold, (a) under its October 21, 1997 decision, because Goshen had purchased his policy outside New York, and therefore could not assert a claim under GBL §349, he was no longer a proper class representative,[5] and (b) plaintiffs' argument that the Court of Appeals had somehow "tacitly ruled" on that issue was "simply absurd." Gleason Aff. Ex. 12 at 5-6.[6] Undeterred, the *Goshen* plaintiffs once again raised their "tacit" reversal argument on appeal to the intermediate level appellate court (*see* Reply Aff. Exs. 4 & 6),[7] but the trial court's August 21, 2000 decision was affirmed in its entirety. Plaintiffs prudently abandoned the argument on appeal to the Court of Appeals.

---

[5] Plaintiffs' suggestion that by allowing the DeFilippos to intervene, the New York trial court "implicitly recognized" that the claims of all other class members, including those who, like McLean and Driscoll, had purchased their policies outside New York, were unaffected by this holding (Pls. Br. at 14-15), is 180° from the true import of that ruling. What the court in fact "implicitly recognized" by allowing the DeFilippos -- who, unlike Mr. Goshen, were alleged *New York* purchasers -- to intervene was that it was now necessary to have a *New York* purchaser represent the only remaining class members whose claims had not already been dismissed: *other New York purchasers.*

[6] Plaintiffs herein evidently agree. *See* Pls. Br. at 8 (noting that "[t]he Court of Appeals [in *Gaidon I*] *did not rule on the issue* of whether non-residents of New York could assert GBL §349 claims") (emphasis added).

[7] Copies of the *Goshen* plaintiffs' opening brief on appeal to the New York Appellate Division, First Department, from the August 21, 2000 decision, dated December 4, 2000, MONY's brief in opposition thereto, dated January 3, 2001, and plaintiffs' reply, dated January 12, 2001, are annexed to the Reply Aff. as Exs. 4-6, respectively.

In sum, notwithstanding plaintiffs' bizarre assertion that no final classwide judgment was ever entered in *Goshen*, that portion of the October 24, 1997 judgment that dismissed the GBL §349 claims of non-New York purchasers "on the merits" on the grounds that they had failed to allege any deception in New York was final the day it was entered and has remained undisturbed (and, indeed, been repeatedly reaffirmed) to this day.

## B.    The New York Court Of Appeals' July 2, 2002 Decision In *Goshen* Left Nothing "Unresolved" Vis-à-Vis The Claims Of Non-New York Class Members

Even assuming (as plaintiffs would have this Court do) that the 1997 judgment in *Goshen* had never been entered, the Massachusetts plaintiffs' purported claims would *still* indisputably be barred in the wake of the New York Court of Appeals' July 2, 2002 decision in that case expressly affirming the lower courts' rulings that class members who purchased their policies outside New York have no viable GBL §349 claim.  For, contrary to the impression plaintiffs seek to create (Pls. Br. at 10-12), under New York law, even a final *order* -- whether or not it is ultimately reduced to a judgment -- may be accorded *res judicata* effect. As the New York Court of Appeals -- New York's highest court -- has held:

> Although technical and historical distinctions might be drawn between final orders and final judgments, we find no occasion here to reach a different result because the record does not disclose the formal entry of a final judgment.  In the state of modern practice it would be inappropriate to attach significance to any such distinction.

*Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 446-48, 354 N.Y.S.2d 620, 622-23 (N.Y. 1974).[8]

---

[8] *See also Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp. 2d 465, 488 (S.D.N.Y. 1998) (New York law) ("the fact that the decision was rendered upon an order does not preclude it from having the same effect as a judgment. 'The modern rule is that an order made upon a motion has the

*continued on the following page...*

782561

Plaintiffs' other attempts to grapple with the July 2, 2002 decision are as inconsistent as they are futile. For instance, while they concede at one point in their brief that the Court of Appeals' decision should operate to preclude non-New York class members from seeking to "relitigate their . . . New York statutory claims" (Pls. Br. at 17-18) and had in fact "finally determined" their purported claims under GBL §349 (Pls. Br. at 3), elsewhere they suggest that while the decision "does not bode well for any non-New York class members who seek to pursue GBL §349 claims" (Pls. Br. at 12), it is not binding. Surely, plaintiffs are not suggesting that a decision rendered by a state's highest court in a certified, nationwide class action is somehow only *persuasive* authority with respect to the very class members whose claims it addresses.

