At IAS Pt. 10 of the Supreme
Court of the State of New York
held in and for the County of
New York, 60 Centre Street,
New York, New York on the
*13* day of *AUG* , 1996.

P R E S E N T :

    HON. BEATRICE SHAINSWIT,

          Justice.

---

PAUL A. GOSHEN On Behalf Of )
Himself And All Others )
Similarly Situated, )
           )
      Plaintiff, )
           )
      vs. )    Index No. 95-600466
           )
THE MUTUAL LIFE INSURANCE COMPANY )    #002
OF NEW YORK and MONY LIFE )
INSURANCE COMPANY OF AMERICA )
          Defendants. )

---

          ~~[PROPOSED]~~ ORDER

    Upon the submissions of both parties in connection with
Plaintiff's motion for certification of this action as a class
action pursuant to Article 9 of the CPLR, and the authorities
cited therein, and for the reasons set forth in this Court's
memorandum decision dated June 7, 1996, attached hereto as
Exhibit A, this Court makes the following findings:

    1.    The prerequisites to class certification under
CPLR 901 have been satisfied in that:

        a.    the class is so numerous that joinder of all
members, whether otherwise required or permitted, is
impracticable;

Exhibit A

there are questions of law or fact common to the class, as defined below, which predominate over any questions affecting only individual members;

   c. the claims or defenses of the representative party are typical of the claims or defenses of the class;

   d. the representative party will fairly and adequately protect the interests of the class; and

   e. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

   2. Pursuant to CPLR 902, the Court has considered the following additional matters and concludes that they favor certification of this action as a class action:

   a. the interest of the members of the class in individually controlling the prosecution or defense of separate actions;

   b. the impracticability or inefficiency of prosecuting or defending separate actions;

   c. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

   d. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   e. the difficulties likely to be encountered in the management of a class action.

Based upon the previously referenced submissions of the parties, the authorities cited therein, and the findings set forth above,

IT IS HEREBY ORDERED, pursuant to Article 9 of the CPLR, as follows:

1.    This action shall proceed as a class action, on behalf of a class which shall consist of all persons or entities (the "Class Members") who have, or at the time of the policy's termination had, an ownership interest in one or more whole life, variable life or universal life insurance policies issued by Defendants (the "Policies") and were harmed due to Defendants' alleged wrongful conduct with respect to the sale of Policies on a "vanishing premium" basis as newly issued policies and/or as replacements for existing policies during the period from January 1, 1982 through and including December 31, 1995 (the "Class"). Plaintiff Paul Goshen shall be the Representative for the Class certified herein.

2.    Class members shall receive notice and an opportunity to request exclusion pursuant to CPLR § 904.  The time, content and method of such notice will be determined by subsequent order of the Court.

3.    Within sixty days of entry of an order certifying the Class (or such later date as shall be agreed upon by the parties), the parties shall jointly submit an order containing the form of class notice to be employed and the method of delivery of such notice or settle orders containing the form and

- 3 -

method of delivery of class notice each proposes the Court to accept.

4.    Excluded from the Class are Defendants, any entities in which either Defendant has a controlling interest or is a parent or subsidiary of or is controlled by either Defendant, the officers, trustees, employees, affiliates, legal representatives, heirs, successors and assigns of either Defendant, and all persons or entities who:

a.    entered into a settlement of a claim or an actual or potential lawsuit which validly releases either or both Defendants from any further claims concerning one or more Policies; or

b.    owned Policies on which the insured died while the Policy was in force.

5.    Pursuant to CPLR 906(1), this action shall proceed as a class action with respect to all common issues raised by the Complaint herein.

6.    The law firm of Milberg Weiss Bershad Hynes & Lerach LLP, One Pennsylvania Plaza, 49th Floor, New York, New York 10119-0165 is hereby designated as Lead Counsel for the Class in this action. Lead Counsel shall be responsible for the following:

a.    Briefing and arguing motions and filing opposing briefs in proceedings initiated by other parties;

b.    Initiating and conducting discovery;

- 4 -

c. Acting as spokesperson at pretrial
   conferences;

d. Negotiating with Defendants' counsel with
   respect to settlement and other matters;

e. Conducting trial and post-trial proceedings;

f. Consulting and employing experts;

g. Performing such other duties and undertaking
   such other responsibilities as they deem
   necessary or desirable in order to facilitate
   the orderly and efficient prosecution of this
   litigation and to avoid duplicative or
   unproductive effort;

h. Assigning tasks to other counsel for
   plaintiff in this action and any other action
   that may be consolidated or coordinated with
   this action; and

i. Coordinating and communicating with
   Defendants' counsel with respect to matters
   addressed in this paragraph.

FILED
COUNTY C..... OFFICE
NEW YORK
AUG 2 1 1996

E N T E R:

_____
J.S.C.

- 5 -

At IAS Part 10 of the Supreme
Court of the State of New York
held in and for the County of
New York, 60 Centre Street,
New York, New York on the
6 day of ℒℰℯ , 1996

**PRESENT:**

    HON. BEATRICE SHAINSWIT,

        Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL A. GOSHEN, On Behalf Of         :
Himself And All Others
Similarly Situated,             :

        Plaintiff,          : Index No. 95-600466

      -against-           :

THE MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK and MONY LIFE INSURANCE :
COMPANY OF AMERICA,

      Defendants.        :



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED ORDER

        IT IS HEREBY ORDERED, pursuant to Article 9 of the CPLR, that this

Court's Order dated August 13, 1996 (the "Order"), certifying this action as a class action,

is amended as follows:

        1.    Paragraph 1 of the Order is amended to read:

        "1.    This action shall proceed as a class action, on behalf of a class

which shall consist of all persons or entities (the "Class Members") who have, or at the

time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by Defendants (the "Policies") and were harmed due to Defendants' alleged wrongful conduct with respect to the sale of Policies on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995 (the "Class"). Plaintiff Paul Goshen shall be the Representative for the Class certified herein."

   2. Paragraph 4 of the Order is amended to read:

   "4. Excluded from the Class are Defendants, any entities in which either Defendant has a controlling interest or is a parent or subsidiary of or is controlled by either Defendant, the trustees of The Mutual Life Insurance Company Of New York, the directors of MONY Life Insurance Company Of America, and the officers, employees and field underwriters of either Defendant and their current spouses and minor children, and any of their affiliates, legal representatives, heirs, successors and assigns. Also excluded are all persons or entities who:

   (a) entered into a settlement of a claim or an actual or potential lawsuit concerning one or more Policies which validly releases either or both Defendants from any further claims with respect to any such Policy or were parties to a lawsuit concerning one or more Policies which asserted claims concerning the marketing or sale of any Policy on any "vanishing premium" basis wherein all claims against either or both Defendants with respect to any such Policy were dismissed with prejudice; or

2

(b) owned one or more Policies on which the insured or insureds

died while such Policies were in force."

E N T E R:



_____

J.S.C.

BEATRICE SHAINSWIT

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PAUL A. GOSHEN, On Behalf Of
Himself And All Others
Similarly Situated,

           Plaintiff,

vs.

THE MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK and MONY LIFE
INSURANCE COMPANY OF AMERICA,

           Defendants.