Passing this insupportable notion, plaintiffs' continued suggestion that the July 2, 2002 decision affirmed the dismissal of the GBL §349 claims of non-New York purchasers on "standing" grounds, and was therefore not "on the merits" (*see* Pls. Br. at 17-18), is simply untrue. As discussed in our opening brief, the word "standing" appears *nowhere* in the Court of Appeals' decision; curious indeed if standing was, as plaintiffs claim, the very basis for the court's watershed pronouncement on the assertion of GBL §349 claims by non-New York consumers. In fact, as previously noted, far from discussing the issue in terms of "standing," the Court of Appeals unanimously affirmed the dismissal of Mr. Goshen's claim and the

---

*...continued from the preceding page*

same effect as a judgment, and that although technical and historical distinctions might be drawn between final orders and final judgments, the doctrine of *res judicata* applies to both.") (quoting, *Thaler v. Casella*, 960 F. Supp. 691, 698 (S.D.N.Y. 1997)); *Litz Enterprises, Inc. v. Standard Steel Indus., Inc.*, 57 A.D.2d 34, 394 N.Y.S.2d 765, 768-69 (N.Y. App. Div. 1977) (a party will not be denied the benefits of *res judicata* where a final order on the merits has not been reduced to a formal judgment).

782561

claims of all other policyholders who purchased their policies outside New York, on the grounds that it is an *element of a claim* under GBL §349 that "the transaction in which the consumer is [allegedly] deceived must occur in New York." Gleason Aff. Ex. 13 at 4. In so doing, the court held that "'hatching a scheme' or originating a marketing campaign" -- in other words, "top-down" conduct -- cannot "in and of itself constitute an actionable deceptive act or practice under the statute." *Id.* Rather, the court stressed, "[t]he phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Id.* at 6. Accordingly, the court held that "[t]he origin of any advertising or promotional conduct is irrelevant if the deception itself . . . did not result in a transaction in which the consumer was harmed" in New York. *Id.* at 7.

In no sense is that analysis -- the very guts of the New York Court of Appeals' holding -- one of "standing," but of the very nature of an actionable "deceptive act or practice" under the statute. This confirms, beyond dispute, that the dismissal in *Goshen* was "on the merits."[9]

**C.    The Fact That Claims Under Chapter 93A Were Not Actually Litigated In *Goshen* Is Irrelevant Under New York's Transactional Approach To *Res Judicata***

Perhaps foreseeing how quickly the above arguments would crumble, the Massachusetts plaintiffs attempt to backstop them with the equally meritless contention that the *Goshen* decision should not bar their 93A claims because those claims were not *actually*

---

[9] To this extent, the July 2, 2002 decision constituted a reaffirmance of the final judgment entered pursuant to the October 21, 1997 decision of the trial court in *Goshen* which, as discussed above, dismissed the GBL §349 claims of non-New York purchasers for failure to establish a New York transaction. *See* Gleason Aff. Ex. 10 (expressly stating that judgment was "*with prejudice on the merits*") (emphasis added).

*litigated* in the New York action, and/or because plaintiffs were not provided a "full and fair opportunity" to assert such claims in that case and thus "have not had their day in court." In advancing these arguments, plaintiffs appear to have completely glossed over the discussion of "full faith and credit" in MONY's opening brief, which demonstrated that federal courts must give the same preclusive effect to the judgment of a foreign state's court that would be given to it by the courts of that state. *See* MONY's Op. Br. at 20-21. Here, that state is New York. Accordingly, this Court must give the *Goshen* judgment the same *res judicata* effect it would be given by a New York court, applying *New York* principles of *res judicata*.