Index No. 95-600466
IAS Part 10
Justice Shainswit

---

### NOTICE OF PENDENCY OF CLASS ACTION

TO: ALL PERSONS OR ENTITIES (THE "CLASS MEMBERS") WHO HAVE, OR AT THE TIME OF THE POLICY'S TERMINATION HAD, AN OWNERSHIP INTEREST IN ONE OR MORE WHOLE LIFE OR UNIVERSAL LIFE INSURANCE POLICIES (THE "POLICIES") ISSUED BY THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK AND/OR MONY LIFE INSURANCE COMPANY OF AMERICA (COLLECTIVELY, THE "COMPANY") WHICH WERE SOLD ON AN ALLEGED "VANISHING PREMIUM" BASIS, AS NEWLY ISSUED POLICIES AND/OR AS REPLACEMENTS FOR EXISTING POLICIES, DURING THE PERIOD FROM JANUARY 1, 1982 THROUGH AND INCLUDING DECEMBER 31, 1995 (THE "CLASS").

PLEASE READ THE SECTIONS ENTITLED "DESCRIPTION OF THE LITIGATION" AND "DESCRIPTION OF THE PLAINTIFF CLASS" CAREFULLY; THEY CONTAIN IMPORTANT INFORMATION FOR ASSESSING YOUR ELIGIBILITY FOR CLASS MEMBERSHIP

    This Notice is given pursuant to New York Civil Practice Law and Rules 904 and Orders of the Supreme Court of the State of New York, County of New York. The purpose of this Notice is to inform you of the pendency of this class action (the "Action"), how it may affect your rights, and what steps you may take in regard to this case. This Notice is not an expression of an opinion by the Court as to the merits of any of the claims asserted by either side in this litigation.

### DESCRIPTION OF THE LITIGATION

    1. Plaintiff, Paul Goshen, instituted this action in 1995 on behalf of all persons and entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by the Company (the "Policies") which were sold on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995 (the "Class").

    2. The parties in the Action are as follows:

        (a) The named plaintiff is Paul Goshen, who has been certified as a representative of the Class as to the claims against the defendants.

        (b) The defendants are The Mutual Life Insurance Company Of New York and MONY Life Insurance Company Of America, collectively, the "Company".

    3. As set forth more fully in plaintiff's First Amended Class Action Complaint (the "Complaint"), plaintiff seeks injunctive and other equitable relief and/or monetary damages against the defendants in connection with the harm alleged to have been sustained by members of the Class as a result of the sale of so-called "vanishing premium" policies by the Company.

    4. Plaintiff alleges, among other things, that the Company, through a single nationwide scheme, orchestrated from the Company's New York headquarters, developed and distributed standardized false and misleading sales materials, dividend and interest projections, sales scripts and policy illustrations, and trained its sales force to make standardized sales presentations which incorporated these materials to sell insurance policies on a "vanishing premium" basis, both as new policies and as replacement policies for current policies. Plaintiff alleges that the sales presentations, illustrations and materials were employed to induce members of the Class to purchase life insurance on the understanding that after the payment or prepayment of a certain number of premiums, the life insurance policy would be "fully paid-up" and/or no additional money would be due "out-of-pocket." As a result, plaintiff alleges, those presentations, illustrations and materials concealed or misrepresented, among other things: (i) the number of out-of-pocket premium payments a policyholder would have to pay for his or her policy, (ii) the cash value and/or benefits a policyholder would realize under his or her policy based on a particular number of cash premium payments, (iii) the amount of dividends or interest a policyholder would receive, and/or (iv) for existing policyholders, the funds that would be withdrawn from current insurance policies to pay the premiums on the new policy.

    5. Defendants have answered the Complaint, denied liability and asserted numerous affirmative defenses.

6. Plaintiff moved to certify this action as a class action. The Court granted plaintiff's motion to maintain this action as a class action by Memorandum Decision dated June 7, 1996. An Order certifying this action as a class action was signed by the Court on August 13, 1996, and an Amended Order was signed on December 6, 1996.

## DESCRIPTION OF THE PLAINTIFF CLASS

7. By Memorandum Decision dated June 7, 1996, by Order dated August 13, 1996 and by Amended Order dated December 6, 1996, the Court determined that the claims asserted against defendants are to be maintained as a class action pursuant to Article 9 of the CPLR on behalf of a class consisting of all persons and entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by the Company (the "Policies") which were sold on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995 (the "Class").

8. Excluded from the Class are defendants, any entities in which either defendant has a controlling interest or is a parent or subsidiary of or is controlled by either defendant, the trustees of The Mutual Life Insurance Company Of New York, the directors of MONY Life Insurance Company Of America, and the officers, employees and field underwriters of either defendant and their current spouses and minor children, and any of their affiliates, legal representatives, heirs, successors and assigns. Also excluded are all persons or entities who:

(a) entered into a settlement of a claim or an actual or potential lawsuit concerning one or more Policies which validly releases either or both defendants from any further claims with respect to any such Policy or were parties to a lawsuit concerning one or more Policies which asserted claims concerning the marketing or sale of any Policy on any "vanishing premium" basis wherein all claims against either or both defendants with respect to any such Policy were dismissed with prejudice; or

(b) owned one or more Policies on which the insured or insureds died while such Policies were in force.

## YOUR STATUS AS A CLASS MEMBER

9. (a) If you are a member of the Class, you will be bound by any judgment in the Action, whether favorable or unfavorable. As a member of the Class, you may share in any recovery or relief obtained on behalf of the Class and you will be precluded from prosecuting your claim individually. If judgment is rendered in favor of defendants, members of the Class will be denied any recovery or relief.

(b) Counsel for the named plaintiff and the Class are:

Melvyn I. Weiss, Esq.
Barry A. Weprin, Esq.
MILBERG WEISS BERSHAD HYNES & LERACH LLP
One Pennsylvania Plaza
New York, New York 10119-0165

(c) If you are and wish to remain a member of the Class, you do not have to take any further steps at this time. You will automatically be a member of the Class, unless you request exclusion in accordance with the procedure set forth in paragraph (e) below.

(d) If you are a member of the Class, you have the right to enter an appearance before the Court. If you choose to appear, you or your counsel must file an appearance on or before January 21, 1997, and mail copies of such appearance to all counsel of record. If you choose to retain separate counsel, you must do so at your own expense.

(e) Any member of the Class may request to be excluded and not bound by these proceedings. If you do not wish to be included as a Class member, you must ask the Court to exclude you from the Class by mailing a signed letter requesting exclusion to:

Regina L. LaPolla, Esq.                                   James P. Smith III, Esq.
MILBERG WEISS BERSHAD HYNES & LERACH LLP   and            DEWEY BALLANTINE
One Pennsylvania Plaza                                     1301 Avenue of the Americas
New York, New York 10119-0165                             New York, New York 10019-6092

The request for exclusion must set forth your name, address and the date(s) of your purchase and/or termination of your Policy or Policies, and the number(s) of your Policy or Policies. Such request must be postmarked on or before January 21, 1997. If your request for exclusion is timely mailed, you will be excluded from the Class, and you will not be bound by any judgment, favorable or unfavorable, entered in the Action, and you will not share in the recovery, if any, or be precluded from prosecuting your own claim. Requests for exclusion must be signed by the policyholder or someone who is expressly authorized in writing to sign on behalf of the policyholder and may seek exclusion only with respect to individual claims of specified individuals or entities. TO BE EFFECTIVE A REQUEST FOR EXCLUSION SHOULD IDENTIFY THE POLICY NUMBER OR NUMBERS AS TO WHICH THE REQUEST APPLIES. Persons who do not exclude themselves in the manner described herein will be deemed to have consented to the Court's exercise of jurisdiction over the Class and each member thereof.