As noted in MONY's opening brief, New York's "transactional" approach to *res judicata* provides that *all* claims arising out of the same transaction or occurrence as the claim which has been finally determined will be barred, *even if those claims seek different relief or are based upon different legal theories with materially different elements of proof.* As the New York Appellate Division, First Department, succinctly put it in *Sound Distributing Corp. v. Ponce Acquisition Corp.*, 175 A.D.2d 469, 577 N.Y.S.2d 863 (N.Y. App. Div. 1992):

> under New York's transactional analysis approach to deciding *res judicata* issues, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, *even if based upon different theories or if seeking a different remedy.*

*Id.* at 469, 577 N.Y.S.2d at 863 (emphasis added) (citation and internal quotation marks omitted); *see also Gowan v. Tully*, 45 N.Y.2d 32, 407 N.Y.S.2d 650 (N.Y. 1978) (class members not permitted to advance additional legal theories not presented in prior class action); *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 601 (N.Y. App. Div. 1998) ("Under New York's transactional approach to *res judicata*, once a claim is brought to final

conclusion, all other claims arising out of the same transactions are barred *even if based on a different theory or seeking a different remedy*") (emphasis added), aff'd, 94 N.Y.2d 43 (N.Y. 1999).[10] In other words, all such claims are precluded by *res judicata*, regardless of whether or not they were *actually* litigated in the earlier action.

Ignoring this unbroken line of New York case law, and relying instead almost exclusively on authorities from other jurisdictions, the Massachusetts plaintiffs appear to suggest that because the *Goshen* plaintiffs *chose* not to assert certain claims (*e.g.*, a claim under Chapter 93A), this somehow establishes that those claims "could not have been litigated" in New York and are thus not barred by *res judicata*.[11] As noted above, plaintiffs do not and cannot dispute that their 93A claims arise out of the same transactions at issue in *Goshen* (and in fact admitted as much in the CMO they signed in this case). Rather, their

---

[10] *See also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (N.Y. 1981); *Schulz v. New York Legislature*, 278 A.D.2d 710, 718 N.Y.S.2d 422 (N.Y. App. Div. 2000); *Marinelli Assocs. v. Helmsley-Noyes Co.*, 265 A.D.2d 1, 705 N.Y.S.2d 571 (N.Y. App. Div. 2000); *CRK Contracting of Suffolk, Inc. v. Jeffrey M. Brown & Assocs., Inc.*, 260 A.D.2d 530, 688 N.Y.S.2d 249 (N.Y. App. Div. 1999); *Newton Garment Carriers, Inc. v. Consolidated Carriers Corp.*, 250 A.D.2d 482, 673 N.Y.S.2d 631 (N.Y. App. Div. 1998); *Joem Int'l, Ltd. v. Swedwall, Inc.*, 215 A.D.2d 530, 627 N.Y.S.2d 51 (N.Y. App. Div. 1995); *Hyman v. Hillelson*, 79 A.D.2d 725, 434 N.Y.S.2d 742 (N.Y. App. Div. 1980), aff'd, 55 N.Y.2d 624, 446 N.Y.S.2d 251 (N.Y. 1981); *Chisholm-Ryder Co v. Sommer & Sommer*, 78 A.D.2d 143, 434 N.Y.S.2d 70 (N.Y. App. Div. 1980).

[11] As plaintiffs point out, the amended complaint in *Goshen* does in fact allege, *inter alia*, that "MONY . . . had a statutory duty pursuant to state Unfair Trade Practices Acts, including New York General Business Law §349 *and substantially similar acts in other states* . . . ." Ex. A to CMO (Gleason Aff. Ex. 3) ¶68 (emphasis added); *see id.* at n. 5 (alleging that "[n]early every other jurisdiction has an Unfair Trade Practices Act relating to life insurance which is the same as or substantially similar to New York's"). At the class certification stage, however, the *Goshen* plaintiffs, for obvious reasons, jettisoned their claims under other state statutes, arguing instead that New York law, including GBL §349, should apply to all of the claims that they had asserted. *See* Pls. Mem. of Law in Supp. of Mot. for Class Cert. in *Goshen*, dated March 27, 1996, at 22-23, the relevant pages of which are annexed as Ex. 7 to the Reply Aff. This was a tacit recognition that resolution of the claims of non-New York purchasers under GBL §349 would dispose of any claims such purchasers might otherwise have had "pursuant to state Unfair Trade Practices Acts . . . in other states," such as Chapter 93A.