(f) By remaining in the Class, you will not subject yourself to any obligation to pay the costs of the litigation if you are represented by plaintiff's attorneys herein. All costs and expenses, including attorneys' fees, will be paid from any recovery obtained on behalf of the Class, in which case such payment must be approved by the Court.

## RIGHT TO EXAMINE COURT PAPERS

10. The foregoing description of the Action and other matters described herein does not purport to be comprehensive. Members of the Class are referred to the pleadings and other papers filed in this Action, which are available for inspection by you or your attorneys during regular office hours at the Supreme Court for the State of New York, County of New York, 60 Centre Street, New York, New York. PLEASE DO NOT WRITE OR CALL THE COURT.

## KEEP YOUR ADDRESS CURRENT

11. To assist the Court and the parties in maintaining accurate lists of Class members, you are requested to mail notice of any changes in your address to:

James P. Smith III, Esq.
DEWEY BALLANTINE
1301 Avenue of the Americas
New York, New York 10019-6092

Dated:   New York, New York
December 6, 1996

By Order of:
THE HONORABLE BEATRICE SHAINSWIT, J.S.C.

3

95-2141t

Sec D Pg8

JAN 07 1997

19____

**The New York Times**
229 WEST 43RD STREET • NEW YORK, NY 10036-3959

**CERTIFICATION OF PUBLICATION**

I, __ARLENE MOLLER__ , in my capacity as a Principal Clerk of the Publisher of *The New York Times* a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of *The New York Times* on the following date or dates, to wit on

December 23 19 96

Arlene Moller

Approved:

THIS CERTIFICATION IS NOT VALID WITHOUT PROPER SEAL



I, ARLENE MOLLE, of the Publisher of *The* circulation printed and pu York, hereby certify that t in the editions of *The* to wit on

Approved:

---

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

PAUL A. GOSHEN, On Behalf Of
Himself And All Others
Similarly Situated,

　　　　　　　Plaintiff,

　　vs.

THE MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK and MONY LIFE
INSURANCE COMPANY OF AMERICA,
　　　　　　　Defendants.

Index No. 95-600466
IAS Part 10
Justice Shainswa

**TO:** ALL PERSONS OR ENTITIES WHO HAVE, OR AT THE TIME OF THE POLICY'S TERMINATION HAD, AN OWNERSHIP INTEREST IN ONE OR MORE WHOLE LIFE OR UNIVERSAL LIFE INSURANCE POLICIES (THE "POLICIES") ISSUED BY THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK AND/OR MONY LIFE INSURANCE COMPANY OF AMERICA (COLLECTIVELY, THE "COMPANY") WHICH WERE SOLD ON AN ALLEGED "VANISHING PREMIUM" BASIS, AS NEWLY ISSUED POLICIES AND/OR AS REPLACEMENTS FOR EXISTING POLICIES, DURING THE PERIOD FROM JANUARY 1, 1982 THROUGH AND INCLUDING DECEMBER 31, 1995 (THE "CLASS").

PLEASE TAKE NOTICE that the Supreme Court of the State of New York, the Honorable Beatrice Shainswit presiding, has by Memorandum Decision dated June 7, 1996, Order dated August 13, 1996 and by Amended Order dated December 6, 1996, determined that the claims asserted against defendants are to be maintained as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules.

(1) The Class. The class that has been certified is comprised of all persons and entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by the Company (the "Policies") which were sold on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995 (the "Class").

The Class does not include The Mutual Life Insurance Company Of New York and/or MONY Life Insurance Company Of America or any entities in which either of those companies has a controlling interest or is a parent or subsidiary of or is controlled by either company, the trustees of The Mutual Life Insurance Company Of New York, the directors of MONY Life Insurance Company Of America or the officers, employees and field underwriters of either company and their current spouses and minor children, and/or their affiliates, legal representatives, heirs, successors and assigns, or any persons or entities who (i) entered into a settlement of a claim or an actual or potential lawsuit concerning one or more Policies which validly releases either or both of the aforementioned companies from any further claims with respect to any such Policy or were parties to a lawsuit concerning one or more Policies which asserted claims concerning the marketing or sale of any Policy on any "vanishing premium" basis wherein all claims against either or both companies with respect to any such Policy were dismissed with prejudice; or (ii) owned one or more Policies on which the insured or insureds died while such Policies were in force.

(2) Choices and Deadlines for Class Members. If you are a Class Member, you have the following choices with respect to each Policy issued during the Class Period in which you have an ownership interest:

You may remain in the Class. If this is what you choose to do, you need not take any action at this time. Your interests will be represented without cost to you by the law firm of Milberg Weiss Bershad Hynes & Lerach, LLP, which is acting as lead counsel for the Class. You should keep in mind that, if you remain in the Class, you will be bound by all orders and judgment entered in this case, whether favorable or unfavorable, and you will not be able to maintain, continue or commence any other claim, lawsuit or proceeding against the Company relating to the Policies. You may, if you desire, retain your own separate counsel at your own expense, but you are not required to do so.

You may exclude yourself from the Class by sending a formal written request for exclusion with respect to each Policy for which you wish to be excluded that complies with the requirements described in the Notice of Pendency (see paragraph 3 below). The request must be sent to Regina L. LaPolla, Esc. at MILBERG WEISS BERSHAD HYNES & LERACH LLP, One Pennsylvania Plaza, New York, New York 10119, and James P. Smith III, Esq. at DEWEY BALLANTINE, 1301 Avenue of the Americas, New York, New York 10019, and must be postmarked by no later than January 21, 1997. If you request exclusion, you will be excluded from the Class, and you will not be bound by any judgment, favorable or unfavorable, entered in the Action, and you will not share in the recovery, if any, or be precluded from prosecuting your own claim.

(3) Further Information. If you wish to obtain a copy of the Notice of Pendency, please call plaintiff's Mutual of New York Class Action Information line at 1-800-676-9496. DO NOT TELEPHONE THE COURT OR THE CLERK OF THE COURT.



MARKETPLACE TODAY
1000 WILSON BOULEVARD
ARLINGTON, VA 22229
(703) 276-6350

## VERIFICATION OF PUBLICATION

**STATE OF VIRGINIA**
**COUNTY OF ARLINGTON**

Being duly sworn Venus D. Bradley, says that she is the principal clerk of the claimant, and is duly authorized by claimant to make this affidavit, and is fully acquainted with the facts stated herein: on Tuesday, December 24, 1996 advertisement Supreme Court of The State of New York County of New York Paul A. Goshen vs. The Mutual Life Insurance Company of New York and Mony Life Insurance Company of America Index No. 95-600466 was published.

Principal Clerk of USA TODAY
December 31, 1996

Subscribed and sworn to before me
this _31_ day of _12th_ month
_1996_ year.

Notary Public

...e catalog for the company's ratings, Plumb says. Fourth-quarter earnings for Limited are projected to be 64% higher than last year, says that has left the last-minute shop...