11

principal argument appears to be that MONY somehow dictated the choice of law in *Goshen* or, at best, that the application of New York law was simply "assumed," and that this somehow prevented claims under the Massachusetts statute from being litigated in that action. Not so.

MONY did not make those decisions -- *plaintiffs* did. The *Goshen* plaintiffs made a strategic decision to proceed with a GBL §349 claim on behalf of a nationwide class on the theory that if any state's consumer fraud act could be applied to all members of the class, it would be New York's, since plaintiffs were alleging a nationwide scheme "hatched" or "orchestrated" from MONY's New York headquarters. Obviously, this was a calculated decision taken in an attempt to avoid the insurmountable obstacles that application of the statutes of all fifty states would have presented to class certification. *See also* n.11, *supra*.

Dispositively, moreover, all non-opt out members of the *Goshen* class (including McLean and Driscoll) made their decision to remain part of the class knowing full well that the *Goshen* plaintiffs had chosen to put all their eggs in one consumer fraud act basket -- GBL §349 -- rather than proceed under other similar state statutes. In fact, in McLean's case, he did so at a time when he was already (a) individually represented by experienced plaintiffs' class action counsel (his counsel herein), who undoubtedly was fully conversant with all of the pleadings in *Goshen* and reviewed and advised McLean with respect to the class notice he received in that case; and (b) the putative class representative in his own purported nationwide "vanishing premium" class action against the Company -- *i.e.*, *the instant action* -- in which he had *himself* chosen (again presumably on the advice of the very counsel who is opposing the instant motion on his behalf) *not to assert any claim under Chapter 93A!*

12

That plaintiffs ultimately lost their dice roll with GBL §349 in New York does not mean that the claims they chose, for strategic reasons, not to assert "could not have been litigated" in the *Goshen* action.[12]  Indeed, the very purpose of the transactional approach to *res judicata* is to prevent plaintiffs from doing exactly what the Massachusetts plaintiffs are attempting to do here, *i.e.*, bringing *some* of their claims, playing "wait and see," and then, if those claims prove unsuccessful, suing on some other previously unasserted claims held in reserve.  In short, the Massachusetts plaintiffs have indisputably had their "day in court;" they are merely dissatisfied with the result.

**D.  The Notice In *Goshen*  
Comported With Due Process**

Clearly telegraphing a lack of faith in their arguments that the *Goshen* case did not result in any final judgment or order on the merits and that their 93A claims do not fall within New York's transactional test, plaintiffs take a half-hearted stab at a due process challenge to the class notice in *Goshen*.  But, as demonstrated in MONY's opening brief, there can be no dispute that the procedures employed in the *Goshen* action comported with the constitutional requirements of due process, both in terms of the scope and content of the

---

[12] Plaintiffs' reliance on *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478 (N.Y. 1999), and *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994), on this score is misplaced.  In *Parker*, for instance, the court merely held that, although certain claims that had been expressly reserved in the earlier action for later adjudication were not barred by *res judicata*, they were, however, barred by collateral estoppel, as the plaintiffs had had a "full and fair" opportunity to litigate the issues pertinent to those claims in the earlier action. *See Parker*, 93 N.Y.2d at 350.  In *Burgos*, the court declined to apply the doctrine of *res judicata* on the grounds that the court in the prior proceeding did not have authority to award the relief sought in the later action. *See Burgos*, 14 F.3d at 790.  There is no such contention here.  Moreover, the *Burgos* court expressly distinguished between situations in which the failure to litigate a claim in an earlier action was due, on the one hand, to decisions made by plaintiffs and those, on the other, in which there was a formal barrier to the court's ability in the earlier action to award the relief later sought.  As discussed above, the instant case clearly falls within the former category.