...'th less to choose from. In short, late in the season: holiday ski and greens.

...' Lands' End. Last holiday season, the catalog company spent time and money unloading unsold clothing through clearance sales. This year, it battles the opposite problem. By Michael Smith says a surge of orders in early fall left the company with leaner-than-expected inventories for the Christmas rush. In short supply: fleece. The popular scuba fabric has sold well all season, he says. Sold out a Lands' End-ly cashmere sweater — at $395

...even if it's flex the very thing ye... ad in mind. "If it's ...le. 24 and you've got a raging 4-year-old at home, you are buying," he says. "Are you mad at Target because they didn't have any Nintendo 64s? Sure. For about a minute. Then you are buying something else. It's Christmas. You have no choice. And the retailers know that."

## Tough lesson

Retail consultant Kurt Barnard says merchants are hoping this season will train shoppers to turn out earlier next year. But, Barnard says,

## You have no choice. And the retailers know that."

— Peter Glen

July.' But it will take more than e season to retrain ...onsumers. Retailers have more work to do."

But be warned: After watching so many competitors go out of business, merchants will continue to plan strategies that boost the bottom line and please shareholders. The era of tough love will stretch beyond this one season.

"Customers aren't loyal to stores any more. They can't expect stores to be loyal either," says Davidowitz. "This is a bottom-line world. This is rational, bottom-line oriented inventory management at work. Get used to it."

LEGAL NOTICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PAUL A. GOSHEN, On Behalf Of
Himself And All Others
Similarly Situated,

Plaintiff,

vs.

THE MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK and MONY LIFE
INSURANCE COMPANY OF AMERICA,
Defendants.

Index No. 95-600466
IAS Part 10
Justice Shainswit

TO: ALL PERSONS OR ENTITIES WHO HAVE, OR AT THE TIME OF THE POLICY'S TERMINATION HAD, AN OWNERSHIP INTEREST IN ONE OR MORE WHOLE LIFE OR UNIVERSAL LIFE INSURANCE POLICIES (THE "POLICIES") ISSUED BY THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK AND/OR MONY LIFE INSURANCE COMPANY OF AMERICA (COLLECTIVELY, THE "COMPANY") WHICH WERE SOLD ON AN ALLEGED "VANISHING PREMIUM" BASIS, AS NEWLY ISSUED POLICIES AND/OR AS REPLACEMENTS FOR EXISTING POLICIES, DURING THE PERIOD FROM JANUARY 1, 1982 THROUGH AND INCLUDING DECEMBER 31, 1995 (THE "CLASS").

PLEASE TAKE NOTICE that the Supreme Court of the State of New York, the Honorable Beatrice Shainswit presiding, has by memorandum Decision dated June 7, 1996, by Order dated August 13, 1996 and by Amended Order dated December 6, 1996, determined that the claims asserted against defendants are to be maintained as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules.

(1) The Class. The class that has been certified is comprised of all persons and entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by the Company (the "Policies") which were sold on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including December 31, 1995 (the "Class").

The Class does not include The Mutual Life Insurance Company Of New York and/or MONY Life Insurance Company Of New York or any entities in which either of those companies has a controlling interest or is a parent or subsidiary of or is controlled by either company, the trustees of The Mutual Life Insurance Company Of New York, the directors of MONY Life Insurance Company Of America or the officers, employees and field underwriters of either company and their current spouses and minor children, any of their affiliates, legal representatives, heirs, successors and assigns, or any persons or entities who (i) entered into a settlement of a claim or an actual or potential lawsuit concerning one or more Policies which validly releases either or both of the aforementioned companies from any further claims with respect to any such Policy or were parties to a lawsuit concerning one or more Policies which asserted claims concerning the marketing or sale of any Policy on any "vanishing premium" basis wherein all claims against either or both companies with respect to any such Policy were dismissed with prejudice; or (ii) owned one or more Policies on which the insured or insureds died while such Policies were in force.

(2) Choices and Deadlines for Class Members. If you are a Class Member, you have the following choices with respect to each Policy issued during the Class Period in which you have an ownership interest:

You may remain in the Class. If this is what you choose to do, you need not take any action at this time. Your interests will be represented without cost to you by the law firm of Milberg Weiss Bershad Hynes & Lerach, LLP, which is acting as lead counsel for the Class. You should keep in mind that, if you remain in the Class, you will be bound by all orders and judgments entered in this case, whether favorable or unfavorable, and you will not be able to maintain, continue or commence any other claim, lawsuit or proceeding against the Company relating to the Policies. You may, if you desire, retain your own separate counsel at your own expense, but you are not required to do so.

You may exclude yourself from the Class by sending a formal written request for exclusion with respect to each Policy for which you wish to be excluded that complies with the requirements described in the Notice of Pendency (see paragraph 3 below). The request must be sent to Regina L. LaPolla, Esq. at MILBERG WEISS BERSHAD HYNES & LERACH LLP, One Pennsylvania Plaza, New York, New York 10119, and James P. Smith III, Esq. at DEWEY BALLANTINE, 1301 Avenue of the Americas, New York, New York 10019, and must be postmarked by no later than January 21, 1997. If you request exclusion, you will be excluded from the Class, and you will not be bound by any judgment, favorable or unfavorable, entered in the Action, and you will not share in the recovery, if any, or be precluded from prosecuting your own claim.

(3) Further Information. If you wish to obtain a copy of the Notice of Pendency, please call plaintiff's Mutual of New York Class Action Information Line at 1-800-675-9495. DO NOT TELEPHONE THE COURT OR THE CLERK OF THE COURT.

Clerk of the Court

At IAS Part 10 of the Supreme
Court of the State of New York
held in and for the County of
New York, 60 Centre Street,
New York, New York on the
*day of *Dec* , 1996

PRESENT:

HON. BEATRICE SHAINSWIT,

Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL A. GOSHEN, On Behalf Of        :
Himself And All Others
Similarly Situated,                 :

Plaintiff,        :

-against-        :    Index No. 95-600466

THE MUTUAL LIFE INSURANCE COMPANY   :
OF NEW YORK and MONY LIFE INSURANCE
COMPANY OF AMERICA,                 :

Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER PROVIDING FOR NOTICE TO THE CLASS

WHEREAS this action has been certified as a class action under CPLR

Article 9 by Memorandum Decision dated June 7, 1996 and by Order dated August 13,

1996 as amended November 14, 1996;

AND WHEREAS this Court's Order dated August 13, 1996 provides that

members of the Class shall receive notice of the class action pursuant to CPLR 904, and

that the time, content and method of such notice will be determined by subsequent order of the Court;

AND WHEREAS the Court finds that it is not possible to identify each individual member of the Class based upon defendants' books and records, and that the best notice practicable under the circumstances therefore would be a combination of notice by publication and individual notice to the individuals and entities identified from policyholder records maintained by defendants as described in the affidavit of Anthony F. Recine, sworn to on November 14, 1996, annexed as Exhibit A hereto;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The form and content of the notice mailed to the individuals and entities identified from the defendants' books and records as described in Exhibit A shall conform with Exhibit B hereto (the "Mailed Notice"). The form and content of the notice to be published in the national editions of USA Today and The New York Times shall conform with Exhibit C hereto (the "Published Notice"). The Mailed Notice and the Published Notice are referred to collectively herein as the "Notice."