13

notice provided to the class and the adequacy of the representation afforded by the designated class representative and class counsel in that case. *See* MONY's Op. Br. at 7-10. Indeed, the New York trial court has already expressly held as much. *See* Gleason Aff. Ex. 6 (expressly finding that the method, form and content of the notice met the requirements of due process and was the "best notice practicable" under the circumstances).

While the Massachusetts plaintiffs do not take issue with the adequacy of representation of the *Goshen* class, nor with the scope of the mailing and publication notice campaign, they contend that the *content* of the class notice that they received in connection with the *Goshen* action did not pass constitutional muster because it "did not warn non-New York plaintiffs that GBL §349 could only be raised by New York residents." Pls. Br. 18. This argument is specious.

It is well settled that, in order to comport with due process, a class notice need only contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1005 (5th Cir. 1977). Accordingly, courts have held that the notice should not include, among other things, information that is "speculative" or "unsettled." *See In re Farmers Group Stock Options Litig.*, D. Civ. A. No. 88-4994, 1991 WL 332500, *5 (E.D. Pa. Dec. 19, 1991); *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 312 (D. Conn. 1995) (refusing to allow notice containing statement of possible tax consequences flowing from class membership because statement would be too "nebulous and prejudicial"); *see also* 2 Herbert B. Newberg & Alba Conte, Newberg on Class

14

782561

Actions §8.31 (3d ed. 1992). The parties are most decidedly not required -- or even permitted -- to speculate as to their likelihood of success on the merits.[13]

In light of the foregoing, plaintiffs' suggestion that the notice should have included, among other things, a prognostication as to how New York's highest court would come down -- *six years later* -- on what plaintiffs themselves contend was a "novel issue" of law[14] is nothing short of ridiculous. Due process requires no such thing.[15]   To hold otherwise would require parties to a lawsuit to have a crystal ball through which they could see the outcome of the case before it has begun.

## E.    The Massachusetts Plaintiffs' Claims Are Subject To Dismissal On A Variety Of Alternative Grounds

Finally, as set forth in MONY's moving memorandum, even assuming, *arguendo*, that the Massachusetts plaintiffs' 93A claims were not barred by *res judicata*, they would still be subject to dismissal on the grounds, *inter alia*, that the alleged "misrepresentation" at issue is flatly contradicted by the express terms of the policies and explicit disclaimers in the pre-sale illustrations that they received at (or before) the time of sale, which, in both instances, was well more than four years before this action was filed. *See*

---

[13] Indeed, quite appropriately, the class notice in *Goshen* stated on its face that it was "not an expression of an opinion . . . as to the merits of any of the claims asserted in this litigation." Gleason Aff. Ex. 5.

[14] Plaintiffs contend that, "[p]rior to the Court of Appeals' July 2, 2002 decision in *Goshen*, other New York courts had ruled that GBL §349 applied to non-residents who were injured by a New York business." Pls. Br. at 13 n. 6 (citing *People v. Lipsitz*, 664 N.Y.S.2d 468, 474 (N.Y. Sup. Ct. 1997)). (In fact, *Lipsitz* did not involve the assertion of a private cause of action under GBL §349.)

[15] Plaintiffs' reliance on *Bogard v. Cook*, 586 F.2d 339 (5th Cir. 1978), is misplaced. Unlike the notice in *Goshen*, the *Bogard* notice failed to advise absent class members of the fundamental right they would be giving up by failing to opt-out -- the right to bring an *individual* action seeking damages. It is undisputed that *Goshen* class members were expressly apprised of this right in the notice. *See* Gleason Aff. Ex. 5.