2. Upon entry of this Order, counsel for defendants shall promptly, but in no event later than 10 days thereafter, provide plaintiff's counsel with a list of those persons to whom individual notice is to be sent, and shall provide mailing labels for such persons to the printer selected by plaintiff's counsel to print and mail the notice.

3. Promptly upon receipt by the printer of the mailing labels referred to in paragraph 2 above, and in no event later than 5 business days thereafter, plaintiff's

2

counsel shall cause the Mailed Notice to be sent through the United States mail to each person or entity on the list referred to in paragraph 2 above.

4. As soon as practicable, but in no event later than 15 business days after entry of this Order, plaintiff's counsel shall cause the Published Notice to appear in the national editions of USA Today and The New York Times.

5. Within forty-five (45) days after mailing of the Mailed Notice as set forth in paragraph 3 above and the publication of the Published Notice as set forth in paragraph 4 above, counsel for plaintiff shall cause an affidavit or affidavits to be filed with the Clerk of the Court and served upon counsel for the parties to evidence the fact that the printed Mailed Notice was mailed and the Published Notice was published. Counsel for plaintiff shall maintain in confidence a list or lists of all persons, identified by name, to whom the Mailed Notice was mailed, and identifying, to the best of counsel's knowledge, those instances where the Notice was returned to sender, which list shall be made available to the Court upon request.

6. Defendants shall bear the expense of searching for and compiling the list of notice recipients referred to in paragraph 2 above. Plaintiff shall bear all other expenses, including the expense of printing the Mailed Notice and of postage required to mail the Notice. Plaintiff shall also bear the expense of placing the Published Notice.

7. The Court approves the form of Notice and finds that the publication, mailing and distribution of such notice substantially in the manner and form set forth in this Order meet the requirements of Article 9 of the Civil Practice Laws and Rules and

3

due process and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

8. The deadline for requests for exclusion pursuant to CPLR § 904 as set forth in the Notice shall be forty-five (45) days after entry of this Order. Within thirty (30) days of the expiration of the deadline for such requests, counsel for the plaintiff and defendants shall compile a list of the persons requesting exclusion, including such other information as each person requesting exclusion is required to provide.

9. In the event that, at some future time, plaintiff obtains leave to amend the complaint, any such amendment shall be applicable to the Class and no additional notice need be given to the Class concerning such amendment.

ENTER:

_____
J. S. C.

BEATRICE SHAINSWIT

To:    MILBERG WEISS BERSHAD
       HYNES & LERACH LLP
       One Pennsylvania Plaza
       New York, New York 10119
       Lead Counsel for the Class

       -and-

       DEWEY BALLANTINE
       1301 Avenue of the Americas
       New York, New York 10019
       Attorneys for Defendants
       The Mutual Life Insurance Company
       of New York and MONY Life Insurance
       Company of America



4

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

Page 1

⚑
Only the Westlaw citation is currently available.

NOT APPROVED BY REPORTER OF
DECISIONS FOR REPORTING IN STATE
REPORTS. NOT REPORTED IN N.Y.S.2d.

Supreme Court, New York County, New York.

Paul A. GOSHEN, On Behalf Of Himself And All
Others Similarly Situated,
Plaintiff,
v.
THE MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK and Mony Life Insurance
Company
of America, Defendants,

No. 600466, 95-006.

Oct. 21, 1997.

SHAINSWIT, J.

*1 Defendants The Mutual Life Insurance
Company of New York and MONY Life insurance
Company of America (together "MONY") move for
summary judgment dismissing the First Amended
Class Action Complaint (the "Complaint").

### I. Facts

This class action is one of many actions brought
nationwide, against numerous major insurance
companies, to recover damages allegedly sustained
by plaintiffs who purchased life insurance policies
pursuant to a sales promotion campaign involving
the concept of "vanishing premiums." People who
purchased various types of life insurance under
vanishing premium plans were allegedly induced to
buy their policies based on representations made by
the insurance company sales representatives, based
on sales materials and illustrations prepared by the
insurance company, claiming that annual premiums
on the policies would only have to be paid out in
cash by the insured for a certain limited number of
years (depending on the individual policy), before
the dividends payable to the insured, or the interest

earned from the increasing cash value of the policy,
would be sufficient to cover the yearly cost of the
premiums. At that point, allegedly, the insured's
obligation to make any further cash payments of
premiums would "vanish," while the policy would
remain in force.

The gravamen of the plaintiffs' action herein is the
alleged failure of the policies sold to it by MONY
under the vanishing premium plan to perform as
promised, and the financial damage sustained by
each individual plaintiff as a result of their reliance
on the vanishing premium concept. According to
the plaintiffs, MONY, in order to promote the sale
of its life insurance policies "engaged in a number
of improper business and accounting transactions
solely for the purpose of artificially inflating its
reserves, admitted assets and balance sheet" so as to
enable MONY to market the vanishing premium
concept based upon "artificially inflated dividend
scales and interest crediting races." Complaint ¶
4. The Complaint states that many of the various
types of policies [FN1] sold by MONY were
"extremely dependant upon, and thus sensitive to,
changes in prevailing interest rates." Complaint ¶
1. Nevertheless, MONY aggressively marketed
these policies to the plaintiffs, based on the
vanishing premium concept. The plaintiffs claim to
have sustained damages when MONY informed
them that, as a result of the downturn in the
economy, and the fall of interest rates in general,
acting upon the precarious financial house of cards
MONY had erected, the plaintiffs' obligation to pay
yearly premiums would not vanish at the end of the
promised term, but that the plaintiffs would remain
obligated to pay yearly cash premiums for an
unspecified amount of years in order to retain their
policies. As a result, the plaintiffs were required to
choose between terminating their policies, or
maintaining them, either by continuing to make
additional yearly cash premium payments, or
raiding the policies' cash value to pay the premiums,
thus decreasing the value of the policies. Some
plaintiffs are alleged to have been induced to sell
existing, valuable life insurance policies in
exchange for expensive, and potentially worthless
vanishing premium policies, a practice known as
"churning."

> FN1. MONY's insurance products
> included participating whole life, group
> life, variable participating whole life,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

universal life, flexible variable life and variable second-to-die life insurance policies. Depending on the type of insurance policy, an insured either shares in the profits of the insurer, by receiving dividends (as with "participating" life insurance policies), or accumulates interest on the cash value of the policy (as in the case of universal or variable life policies).

\*2 On the present motion plaintiffs insist that they can prove that MONY knew at the time its agents were selling policies based on the vanishing premium concept that the vanishing premium policies could not perform as promised, based upon the false financial assumptions underlying MONY's sales presentations. Significantly, the fraud alleged against MONY implicates the top management of MONY directly, as the orchestrators of a scheme originating at MONY's top levels. The action is not concerned with the individual liability of MONY agents for any individual acts of fraud. The Complaint sets forth causes of action for fraudulent concealment and deceit (First Cause of Action), negligent misrepresentation (Second Cause of Action), reckless, wanton and/or negligent supervision (Third Cause of Action), breach of contract (Fourth Cause of Action), breach of fiduciary duty (Fifth Cause of Action), fraudulent inducement (Sixth Cause of Action), violations of Insurance Law § 4226 (Seventh Cause of Action), violations of Insurance Law § 2123 (Eighth Cause of Action), and violations of General Business Law § 349 (Ninth Cause of Action). MONY seeks the dismissal of each count as failing to state a cause of action, or upon the grounds of untimeliness under the applicable Statute of Limitations.