15

MONY's Op. Br. at 30. Plaintiffs' principal response to this argument is a classic example of robbing Peter to pay Paul. Having gone to extraordinary lengths to argue that *Goshen* has absolutely no preclusive effect vis-à-vis their 93A claims, plaintiffs suddenly perform a *volte face* and pronounce that "***MONY is precluded from relitigating the issue***" of the viability of their 93A claim by virtue of decisions rendered in *Goshen*! Pls. Br. at 20 (emphasis added). Unfortunately for plaintiffs, they cannot have their cake and eat it too.

Plaintiffs' argument with respect to the timeliness issue, while perhaps somewhat less disingenuous, is equally unavailing, based as it is solely on the intermediate appellate court decision in *Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16 (Mass. App. Ct. 2002). What plaintiffs fail to point out is that the court in *Szymanski* merely held, based on its review of the record before it, that it was "unclear . . . at what point the plaintiff should have been on notice that his policy was not accumulating sufficient value to cover the premiums in the tenth year" and that this created a "jury question." *Id.* at 26. The court expressly declined to consider the plaintiff's argument "that he suffered no injury until he received the first bill for out-of-pocket premiums beyond the year at which he had been told his policy would be self-sustaining, such that his cause of action did not accrue until 1996." *See id.* at 28 (distinguishing *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078 (N.Y. 2001) on the grounds that "*the rules for the accrual of causes of action in Massachusetts differ from some other jurisdictions, notably New York*" (emphasis added)).

Moreover, and in any event, to the extent the *McLean* plaintiffs' reading of the *Szymanski* case -- *i.e.*, that determining when a Chapter 93A claim accrues in the "vanishing premium" context turns on a case-by-case inquiry into whether and when, based on the "information available" to each policyholder, he or she knew or should have known "that the

16

policy was not performing as allegedly promised and that the so-called vanishing premiums were a fiction" (*id.* at 20) -- is correct, the decision merely underscores the impossibility of class certification with respect to plaintiffs' purported claims under that statute.

In apparent recognition of this fact, and unable to offer any substantive response, the Massachusetts plaintiffs' only retort to MONY's seeking to dismiss their class allegations is that such action would be "premature at this time," suggesting that MONY must sit on its hands and await plaintiffs' filing of a motion for class certification. Pls. Br. at 21. Not so. On the contrary, as plaintiffs' counsel is surely aware, courts routinely strike class allegations upon a motion by the defendant -- prior to any motion for class certification -- where, as here, there is no genuine issue of fact with respect to the proposed class's suitability for certification, and where no amount of additional discovery could ever reveal an issue of fact which bears on that question. *See, e.g., Koch v. Stanard,* No. 90 C 5431, 1991 WL 36714 (N.D. Ill. Mar. 15, 1991) (striking class allegations on motion to dismiss where allegations, on their face, were insufficient to support class certification), *aff'd,* 962 F.2d 605 (7th Cir. 1992); *Kamm v. California City Dev. Co.,* 509 F.2d 205 (9th Cir. 1975) (same); *see also Huff v. N.D. Cass Co.,* 485 F.2d 710 (5th Cir. 1973) ("maintainability [of class] may be determined on the basis of pleadings").[16]  Given the individualized issues on which plaintiffs rely in their attempt to stave off a dismissal on timeliness grounds, the pleadings on their face will not support class certification. No amount of discovery will change the fact that, on plaintiffs'

---

[16] *See also* Fed R. Civ. P. 23(c)(1) (determination as to maintainability of class shall be made "as soon as practicable after the commencement of an action"); 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§7.03, 7.06 (3d ed. 1992) (recognizing defendant's right to seek ruling as to propriety of class certification prior to motion by plaintiffs).

782561

own view of the statute, the viability of their 93A claims rises and falls on fundamentally individualized issues that would necessitate hundreds upon hundreds of individual mini-trials. *See, e.g., Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 66-69 (D. Mass. 2001).

## II.

### THE BROWNS' ICFA CLAIM IS
### RIPE FOR SUMMARY JUDGMENT

The Browns, for their part, have acquitted themselves no better than the Massachusetts plaintiffs in terms of the forthrightness of their response. For, in seeking to get out from under Richard Brown's damning deposition testimony (summarized at pp. 33-34 of MONY's opening brief), they now seek to distance, if not altogether disassociate, themselves from their own allegations -- all the while accusing *MONY* of somehow having been "disingenuous" about what plaintiffs alleged. Pls. Br. at 25.