The present case differs from *Cole v. The Equitable Life Insurance Society*, Index No. 108611/95 ("*Cole* "), a "vanishing premium" class action which was dismissed in part, and upheld in part, in an order and decision of this court dated December 12, 1996, most significantly in that (1) the defendant insurance company in *Cole* made its motion to dismiss prior to joinder of issue, and prior to any significant discovery in the action, (2) *Cole* had not yet been certified as a class action at the time of the motion, and (3) the motion was decided under the substantive law of Florida, which differs in some respects from that of New York. In the present action, MONY has chosen to chart a

different course, permitting massive discovery and acquiescing to class action certification, in order to ensure, to the extent possible, that the determination made herein ends all present and future litigation on the matter of its vanishing premium policies [FN2].

> FN2. In the present motion MONY has chosen to refer to the vanishing premium option as "premium offset" billing. However, in its sales presentations, and on prior motions, MONY used the term "vanishing premiums," and, therefore, that is the term the court will use.

## II. Discussion

### A. Choice of Law

The parties have agreed that New York law should govern in this case, so no choice of law analysis need be made. Consequently, there is no cause to refer to the laws of sundry states for guidance (as plaintiffs would have this court do), where New York precedent already exists.

### B. Standards on Motion for Summary Judgment for Dismissal of Complaint

This motion is brought as one for summary judgment under CPLR 3212, to dismiss the complaint for failure to state any claim upon which relief can be granted under CPLR 3211(a)(7). Consequently, MONY's does not address its motion to the absence of triable issues, but to the failure of the Complaint to state supportable factual allegations worthy of trial.

\*3 Because of the submission by the parties of an abundance of evidentiary matter, this court's inquiry is directed at whether or not the plaintiffs have any cognizable cause of action, not whether they have properly stated one. *Guggenheimer v. Ginsburg*, 43 N.Y.2d 268, 401 N.Y.S.2d 182, 372 N.E.2d 17. "When evidentiary material submitted in support of a complaint demonstrates that a material fact claimed by the plaintiff is not a fact at all, there is no bar to dismissal of the complaint for failure to state a cause of action." *Prudential-Bache Metal Co., Inc. v. Binder*, 121 A.D.2d 923, 926, 504 N.Y.S.2d 646. Therefore, the court must review the sufficiency of the plaintiffs' factual allegations, based on the evidence which they have presented in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

support of their Complaint, in order to discern if any actionable claims exist.

### C. Merits of Complaint

#### i. Breach of Contract

Whether or not the plaintiffs can maintain the present action is to a great extent dependent upon whether the evidence of MONY's alleged pre-contractual misrepresentations is admissible to prove the various claims, in light of the inclusion in each policy of insurance of a general merger clause, and provisions precluding changes to the policy as written, except upon certain conditions. Although plaintiffs inventory a host of allegedly deceptive promotional materials and sales practices used to sell vanishing premium policies, the parties focus primarily upon the written "illustrations" presented to each plaintiff at the point of sale. These documents were used to "illustrate" how many years the insured would need to make annual cash outlays before the need for further cash contributions would cease. According to the plaintiffs, the illustrations "uniformly misrepresented the number or amount of premiums to be paid by, *inter alia*, showing '0' [zero] as the 'amount due' or 'premium due' " after the end of the agreed-upon period, and by "failing to disclose the interdependency between the 'illustrated' policy performance and the underlying assumptions," which, allegedly, were known by MONY to be false. Complaint ¶ 6.

Apparently, several versions of the illustrations were utilized by MONY. One type of illustration contained the instruction that the illustration "was not valid without form 11334 SL." This form, entitled "Limitations and Definitions," cautioned the potential purchaser, *inter alia*, that "[t]he policy with the application is the entire contract," and that the projected interest rate upon which the illustration was based was "an assumed rate,' and that a declared rate of insurance (guaranteed at at least 4%), would be announced "periodically." A second type of illustration, which also indicated that it was not valid unless accompanied by a Limitations and Definitions form, contained additional language, on its face, stating "[t]his illustration shows the surrender of values dependant in whole or in part on dividends paid by the Company," which values "are not guaranteed." These illustrations state further that "[d]ividends shown and amounts dependent on them are based

on the current illustrative formula," and are "neither guarantees nor estimates of future results." There is dispute as to whether all of the plaintiffs received the forms which were supposed to accompany their illustrations.

*4 The policies of insurance themselves, regardless of type, carry the admonition that the policy (which incorporated the signed application), contained the parties' entire agreement, and that no change in the policy would be valid unless such change was approved by an executive officer. The policies also included a ten-day "free look" privilege, permitting the insured to return the policy within that time for a full refund. All of the policies indicate that premiums would continue to be due throughout the term of the policy, and none of the policies make any reference to a premium payment plan based on the vanishing premium concept, although the policies do refer to other, unrelated circumstances in which dividends might be payable to the policyholder, and might be used to pay premiums.

The plaintiffs do not claim that the illustrations alone constitute enforceable contracts, but that the illustrations, and the promises they allegedly contained concerning the length of time cash premiums would be due, are enforceable provisions of the insurance policies which were issued to the plaintiffs. However, under the parol evidence rule, evidence extrinsic to the writing between the parties will not be employed to vary or add to the terms of the writing, especially where the contract contains a merger clause. *NAB Construction Corp. v. Consolidated Edison Company of New York, Inc.*, 222 A.D.2d 381, 636 N.Y.S.2d 37. Nor is parol evidence available to create an ambiguity in a writing which is otherwise clear on its face. *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639.

The illustrations are neither endorsed by MONY (so as to make them enforceable in their own right), nor incorporated in any manner by reference in the policies (despite the plaintiffs' claims), and so, under the parol evidence rule, can only be examined by this court if the policies of insurance are ambiguous (so as to justify resort to extrinsic evidence for clarification), the policies of insurance are not fully integrated agreements, or if the illustrations do not, in fact, contradict, vary, add to or subtract from the terms of the writing.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

The interpretation of unambiguous contracts is, unquestionably, the obligation of the court. *Mallad Construction Corp. v. County Federal Savings & Loan Association,* 32 N.Y.2d 285, 344 N.Y.S.2d 925, 298 N.E.2d 96. Despite the plaintiffs' efforts to prove that the policies are not complete integrations of the parties' agreements, or that the policies are ambiguous in their terms, the merger clauses contained in each policy are straightforward and unambiguous: the writing as encompassed by the policy and application is the parties' entire agreement. Further, as this court found in *Cole, supra,* while the illustrations may not actually contradict the terms of the policies, which unambiguously calls for the payment of premiums every year (since the vanishing premium scheme anticipated that premiums would continue to be paid, varying only how they would be paid), the illustrations unquestionably add a provision to the contract of insurance, in which the cessation of the obligation to make a cash outlay to pay for yearly premiums is guaranteed as of a certain date, a unique manner of payment nowhere referenced in the policy. None of the language cited by the plaintiffs concerning other circumstances under which premiums might be paid by accumulated dividends and/or interest is comparable to the "vanishing premium" plan plaintiffs would have this court incorporate into the policies. Consequently, the plaintiffs cannot, as a matter of law, establish that the promises allegedly encompassed by the illustrations ever became part of the parties' agreements, and cannot seek to enforce these alleged promises under a theory of breach of contract. *See, Untermyer v. The Mutual Life Insurance Co. of New York,* 128 AppDiv 615, 113 N.Y.S. 221. [FN3]

> FN3. The language contained in the insurance policies and illustrations in *Cole, supra,* which served in that case to create an ambiguity sufficient to ward off dismissal of the cause of action alleging breach of contract, is singular to those writings, and has no bearing on the present action.