**A.    The Browns Cannot Escape The Fact That The Central Allegation
Of Their Complaint Is Contradicted By The Express Terms Of Their
Insurance Policy And Illustrations And Belied By Their Own Testimony**

While the Browns accuse MONY of "mischaracterizing" their claim by suggesting in its opening brief that "plaintiffs' purported understanding of how their policy worked [was that] five annual premiums would buy them a 'paid-up' insurance policy for life" (Pls. Br. at 22), even a cursory review of the amended complaint in this action reveals that that precise allegation is -- and has always been -- the very linchpin of the Browns' case:

- "The illustration used by Defendant in the sales presentation projected that Mr. Brown could purchase life insurance in the initial face amount of $2,000,000 by making five (5) equal annual premium outlays in the amount of approximately $44,000 at the beginning of each policy year. *The illustration projected that after five years, no further out-of-pocket premium payments would be required in order to fully fund the policy.*" Compl. ¶31 (emphasis added);

18

782561

- "In reliance on MONY's representations with respect to the out-of-pocket cost of the policy as set forth in the illustration, Mr. Brown signed an application for insurance with MONY." Compl. ¶32;

- "The Browns subsequently learned that additional premium payments would continue to be required beyond the five year 'vanish point.'" Compl. ¶35;

- "MONY represented to Plaintiffs and members of the class[] that if dividends were used to reduce premiums ("premium offset"), after a certain stated number of years, the dividends and accumulated policy values would be sufficient to pay the entire premium, and that *no further out-of-pocket premium payments would be required to fund the policy.*" Compl. ¶38 (emphasis added).[17]

As demonstrated in MONY's opening brief -- and the Browns do not (and cannot) dispute this -- each and every one of these contentions is contradicted by the express terms of the insurance contract and pre-sale illustrations that they received, thus requiring dismissal of their ICFA claim. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002) (holding that ICFA claim could not be maintained where alleged misrepresentation was contradicted by express terms of governing contract); *Perez v. Citicorp Mortgage, Inc.*, 703 N.E.2d 518 (Ill. App. Ct. 1998) (same); *Lagen v. Belcor Co.*, 653 N.E.2d 968 (Ill. App. Ct. 1995) (same).[18]

---

[17] *See also* Compl. ¶5 ("policyholders were induced to purchase new whole life policies based upon a representation that . . . a limited number of cash outlays for premium payments in the early years of the policy" would keep the policy in force for the life thereof); ¶20 (MONY represented through "uniform sales presentations and policy illustrations" that "premiums paid for a certain number of years . . . would be sufficient to carry the cost of the policies for the life of the insured"); ¶32 (plaintiffs purchased policy at issue "on reliance on MONY's representations with respect to the out-of-pocket cost of the policy as set forth in the illustration"); ¶82 (MONY deceived policyholders by stating that "after the prescribed period of premium payments, no further premium payments would be required").

[18] Plaintiffs efforts to distinguish these cases (Pls. Br. at 23-24) -- citing no contrary authority whatsoever -- are unavailing. Factual differences notwithstanding, the legal principle at the heart of these decisions is clear: a plaintiff asserting an ICFA claim cannot demonstrate that an act or practice

*continued on the following page...*

19

Moreover, and perhaps more importantly, as set forth in MONY's opening brief, at his deposition, Richard Brown testified in no uncertain terms that he understood that (a) "if dividends fall below the illustrated values then the non-guaranteed values shown will not be achieved," and (b) "premium offset illustrations are dependent on dividends and premium payments will be required for a longer period of time than illustrated if dividends fall below the illustrated values." *See* Gleason Aff. Ex. 18 at 140-41. Thus, the Browns' own testimony belies any claim that they were in any sense "deceived" or that the alleged "misrepresentation" actually "caused" any purported injury that they claim to have suffered. *See Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 861-62 (Ill. 1998) (granting summary judgment on ICFA claim on grounds that alleged misrepresentation could not possibly have "caused" any purported injury where plaintiff's deposition testimony revealed that he was not in fact "deceived").[19]