**ii. Fraud**

**a. The Effect of the Merger Clause on Plaintiffs' Fraud Claims**

*5 MONY's initial challenge to the plaintiffs' fraud-based allegations is premised on the plaintiffs' alleged inability to claim the right to rely upon the illustrations, or other pre-contract representations, because of the written disclaimer of reliance which MONY claims is part of each policy, by virtue of the inclusion in each policy of the general merger clause, the provision disallowing changes to the policy unless made by a MONY executive officer, and the express language of the policy requiring the payment of premiums in each and every year specified in the policy.

The rule in New York is that a general merger clause declaring a writing to be the entire understanding of the parties will not bar admission of parol evidence to establish fraud in the inducement of the contract. *First Nationwide Bank v. 965 Amsterdam, Inc.,* 212 A.D.2d 469, 623 N.Y.S.2d 200; *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906. However, where "the party alleging fraud has made its own specific representation indicating that it is not relying on the alleged inducement, it is foreclosed from establishing its asserted reliance on the ground that it has misrepresented its true intention." *First Nationwide Bank, supra,* at 471, 623 N.Y.S.2d 200; *Danaan Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597; *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974. The issue, then, is whether the plaintiffs, in executing the applications, and accepting the policies, specifically disclaimed reliance upon the prior representations of MONY's agents.

The Court of Appeals in *Danaan Realty Corp. v. Harris, supra,* first made the distinction between contracts which contain a general and vague merger clause, "as where the contract contains an "omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made," (*id.* at 320, 184 N.Y.S.2d 599, 157 N.E.2d 597), and those in which a party "in the plainest language announce[s] and stipulate[s] that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Id.*

In *Citibank, N.A. v. Plapinger, supra,* the Court of Appeals determined that language in a guarantee negotiated between sophisticated business people which characterized the obligation embodied in the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

guarantee as "absolute and unconditional" amounted under the circumstances to a specific disclaimer of reliance upon earlier oral promises not embodied in the writing. The reasoning behind this decision was a desire on the part of the Court not to permit the party alleging fraud to benefit by the introduction of parol statements, when, in signing the specific disclaimer, it had, in turn, induced the other party's reliance. *Id.* at 95, 495 N.Y.S.2d 309, 485 N.E.2d 974; *see also, Marine Midland Bank, N.A. v. CES/Compu-Tec, Inc.,* 149 A.D.2d 341 (where a general merger clause, in conjunction with a waiver of the right to assert defenses, setoffs or counterclaims arising out of the transaction, was found to be a disclaimer sufficient to foreclose a defense of fraudulent inducement).

*6 There is no language in the MONY insurance policies which equates to the type of specific disclaimer sufficient to negate the element of reliance necessary to the plaintiffs' claim for fraud in the inducement, or to bar them from using parol evidence of the alleged misrepresentations to establish such a claim. This court does not believe that the language in the policies limiting the ways in which the policies could be changed is sufficient to alter the general nature of the merger clause, or is comparable to language making an agreement "unconditional" or limiting the right of a party to challenge the enforcement of the agreement. Thus, the plaintiffs herein may rely on evidence extrinsic to the policies in order to establish that they have a cause of action for fraud in the inducement.

### b. Substantive Issues of Fraud

A cause of action based upon fraud requires a showing of a misrepresentation of a material issue of fact, knowledge of its falsity, deception and consequent injury. *See, United Safety of America, Inc. v. Consolidated Edison Company of New York, Inc.,* 213 A.D.2d 283, 623 N.Y.S.2d 591. A claim for fraud in the inducement cannot be based on a mere unfulfilled promissory statement (*Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186), but may be grounded on a promise made with the preconceived and undisclosed intention that the promise will not be performed. *Deerfield Communication Corp. v. Chesebrough-Ponds, Inc. .,* 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003. Under New York law, claims alleging fraud or misrepresentation must be pleaded with particularity (CPLR 3016[b]), and will be dismissed

if they are not supported by "specific and detailed allegations of fact in the pleadings." *Callas v. Eisenberg,* 192 A.D.2d 349, 350, 595 N.Y.S.2d 775.

In *Cole, supra,* the plaintiffs' allegations of fraud were found to be inadequate (under essentially identical Florida law), based as they were on failure of The Equitable Life Insurance Company's ("The Equitable") alleged failure to disclose that "dependency on the maintenance of abnormally high interest rates was a fundamental, but unreasonable, assumption underlying the vanishing premium policies," and that a reduction in interest rates would adversely affect the performance of the policy "as illustrated." The Coles alleged that the Equitable's illustrations failed to disclose that the illustrated interest rates "were not guaranteed or assured and could be reduced at the Equitable's discretion," and that the Equitable failed to disclose that the "policies would not pay for themselves as illustrated," if interest rates fell.

This Court held that the Coles could not base a fraud claim on the Equitable's alleged breach of its promises of performance, and that, in any event, the Coles' reliance on any promise or guarantee that interest rates would remain as illustrated, that is, that the economy would not change, was unreasonable, even if the Equitable had actually made any such guarantee.

In the present matter, the plaintiffs' allegations of fraud, fraudulent inducement and negligent misrepresentation are similarly based upon an alleged scheme to market vanishing premium policies, despite the insurer's alleged knowledge that the vanishing premium policies could not perform as allegedly promised, and that the premiums would not "vanish." However, in an effort, perhaps, to avoid the fate of the Coles, the plaintiffs herein deny that their claim of fraud is dependent upon the plaintiffs' reliance on any guarantees or promises based on the future performance of interest rates, and their effect on the vanishing premium scheme. Instead, plaintiffs contend that "MONY falsely represented through manipulated assumptions an illustrated performance that the Company *knew* was at odds with its current experience *and would never occur.* " Plaintiffs' Memorandum of Law at 93 (emphasis supplied). Thus, plaintiffs maintain that the illustrations were misrepresentations of present fact, in that MONY made the representations contained in the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

illustrations with the preconceived intent that the scheme would not work, and insist that they can prove that "MONY's expectations were in fact inconsistent with the very illustrations it was using to market its policies." *Id.* at 95. At the very least, plaintiffs insist that they had the right to rely on the illustrations created by MONY's "experts," and could not have known that the premium payment schedules contained therein were "dependant on undisclosed assumptions and arcane calculations by MONY's actuarial experts." *Id.*

*7 In support of the contention that MONY was manipulating its financial position in a deceitful attempt to support its promises regarding the future performance of the policies, plaintiffs present affidavits of a Certified Public Accountant and a life insurance actuary in order to show that MONY, at the time it was marketing its vanishing premium policies, entered into a variety of dubious financial transactions which "were specifically designed to enhance its reported surplus," that is, its assets less the sum of its liabilities (Affidavit of R. Larry Johnson, CPA at 2), and delay recognition of its losses (*id.* at 3), "while placing a substantial burden on its future." *Id.* at 13. As a result, plaintiffs' other expert, John S. Moyse, a life insurance actuary, maintains that the illustrations were misleading in that they "were based on assumed dividends and interest crediting rates that were not supported by Mony's current operating results or its financial condition and were not sustainable for the foreseeable future." Moyse Affidavit at 10.