**B.    The Browns' Claim Is Time-Barred**

For many of the same reasons, the Browns' statute of limitations arguments are also wide of the mark. As noted above (and more fully in MONY's opening brief), plaintiffs' own testimony reveals that Richard Brown knew and understood *at the time he received the illustration in 1990* that dividends were not guaranteed and that the premiums might not "vanish" as illustrated. Yet even ignoring this damning testimony, there can be no question

---

*...continued from the preceding page*

was deceptive where, as here, the alleged misrepresentation is belied by the express terms of the contract at issue. End of story.

[19] Given Richard Brown's clear understanding of how the policy worked, plaintiffs' allegations regarding the purported reasons *why* their premiums did not "vanish" after five years -- *e.g.*, MONY's alleged "undisclosed investment decisions" (*see* Pls. Br. at 22) -- are totally irrelevant.

but that when the Browns received their policy, which did not contain *any* of the representations allegedly made either orally or through illustrations by the field underwriter at the point of sale (*i.e.*, that the obligation to continue to pay premiums would "vanish" after five years), but instead contained provisions *expressly contradicting* those alleged misrepresentations, any reasonable person could (and should) have become aware that dividends were not guaranteed and that premiums were due as expressly provided in the policy in order to keep the policy in force.

Finally, as previously noted, Mr. Brown admitted in his deposition that he was informed as early as March of 1992 that additional premiums beyond the "vanish date" would be required. *See* Gleason Aff. Ex. 18 at 108-09. Thus, as set forth in MONY's moving memorandum, even giving plaintiffs the benefit of every doubt, the statute of limitations must have begun to run, *at the absolute latest*, in March of 1992, more than three years before the filing of their complaint.

## C.    The Browns' Class Allegations Must Be Dismissed

Finally, like the Massachusetts plaintiffs, the Browns' only argument in response to MONY's seeking to dismiss their class allegations is that that request is somehow procedurally improper and that a determination as to the propriety of class certification is "premature at this time." Pls. Br. at 27. This argument is even more spurious as applied to the putative class that the Browns seek to represent. For, as noted above, not only is MONY well within its rights to move affirmatively to dismiss plaintiffs' class allegations (*see supra* at pp. 17-18), but, as demonstrated in MONY's opening brief, it is beyond dispute that class certification would *never* be appropriate under the circumstances present here since (a) no class composed exclusively of opt-outs could ever be certified (*see In re Bridgestone/Firestone Inc., Tires Prods. Liab. Litig.,* Nos. 03-1379, 03-1564, 2003 WL

21

21418413 (7th Cir. June 20, 2003), (b) plaintiffs could in any event never satisfy the numerosity requirement of Fed R. Civ. P. 23(a)(1), given that only *eleven* Illinois residents opted out of the *Goshen* class (*see* Gleason Aff. ¶3), and (c) plaintiffs' allegations present a host of individualized, point-of-sale issues which predominate over any issues common to the class. Because no amount of additional discovery would be capable of altering these facts, plaintiffs' class allegations must be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its moving papers, defendant's motion for summary judgment should be granted.

Dated: September 5, 2003

Respectfully submitted,

NUTTER, McCLENNEN & FISH LLP

By: _John Sten /AS_

Daniel J. Gleason (BBO # 194900)
John A. Sten (BBO # 629577)
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 439-2000

*Attorneys for Defendant*

*Of Counsel*
Harvey Kurzweil
Richard W. Reinthaler
James P. Smith III
John E. Schreiber
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019-6092
212 259-8000

22

782561

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2003, a true copy of the foregoing document was served by hand (local counsel) and by overnight mail (all others) on all counsel of record.

John A. Sten /AS

John A. Sten

782561