Although the plaintiffs have produced an enormous, indeed, an excessive amount of documentary evidence, including affidavits from experts and plaintiffs, and deposition testimony, in support for their claim of a "top down" scheme of fraud emanating from MONY's highest levels, the evidentiary underpinnings simply do not support such a claim, and the allegations of fraud remain conclusory and insufficient upon which to base a cause of action.

Plaintiffs' claim of fraud falters first on the element of scienter. Even if the plaintiffs can establish that MONY was in a precarious financial state, so as to make it unlikely that it could continue to pay dividends at the same high rates indefinitely, the evidence does not substantiate plaintiffs' claim that MONY's dividend and interest assumptions were "*knowingly* unsustainable," or "*intentionally*

manipulated." Plaintiffs' Memorandum of Law at 4 (emphasis supplied). Nor do plaintiffs' experts say that any of MONY's "accounting manipulations" were illegal, or even unusual at the time, only that they were questionable, and likely to fail. No evidence whatsoever is adduced which would serve to promote plaintiffs' charge of a deliberate plan or scheme on the part of any person associated with MONY's top management (or any other MONY representative) to manipulate MONY's financial condition (or its presentation in the illustrations) so as to defraud potential insureds, despite reams of documentary evidence concerning MONY's training of its sales staff, and deposition testimony from Samuel J. Foti, MONY's Chief Executive Officer. In fact, the numerous statements of policy and the various training materials which the plaintiffs have presented to this court only serve to suggest an intention on MONY's part to instruct its staff in ethical behavior, and avoid the types of deceptions of which the plaintiffs complain. Absent any sustainable factual allegations which would indicate MONY's intent to deceive the plaintiffs, the causes of action based on fraud and deceit must fail, as inadequate under CPLR 3211(a)(7) and 3016(b).

*8 The fraud-based claims are also wanting on the issue of reliance. While the plaintiffs insist, through their attorneys, that they are not alleging that MONY's illustrations and other precontract representations somehow guaranteed that the high dividend rates necessary to make the premiums "vanish" would continue through the life of the policies, as did the plaintiffs in *Cole, supra,* their expert John S. Moyse summarizes that, in his opinion, the information contained in the illustrations and the Limitations and Definitions, "is very misleading for the reason that it does not advise the policy owner of the likelihood of substantial additional premiums and does not explain the dependency of the premium offset or vanishing premium plan upon the future dividends paid under the policy." Moyse Affidavit at 7. In other words, MONY failed to explain to each plaintiff how the payment of premiums, based on future earnings, was related to the policy's future economic performance.

The court has before it numerous letters of complaint which MONY received concerning the failure of its premiums to "vanish" as allegedly promised, which plaintiffs have offered as proof of the reasonable reliance of each plaintiff on the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669                                                    Page 7
(Cite as: 1997 WL 710669 (N.Y.Sup.))

alleged promises of MONY's sales agents [FN4]. As the complaints overwhelmingly refer to the broken promises and/or guarantees of MONY's sales agents in the context of the sale of the vanishing premium policies, these documents amply illustrate that it is the failure of MONY to honor its sales agents' alleged guarantees concerning the future performance of MONY's life insurance products, and the dividend and insurance rates upon which they depended, which is, in truth, the bases for the plaintiffs' claims of fraud and deceit. As with the plaintiffs in *Cole*, plaintiffs are claiming that, based on the illustrations and the representations of the sales agents, they had a right to believe that the interest and dividend assumptions upon which their vanishing premium policies were based would not change, or, were at best, irrelevant: i.e., that they were somehow guaranteed. As before, this court finds the plaintiffs' reliance upon this assumption to be unreasonable, both based on the specific disclaimers contained in the illustrations and the accompanying documents, and upon common experience.

> FN4. Plaintiffs have seen fit to provide this court with five large bound volumes, consisting of 383 separate exhibits, each containing, at least, both the individual complaint sent to MONY by each policyholder, and MONY's reply.

### iii. Breach of Fiduciary Duty

The facts alleged in the Complaint, as bolstered by the evidentiary submissions, do not support plaintiffs' claim for a fiduciary relationship between themselves and MONY, so as to support a claim for breach of fiduciary duty. Although a fiduciary relationship may exist between an insurance company and its insured once the insurer is called upon to provide a defense to its insured in the context of a liability claim (*see, Hartford Accident and Indemnity Co. v. Michigan Mutual Insurance Co.*, 93 A.D.2d 337, 462 N.Y.S.2d 175, *aff'd* 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608), in general, a contract of insurance does not otherwise create a fiduciary relationship between the parties. "Except as required by statute, insurance companies deal with insureds at arm's length. No relationship involving trust or confidence is present." *New York Hotel Trades*

*Council v. Prudential Insurance Company of America*, 1 Misc.2d 245, 250, 144 N.Y.S.2d 303, *aff'd* 1 A.D.2d 952, 151 N.Y.S.2d 612; *see also, Rochester Radiology Associates P.C. v. Aetna Life Insurance Company.*, 616 F.Supp. 985.

*9 According to the Complaint, MONY's knowledge of the insurance needs of its policyholders, coupled with its superior knowledge of its own insurance products, created a relationship "calculated and intended by MONY to repose confidence and trust in MONY as it related to life insurance and investments" which was fiduciary in nature. In the present case, there are actually two sub-groups within the plaintiff class: those plaintiffs who were already MONY clients when they were convinced to purchase a vanishing premium policy, and those who were not. The Complaint, for the most part, glosses over this difference, although it appears from the language of the Fifth Cause of Action that MONY, through its efforts to gain the trust of its potential clients, is alleged to have become a fiduciary to all of the plaintiffs, whether or not they had ever had any prior dealings with MONY.

There is little legal authority for plaintiffs' argument that a fiduciary relationship existed between MONY and the plaintiffs who already held MONY life insurance policies, in the context of the sale to them of new insurance policies, and less supporting the theory that MONY owed a fiduciary duty to potential insureds who had not yet purchased life insurance from MONY. Plaintiffs have presented innumerable pages of MONY internal documents and training materials which were, allegedly, meant to instill in MONY sales agents the importance of creating a climate of trust between themselves and their potential clients (or "suspects," as they are apparently called prior to their graduating to become "prospects"). This material is offered as proof that the relationship between plaintiffs and the various MONY sales agents prior to the execution of the applications for insurance was one of trust; was, in fact, fiduciary in nature. However, no precedent shown to this court sustains plaintiffs' contention that an insurance sales agent, intent on selling insurance products to a potential client, creates between herself and the potential client a relationship fiduciary in character, sufficient to create the elevated duty of care required to support a claim for breach of fiduciary duty, despite the agent's knowledge that the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works