1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

Page 8

potential client may rely on the information.

It is true that an informal fiduciary relationship may arise in a commercial setting "when one party places special trust and confidence in another such that the first party becomes dependent upon the second party (*see, Matter of Gordon v. Bialystoker Ctr. & Biker Cholem*, 45 N.Y.2d 692, 412 N.Y.S.2d 593, 385 N.E.2d 285)." *P. Chimento Co., Inc. v. Banco Popular de Puerto Rico*, 208 A.D.2d 385, 617 N.Y.S.2d 157. The court is mindful of those cases which propose that a fiduciary duty might be found to exist between an insurer and a prospective client, based on the relationship established as a result of the sales agent's efforts to gain the trust of the prospective client, and the agent's superior knowledge. In *Russo v. Massachusetts Mutual Life Insurance Company*, No. 96-368, 1997 N.Y.Misc. LEXIS 170 (SupCt Tompkins Co. March 25, 1997), for example, a vanishing premium case, the court, while acknowledging that "[a] breach of fiduciary duty requires a fiduciary relationship, not usually associated with the purchase and sale of an insurance contract," found, regardless, that "insurers, when dealing with uninformed prospective insureds regarding complex policy language, occupy just such a special position." In *Meagher v. Metropolitan Life Insurance Company*, 119 Misc.2d 615, 463 N.Y.S.2d 727, (not a vanishing premium case), the trial court held that a confidential relationship between an insurance agent and an elderly and infirm prospective purchaser could be inferred from the "superior bargaining position" which the agent held. A federal court has followed the reasoning in *Meagher*, without further analysis, to allow the issue of the existence of a fiduciary duty between an insurance agent and a client to go to the jury. *Dornberger v. Metropolitan Life Insurance Company*, 961 F.Supp. 506 (S.D.N.Y.1997). *See also, In Re Jackson National Life Insurance Company Premium Litigation*, MDL No. 122, (USDC, WDMich Sept. 30, 1997) (in which the Court allowed for the continuation of a claim for breach of fiduciary duty in a vanishing premium action, in the context of a pre-joinder motion to dismiss, under the common law of several states).

*10 The plaintiffs herein have alleged no facts which would indicate their intent to prove that any of MONY's sales agents practiced the kind of overreaching which caused the court in *Meager v. Metropolitan Life Insurance Company*, 119 Misc.2d 615, 463 N.Y.S.2d 727, *supra*, to sustain the cause of action based on a breach of fiduciary duty. It appears, instead, that the plaintiffs are alleging, essentially, that the relationship which was established between each and every class member and the agent from whom the individual purchased a vanishing premium policy, is *necessarily, and invariably*, fiduciary and confidential in character, as a consequence of the superior knowledge of the agent, the complexity of the product being sold, the knowledge acquired by the agent concerning the plaintiffs' financial position, and the resulting propensity on the part of each of the (presumably) relatively unsophisticated class members to rely on the agent's expertise. And, in point of fact, this theory does appear to accord with the holdings in such cases as *Russo v. Massachusetts Mutual Life Insurance Company*, No. 96-368, 1997 N.Y.Misc. LEXIS 170, *supra; see also, Busel v. The Guardian Life Insurance Company of America*, Index No. 118454/95 (N.Y.SupCt, Gammerman, J., August 22, 1996) (sustaining allegations of a breach of fiduciary duty in a vanishing premium case as against a motion to dismiss); *but see, Gaidon v. The Guardian Life Insurance Company of America*, Index No. 605041/96 (N.Y.SupCt. Ramos, J., June 5, 1997) (dismissing breach of fiduciary duty claim in vanishing premium case).

Taking this hypothesis to its logical conclusion, it would follow that every sale of a complex insurance product to a prospective client lacking the sales' agent's expertise and financial sophistication would result, *per se*, in a fiduciary relationship between the insurer and its insured. Presumably, therefore, fiduciary relationships between sales agents and prospective clients would be the norm in the insurance industry, as well, potentially, in the context of other industries in which complex, high-ticket items are sold under the guidance of experienced sales personnel possessed of superior knowledge of the product.

Gaining the confidence of potential clients through a display of professionalism, superior knowledge and expertise, is a technique hardly confined to the sale of insurance, and superior knowledge of the product being sold, whether it be cars, computers or insurance, is the hallmark of good sales personnel. Plaintiffs would have this court take as a given that vanishing premium policies are more complex than other insurance concepts; however, complexity of information is not a factor restricted to the sale of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

Page 9

insurance at all, much less, to the sale of "vanishing premium" policies, assuming, *arguendo*, that such policies are more difficult to comprehend than other insurance products. Nor is there anything particularly unusual or suspect, in the context of the sale of a financial product such as insurance, in a sales agent making an inquiry into a potential client's financial situation, in order to tailor the product to the client's needs.

*11 The circumstances alleged by the plaintiffs upon which a fiduciary relationship should be found to arise between an insurance agent and her prospective client are simply too broad. A considerable burden would be placed upon the insurance industry if insurers were to become *per se* fiduciaries for all of their insureds, based merely upon the trust which the insured placed in the superior knowledge of their sales agents. Such a theory would encompass virtually every instance in which a complex insurance product is sold to any party who is not in possession of the financial sophistication or knowledge of the sales agent. Casting insurance agents in the position of fiduciaries under these circumstances (whether as to present clients, or prospective ones) would be an illogical and impractical expansion of the concept of fiduciary relationships, which should be undertaken, if at all, by the Legislature. It is not, at the present time, a theory which comports with the law of this State.

The numerous letters of complaint provided to this court by the plaintiffs do establish that the plaintiffs believed in the promises allegedly made to them by MONY's sales agents. However, the allegations in the Complaint of a fiduciary relationship between the individual plaintiffs and the agents with whom they dealt are conclusory, in that they do not indicate any particular circumstances, beyond the generalities set forth in the complaint, and enumerated above, where a relationship of "special trust and confidence" was created, such that an individual plaintiff could reasonably be expected to suspend his or her own judgment so as to become "dependant" upon the MONY sales agent (*see, P. Chimento Co., Inc. v. Banco Popular,* 208 A.D.2d 385, 617 N.Y.S.2d 157, *supra* ). In the absence of some further circumstances (such as, perhaps, the overreaching practiced by the sales agent in *Meager, supra* ), this court does not believe that a fiduciary relationship arises under the circumstances alleged in the Complaint, requiring the dismissal of the Fifth Cause of Action.

*iv. Negligent Misrepresentation*

The tort of negligent misrepresentation requires a showing that "carelessness in the imparting of words upon which others were expected to rely" caused the party relying on the information to be damaged. *White v. Guarente,* 43 N.Y.2d 356, 363, 401 N.Y.S.2d 474, 372 N.E.2d 315.
> In order to recover on a theory of negligent misrepresentation, the plaintiff must establish that, because of some special relationship with the defendant which generally implies a closer degree of trust than the ordinary buyer-seller relationship, the law imposes on that defendant a duty to use reasonable care to impart correct information, that the information is false or incorrect, and that the plaintiff reasonably relied upon the information given.

*Pappas v. Harrow Stores, Inc.,* 140 A.D.2d 501, 504, 528 N.Y.S.2d 404. The special relationship may be based on a contract, or must be "so close as to approach that of privity." *Ossining Union Free School District v. Anderson La Roca Anderson,* 73 N.Y.2d 417, 424, 541 N.Y.S.2d 335, 539 N.E.2d 91. A "simple arm's length business relationship" is not enough. *United Safety of America, Inc. v. Consolidated Edison Company of New York, Inc.* 213 A.D.2d at 286, 623 N.Y.S.2d 591, *supra.* For the reasons stated above, this court finds that no such special relationship existed between MONY and the plaintiffs, merely because MONY's sales force was well versed in the products to be sold, and used that knowledge to gain the confidence of their "prospects."

*v. Negligent Supervision*

*12 Plaintiffs' cause of action for negligent supervision is nothing more than a recast of their claim for negligent misrepresentation, being but a claim that MONY breached a duty to plaintiffs to provide, through its sales force, material which adequately explained the risks of the vanishing premium concept. In the absence of any such duty of care, as set forth above, this claim must be dismissed.

*vi. Statutory Claims*

MONY, in issuing and permitting its agents to use

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

Page 10

the allegedly misleading materials, is alleged in the Complaint to have violated §§ 4226 and 2123 of the New York Insurance Law. Section 2123 is specifically addressed to the matter of misrepresentations made by the "agent or representative of any insurer," and has been found to be inapplicable in actions brought against the insurer, rather than the insurer's agent or representative. See, Dornberger v. Metropolitan Life Insurance Co., 961 F.Supp. 506, supra; see also, Buccino v. Continental Assurance Co., 578 F.Supp. 1518 (S.D.N.Y.1983) (dismissing claim against insurer brought under predecessor statute to Insurance Law § 2123). In consequence, plaintiffs may not rely on Insurance Law § 2123 as a basis for a recovery against MONY. Since there is an Insurance Law section which does specifically address actions based on the misrepresentations of insurers (§ 4226), plaintiffs' attempt to attribute liability to MONY under § 2123 based on a theory of respondeat superior is without merit, as is their attempt to find a broader interpretation in the statute's language.

While Insurance Law § 4226 does address the liability of insurers for their misrepresentations, the section is not available to the plaintiffs in the context of the present action. In *Matter of Empire Blue Cross & Blue Shield Customer Litigation*, 164 Misc.2d 350, 622 N.Y.S.2d 843, affd, sub nom. Minihane v. Weissman, 226 A.D.2d 152, 640 N.Y.S.2d 102, Justice Cahn of this court determined that Insurance Law § 4226 cannot serve as a basis for a recovery in a class action, because it provides for the recovery of a "penalty," in contravention of CPLR 901(b). Insurance Law § 4226(d) specifically limits recovery under the statute to "a penalty of such premium or compensation" as was received by the insurer as a result of the insurer's violation of the statute, while CPLR 901(b) states that
> [u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

Thus, clearly, Insurance Law § 4226 cannot provide a basis for recovery in the present action.

Plaintiffs have failed to state a claim under General Business Law § 349(a). This section makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." Private actions for violation of § 349 are permitted (see, GBL § 349[h]), and require the plaintiff to prove that (1) the practice in question was misleading in a material respect, and (2) the plaintiff was injured. *Ortho Pharmaceutical Corporation v. Cosprophar Inc.*, 32 F.3d 690.

*13 Initially it is noted that, by its terms, GBL § 349 is applicable herein only to those claims which arose out of transactions occurring in New York State, and so may not be raised in favor of any plaintiff who claims to have been injured by the purchase of insurance in any other jurisdiction. See, Cole, supra. The parties' agreement that New York law should apply to this action cannot serve to alter the language and intent of the statute. Consequently, any valid claim under GBL § 349 is necessarily limited to persons whose policies were sold to them in the State of New York.

It is this court's finding that plaintiffs have not stated a claim for relief under GBL § 349, for the same reason that they cannot establish a claim based on common law fraud: they cannot allege reliance upon the alleged misrepresentation that their policies would always perform as promised, and so cannot establish that they were deceived. See, Gershon v. Hertz Corporation, 215 A.D.2d 202, 626 N.Y.S.2d 80 (in order to state claim under GBL § 349, plaintiff must allege materially deceptive conduct upon which he relied to his detriment).

### III. Conclusion

It is readily apparent that the plaintiffs herein, as with thousands of others all over the country, have been deeply aggrieved by what they perceive to be a grave injustice perpetrated upon them by the numerous insurance companies who contrived, and profited from the "vanishing premium" concept. It is also apparent that the concept was an ill-conceived product of its times, which likely would never have seen the light of day in today's more conservative financial climate, tempered, as it has been, by the lessons of the near-past. However, an ill-conceived financial failure does not necessarily equate to fraud, or any other actionable wrongdoing, which can be compensated for in a court of law. In the present case, the plaintiffs, despite the reality of their losses, and the purity of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 710669
(Cite as: 1997 WL 710669 (N.Y.Sup.))

Page 11

their outrage, have failed to demonstrate that MONY's actions entitled the plaintiffs to pursue any of the claims presented in the Complaint, which must, as a result, be dismissed in its entirety. MONY's remaining arguments in favor of dismissal need not be reached.

Accordingly, it is

ORDERED that the motion for summary judgment dismissing the Complaint is granted; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------x
PAUL A. GOSHEN, on behalf of himself and all others : 
similarly situated,

                Plaintiff,

        -against-                        IAS Part 10
                                                 (Justice Shainswit)
THE MUTUAL LIFE INSURANCE COMPANY      Index No. 95-600466
OF NEW YORK and MONY LIFE INSURANCE
COMPANY OF AMERICA,

                Defendants.
---------------------------------------x

## JUDGMENT

        Defendants The Mutual Life Insurance Company Of New York and MONY Life Insurance Company Of America having moved this Court for an order granting summary judgment dismissing the First Amended Class Action Complaint (the "Complaint") in its entirety, with respect to the claims of Plaintiff and Class Representative Paul A. Goshen and the entire plaintiff Class herein, as described in the Court's Order dated August 13, 1996 certifying this action as a class action and Amended Order dated December 6, 1996, and consisting of all persons or entities who have, or at the time of the policy's termination had, an ownership interest in one or more whole life or universal life insurance policies issued by Defendants (the "Policies") and were harmed due to Defendants' alleged wrongful conduct with respect to the sale of Policies on an alleged "vanishing premium" basis, as newly issued policies and/or as replacements for existing policies, during the period from January 1, 1982 through and including

December 31, 1995, exclusive of Defendants, any entity in which either Defendant has a controlling interest or is a parent or subsidiary of or is controlled by either Defendant, the trustees of The Mutual Life Insurance Company of New York, the directors of MONY Life Insurance Company of America, and the officers, employees and field underwriters of either Defendant and their current spouses and minor children, and any of their affiliates, legal representatives, heirs, successors and assigns, and all persons or entities who:

(a) entered into a settlement of a claim or an actual or potential lawsuit concerning one or more Policies which validly releases either or both Defendants from any further claims with respect to any such Policy or were parties to a lawsuit concerning one or more Policies which asserted claims concerning the marketing or sale of any Policy on any "vanishing premium" basis wherein all claims against either or both Defendants with respect to any such Policy were dismissed with prejudice; or

(b) owned one or more Policies on which the insured or insureds died while such Policies were in force; or

(c) executed a timely request for exclusion from the class pursuant to the terms and conditions of the Notice Of Pendency Of Class Action, approved by Orders of the Court filed December 6, 1996 (Order Providing For Notice To The Class), and February 7, 1997 (Order Providing For Supplemental Notice);

AND that motion having come on regularly to be heard;

AND the Court having rendered its Memorandum Decision and Order entered on October 24, 1997;

NOW, on motion of Dewey Ballantine LLP,

IT IS HEREBY ADJUDGED that the Complaint in this action, and each and every cause of action asserted therein, is dismissed in its entirety with prejudice on the merits as to Defendants The Mutual Life Insurance Company Of New York and MONY Life Insurance Company Of America; and it is further

ADJUDGED that Defendants The Mutual Life Insurance Company Of New York and MONY Life Insurance Company Of America, having their executive offices located at 1740 Broadway, New York, New York 10019, recover of Plaintiff Paul A. Goshen, residing at 4212 Euclid Avenue, Tampa, Florida, $275.00 as their costs and disbursements and that Defendants have execution therefor.

Dated: New York, New York
October 29, 1997

_____
Clerk

FILED
OCT 24 1997
COUNTY CLERK'S OFFICE
NEW YORK

2003 WL 22801306            Page 1
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.

In re MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK PREMIUM LITIGATION
William J. McLEAN, Naomi Driscoll and Roger K.
Brown and Thomas C. Brown,
Trustees of the Richard L. Brown Irrevocable Trust
No. 2, DTD 3/17/90,
individually and on behalf of all others similarly
situated, Plaintiffs
v.
MUTUAL LIFE INSURANCE CO. OF NEW
YORK F/K/A MUTUAL LIFE INSURANCE
COMPANY OF
NEW YORK, Defendant.

No. CIV.A. 96-10411-EFH.

Nov. 17, 2003.

Policy holders brought action against insurance company, alleging that company used false and misleading practices in selling "vanishing premium" policies. On company's motion for summary judgment, the District Court, Harrington, J., held that: (1) res judicata barred claims brought under Massachusetts law; (2) fact issues regarding whether insurance company engaged in deceptive acts or practices under Illinois law precluded summary judgment; and (3) Illinois deceptive practices claims were not barred by statute of limitations.

Motion granted in part, and denied in part.

[1] Federal Courts ⚖0

170Bk0 k.

In cases involving preclusion, federal statutory law requires federal courts to give preclusive effect to state-court judgments whenever courts of state from which judgments emerged would do so.

[2] Judgment ⚖0

228k0 k.

Under New York law, doctrine of res judicata precludes future litigation between same parties on same claims once final judgment is entered.

[3] Judgment ⚖0
228k0 k.

Two claims are considered same, for purpose of applying res judicata doctrine under New York law, if they arise from same transaction or series of transactions, even if based upon different theories or if seeking different remedy.

[4] Judgment ⚖0
228k0 k.

Under New York res judicata doctrine, parties are precluded from raising not only issues actually litigated before court, but also those issues which could have been litigated.

[5] Consumer Protection ⚖0
92Hk0 k.

Policy holders who brought claims under Massachusetts Consumer Protection Act against insurance company, alleging that company used false and misleading practices in selling "vanishing premium" policies, could have litigated same claims in prior class action brought under New York Consumer Protection Act in state court, but elected not to do so, and thus policy holders' present claims were barred by res judicata under New York law; even though prior action was dismissed on summary judgment, such dismissal constituted "final judgment" for res judicata purposes. M.G.L.A. c. 93A, § 1 et seq.; McKinney's General Business Law § 349.

[6] Consumer Protection ⚖0
92Hk0 k.

To establish claim under Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA), plaintiff must produce evidence that: (1) defendant engaged in deceptive act or practice; (2) defendant intended that plaintiff rely on deception; and (3) deception occurred in course of conduct involving trade or commerce. S.H.A. 815 ILCS 505/1.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306                                                                  Page 2
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

**[7] Consumer Protection** ☞0
92Hk0 k.

Genuine questions of material fact, regarding whether insurance company engaged in deceptive acts or practices in selling "vanishing premium" life insurance policies, precluded summary judgment dismissing policy holders' claims against company under Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA). S.H.A. 815 ILCS 505/1.

**[8] Consumer Protection** ☞0
92Hk0 k.

Whether act or practice is deceptive or unfair under Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA) is question that is determined on case-by-case basis. S.H.A. 815 ILCS 505/1.

**[9] Consumer Protection** ☞0
92Hk0 k.

Under Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA), three-year statute of limitations begins to run when plaintiff knows or reasonably should know of injury, and knows or reasonably should know that injury was wrongfully caused. S.H.A. 815 ILCS 505/10a.

**[10] Consumer Protection** ☞0
92Hk0 k.

Three-year statute of limitations governing claims brought under Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA) began to accrue at time that policy holders who purchased "vanishing premium" policies learned of their injuries, not at time of purchase, and thus claims were not time-barred; policy holders were informed of small likelihood of future premium increases at time of purchase, but could not reasonably have known that, five years later, company would demand annual premiums for at least sixteen additional years. S.H.A. 815 ILCS 505/10a.

Barry A. Weprin, Milberg, Weiss, Bershad Specthrie & Lerach, New York, NY, Kenneth G. Gilman, Gilman and Pastor, LLP, Peter A. Lagorio, Gilman and Pastor, LLP, Saugus, Richard T. Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, for William J. McLean, Individually and on behalf of all others Similarly Situated, Plaintiff.

Daniel J. Gleason, Nutter, McClennen & Fish, LLP, Glenn E. Deegan, Holland & Knight, LLP, John A. Sten, Nutter, McClennen & Fish, LLP, Boston, for Mutual Life Insurance CO of New York, Defendant.

MEMORANDUM AND ORDER

HARRINGTON, S.D.J.

*1 The plaintiffs in this case are two Massachusetts residents, William McLean ("McLean") and Naomi Driscoll ("Driscoll"), and two Illinois residents, Roger Brown and Thomas Brown, who are acting in their capacity as trustees for the Richard L. Brown Irrevocable Trust Number 2 ("the Browns"). The plaintiffs' complaint alleges that the defendant, MONY Life Insurance Company ("MONY"), used false and misleading sales presentations to sell the plaintiffs "vanishing premium" life insurance policies in violation of Massachusetts and Illinois state consumer protection statutes. The defendant moved for summary judgment as to both sets of plaintiffs. For reasons stated below, the Court grants the motion as to McLean and Driscoll, but denies the motion as to the Browns.

I. BACKGROUND

A. McLean and Driscoll

In 1995, Paul Goshen ("Goshen") filed a class action lawsuit against MONY in New York state court alleging deceptive sales practices in connection with the sale of "vanishing premium" life insurance policies. McLean and Driscoll purchased MONY life insurance policies in Massachusetts and joined Goshen's class action lawsuit. Goshen's complaint alleged a number of common law and statutory violations, but only his claim under New York's Consumer Protection Act, Gen. Bus. § 349, is relevant to the current case.

MONY moved for summary judgment on all of Goshen's claims. The New York trial court granted the motion. Regarding the Section 349 claim, the trial court held as an initial matter that the statute applied "only to those claims which arose out of transactions occurring in New York State, and so

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306
— F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Page 3

may not be raised in favor of any plaintiff who claims to have been injured by the purchase of insurance in any other jurisdiction." *Goshen v. The Mutual Life Ins. Co. of N.Y.*, 1997 WL 710669 at 13 (N.Y.Sup.1997). As for those plaintiffs who purchased their policies in New York, the trial court ruled that the plaintiffs had failed to allege conduct by the defendant that was materially deceptive, as required by the statute. *Id.* Accordingly, judgment was entered dismissing the complaint "*in its entirety with prejudice on the merits.*" (emphasis supplied).

On appeal, the New York Appellate Division affirmed the trial court without opinion. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598, 602 (N.Y.1999). The case was then appealed to New York's highest court, the Court of Appeals, which affirmed in part and reversed in part. *See id.* The court held that the plaintiffs did in fact allege conduct that was materially deceptive under Section 349 and remanded that particular cause of action to the trial court "for further proceedings consistent with this opinion." *Id.* at 608. In all other respects the trial court's decision was affirmed. On remand, the trial court repeated its earlier ruling that only plaintiffs who purchased their policies in the State of New York may raise claims under Section 349. The trial court concluded that "[s]ince there is no doubt that Goshen purchased his policy in Florida, his claim must be dismissed."

*2 The trial court's decision dismissing Goshen's Section 349 claim was again appealed to, and affirmed by, the Appellate Division. Appeal was taken to the Court of Appeals, which held that a prima facie case under Section 349 requires "that the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 (N.Y.2002). Applying this rule to the case before it, the Court of Appeals concluded that Goshen's purchase of insurance in Florida meant that he did "not state any cognizable cause of action." *Id.* at 1196. The trial court's ruling was affirmed.

Shortly after Goshen filed his complaint in New York state court, other individuals in different jurisdictions brought similar actions against MONY. These cases were eventually coordinated and transferred to this Court as part of a Multi-District Litigation Panel Order. One of these cases was originally filed by McLean in this Court on March 7, 1996. McLean's case, like all the other Multi-District Litigation cases, was stayed pending the outcome of *Goshen*. Shortly after the final decision by the New York Court of Appeals in *Goshen*, the stay was lifted and McLean moved to amend his complaint. McLean sought to drop all of the claims contained in his original complaint and add a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and a second Massachusetts plaintiff, Driscoll. McLean also sought to add the Illinois plaintiffs, the Browns, and their claim under the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1 ("ICFA"). This Court granted McLean's motion to amend his complaint.

B. *The Browns*

In 1990, the Browns purchased a $2 million "vanishing premium" life insurance policy from MONY in Illinois. The Browns allege that the MONY sales agent made representations and used illustrations during the sales presentation that showed that the insurance policy could be purchased for five annual premiums of $44,000 each. The insurance policy purchased by the Browns yielded investment income in the form of dividends. The dividends were to be used to pay for the policy's premiums, thus allowing the Browns' out-of-pocket payments to "vanish" over time. In 1992, the Browns' were informed by a MONY sales agent that "things hadn't gone as well as expected," and an additional three years of premiums were required. Richard Brown testified at his deposition that these three additional annual payments were $16,000 each. In March, 1995, the Browns received a letter from MONY indicating that annual premiums of $18,477 were required for at least sixteen more years.

The Browns decided to bring suit. Unlike McLean and Driscoll, however, the Browns decided to opt out of the *Goshen* class action that was filed in New York. Instead, in January, 1996, the Browns joined a class action lawsuit against MONY that was filed in federal district court in Mississippi. That case was ultimately transferred to this Court as part of the Multi-District Litigation Panel Order. The Browns then dropped out of the Mississippi class

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Page 4

action and joined McLean's action, raising only one claim under the ICFA.

II. *DISCUSSION*

*3 Currently pending before this Court is MONY's motion for summary judgment on McLean's amended complaint. Summary judgment should be granted when the evidence, taken in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir.2003).

A. *McLean and Driscoll*

[1] MONY argues that summary judgment should be granted as to McLean and Driscoll because the doctrine of res judicata precludes their 93A claim. "In cases involving preclusion, federal statutory law requires federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Patterson v. Patterson*, 306 F.3d 1156, 1158 (1st Cir.2002) (quotation marks and citation omitted). In this case, MONY argues that *Goshen* bars the claims brought by McLean and Driscoll. The Court rules that New York's res judicata law controls. *See N.H. Motor Transp. Ass'n. v. Town of Plaistow*, 67 F.3d 326, 328 (1st Cir.1995).

[2][3][4] Under New York law, the doctrine of res judicata precludes future litigation between the same parties on the same claims once a final judgment is entered. *See Ferris v. Cueyas*, 118 F.3d 122, 126 (2d Cir.1997). Two claims are considered the same if they arise from "the same transaction or series of transactions ... even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (N.Y.1981). This means that parties are precluded from raising not only issues actually litigated before a court but also those issues which could have been litigated. *See In re Hofmann*, 287 A.D.2d 119, 733 N.Y.S.2d 168, 172 (App.Div.2001).

[5] McLean and Driscoll concede that they were parties to *Goshen* because they elected to join the class. *See Siegel v. Competition Imports, Inc.*, 296 A.D.2d 540, 745 N.Y.S.2d 701, 702 (App.Div.2002). McLean and Driscoll also concede that their claims in *Goshen* are based on the same factual transactions as their current claim, namely their purchase of "vanishing premium" life insurance policies from MONY. The primary challenge they make to the applicability of res judicata is that the decisions of the various courts in *Goshen* did not amount to a final judgment. McLean and Driscoll argue that the *Goshen* decisions did not adjudicate the substance of the Section 349 claims brought by plaintiffs who purchased policies outside New York, and therefore it would be unfair to preclude the 93A claims in the current action. McLean and Driscoll further argue that the decisions of the New York courts in *Goshen* were procedural in nature and based on the theory that the plaintiff lacked standing to bring a claim under Section 349.

All of these arguments are without merit. The trial court in *Goshen* ruled that only individuals who purchased their insurance policies in New York could bring a claim under Section 349. The trial court granted the defendant's motion for summary judgment and an order was entered dismissing Goshen's complaint "in its entirety with prejudice on the merits." The grant of summary judgment was appealed and the case was remanded on other grounds. On remand, the trial court again dismissed Goshen's Section 349 claim because he did not purchase his policy in New York. The New York Court of Appeals affirmed this ruling. *See Goshen*, 746 N.Y.S.2d 858, 774 N.E.2d at 1196. It is clear that under New York law, a grant of summary judgment that is affirmed by the state's highest court is a final judgment for purposes of res judicata. *See Collins v. Bertram Yacht Corp.*, 42 N.Y.2d 1033, 399 N.Y.S.2d 202, 369 N.E.2d 758, 759 (N.Y.1977) ; *Vinci v. Northside P'ship*, 250 A.D.2d 965, 672 N.Y.S.2d 935, 936 (App.Div.1998).

*4 Contrary to McLean's and Driscoll's argument, the Court of Appeals did not base its decision on standing or procedural grounds. The court's discussion is clear that the territorial reach of Section 349 is part of a "prima facie" case under the statute. *Goshen*, 746 N.Y.S.2d 858, 774 N.E.2d at 1195. Because the plaintiff could not show that the alleged deception took place in New York, the Court of Appeals concluded that his "complaint does not state any cognizable cause of action." *Id.* at 1196. There is no discussion whatsoever in the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Page 5

Court of Appeals decision regarding standing.

It is true that the New York courts never reached the substance of Goshen's consumer protection claims under Section 349. But that fact does not defeat res judicata. The Second Circuit has explained that under New York's res judicata law, "judgments not passing directly on the substance of the claim have come to operate as a bar and thus the use of the locution 'on the merits' has possibly misleading connotations." *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 398 (2d Cir.1997) (quoting *Restatement (Second) of Judgments* § 19 cmt. a); *see also Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 750 (N.Y.1981). In other words, New York courts do not necessarily need to reach the substance of a claim in order for a decision to be considered a final judgment for purposes of res judicata. *See e.g., Cold Spring Harbor Area Civic Ass'n, Inc. v. Bd. of Zoning Appeals of Town of Huntington*, 305 A.D.2d 444, 762 N.Y.S.2d 392, 393 (App.Div.2003) ("A dismissal on statute of limitations grounds is considered a dismissal on the merits for claim preclusion purposes and bars a second action.").

The critical point is that McLean and Driscoll could have brought their 93A claims in the *Goshen* action. *See Beck v. E. Mut. Ins. Co.*, 295 A.D.2d 740, 744 N.Y.S.2d 57, 58 (App.Div.2002). They elected not to do so. The final judgment entered by the New York trial court and affirmed by the New York Court of Appeals means that the doctrine of res judicata precludes them from bringing those claims now. [FN1] The defendant's motion for summary judgment regarding McLean and Driscoll is granted.

B. *The Browns*

It should be noted at the outset that, unlike McLean and Driscoll, the Browns are not bound by *Goshen*. The Browns opted out of the *Goshen* class and therefore were not parties to that action. Accordingly, MONY's motion for summary judgment as to the Browns is not based on res judicata. Instead, MONY claims that the Browns have failed to offer sufficient evidence that the ICFA was violated because "caveat language" contained in the insurance policy and illustrations contradict the Browns' allegations of deceptive practices. In addition, MONY argues that the Browns' claim is barred by the statute of limitations.

[6] This Court turns first to the sufficiency of the evidence. To establish a claim under the ICFA, a plaintiff must produce evidence that (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Cripe v. Leiter*, 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 103 (Ill.1998). At issue in this case is the first prong of the analysis. The crux of MONY's argument is that under Illinois law an act or practice cannot be deceptive if the alleged misrepresentation at issue is contradicted by the express terms of an insurance policy or sales illustrations. According to MONY, the only alleged deceptive act at issue in this case is that MONY sales agents represented to the Browns that they would have to pay premiums for five years. MONY claims that both the insurance policy and the illustrations contained caveat language that put the Browns on notice that there was a possibility that dividends could fall below projected amounts and that more than five years of premiums would be required. For example, one of these caveats stated that "if dividends fall below the illustrated values then the non-guaranteed values shown will not be achieved ... and premium payments will be required for a longer period of time than illustrated...." MONY also points to the deposition testimony of Richard Brown who admitted that he understood when he purchased the policy that there was a possibility that dividends could fall and additional premiums could be necessary.

*5 [7] MONY's characterization of the Browns' complaint is not entirely accurate. The Browns do indeed allege that the MONY sales agent represented that only five years of premiums were required. But that is not the only allegation in the complaint. The Browns also allege that the illustrations were fraudulent because they were artificially enhanced by a variety of manipulative accounting practices. The Browns further allege that MONY's sales agent misrepresented the likelihood that the dividends would decrease. According to the Browns, the agent's statements and the fraudulent illustrations indicated that there was a very low chance that dividends would decline, when in fact MONY knew that its investment decisions created a very high chance that dividends would not achieve

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Page 6

their targeted results. The caveat language MONY cites in the policy and illustrations does not address this issue. The caveat language only addresses the fact there was a possibility that dividends could decrease and premiums could increase. The caveat language did not inform the Browns that the illustrations were artificially inflated. The caveat language did not inform the Browns about whether the possibility of premium increases was likely or unlikely. In short, the caveat language MONY relies on does not necessarily contradict the Browns' allegations in the first instance.

[8] Even if the caveat language did contradict the Browns' allegations, Illinois does not have a firm rule that no cause of action exists under the ICFA if the express terms of a contract are at odds with the alleged deceptive practice. Whether an act or practice is deceptive or unfair under the ICFA is a question that is determined on a case-by-case basis. *See Scott v. Ass'n for Childbirth at Home, Int'l.*, 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012, 1018 (Ill.1981). Not surprisingly, Illinois courts have found practices to be deceptive even when a contract is to the contrary. *See Siegel v. Levy Org. Dev. Co., Inc.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 199 (Ill.1992) (deceptive practices found when purchase agreement expressly contradicted sales brochure and oral statements made during sales presentation). Even in cases where Illinois courts have dismissed a case because a contract contradicts claims of deceptive practices, the language of the contract is only one piece of evidence used to determine whether a deceptive practice exists. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 963-64 (Ill.2002) (finding no deception in part because of express terms in the lease, but also because plaintiff made "bare allegations" and failed to offer "specific and particular pleading[s] sufficient to aver a violation" of the ICFA). Simply put, the bright-line rule that MONY urges upon this Court does not exist under Illinois law.

As the Seventh Circuit has explained, Illinois courts determine if acts or practices are deceptive by examining whether the statements at issue created a likelihood of deception or had the capacity to deceive. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir.2001). "What is required is a showing that the acts and practices were capable of being interpreted in a misleading way." *Harwood v. Piser Mem'l Chapels*, 102 Ill.App.3d 514, 58 Ill.Dec. 521, 430 N.E.2d 553, 555 (App.Ct.1981). This is a factual question that is best left for the jury. *See Abt v. Mazda Am. Credit*, 25 F.Supp.2d 860, 865 (N.D.Ill.1998) ("Whether a party's conduct violates the Consumer Fraud Act is a question[ ] of fact to be determined by the trier of fact."); *Kedziora v. Citicorp Nat'l Serv., Inc.*, 780 F.Supp. 516, 534 (N.D.Ill.1991) (same); *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1, 165 Ill.Dec. 655, 585 N.E.2d 51, 66 (Ill.1991) (same); *Malooley v. Alice*, 251 Ill.App.3d 51, 190 Ill.Dec. 396, 621 N.E.2d 265, 268 (App.Ct.1993) (same). The allegations contained in the Browns' complaint regarding the manipulative nature of the illustrations and sales presentation are detailed and extensive. At this stage of the litigation, MONY has failed to show that there is no genuine issue of material fact as to these alleged deceptive practices.

*6 [9] MONY's next argument is that the Browns' claim is barred by the statute of limitations. The ICFA contains a three-year statute of limitations which begins to run "when the plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Bradley v. Alpine Constr. Co.*, 224 Ill.App.3d 432, 166 Ill.Dec. 695, 586 N.E.2d 653, 655 (App.Ct.1991); *see also* 815 Ill. Comp. Stat. 505/10a(e). The burden is on the Browns to set forth sufficient facts to avoid the statute of limitations. *See Sommer v. United Sav. Life Ins. Co.*, 128 Ill.App.3d 808, 84 Ill.Dec. 77, 471 N.E.2d 606, 615 (App.Ct.1984). The Browns claim that a reasonable person should have known of an injury in 1995 when MONY sent the Browns a letter informing them that additional premiums of $18,477 annually were required for at least sixteen more years. MONY responds that the alleged injury should have become apparent when the Browns purchased the policy in 1990 or, alternatively, in 1992 when a MONY agent told the Browns that "things hadn't gone as well as expected," and an additional three years of premiums were required.

MONY calls this Court's attention to *In re The Northwestern Mutual Life Ins. Co. Sales Practices Litigation*, 70 F.Supp.2d 466, 485 (D.N.J.1999), in which the court held that the statute of limitations prohibited a plaintiff's ICFA claim because the plaintiff was on notice at the time he purchased his policy or during any number of subsequent years

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22801306
--- F.Supp.2d ---
(Cite as: 2003 WL 22801306 (D.Mass.))

Page 7

that he had been wrongfully injured. The court's decision was based in large part on the fact that the plaintiff "was practically deluged with documents" that contradicted the alleged misrepresentations by the defendant. *Id.* These documents included approximately 70 notices over a ten-year period, all of which "were concededly at odds with the alleged oral promise" of the defendant. *Id.* These facts contrast sharply with those of the present case. As already explained, the caveat language at issue here was not necessarily at odds with the alleged misrepresentations. In addition, the Browns were not deluged with documents over a ten-year period.

[10] Viewing the evidence in the light most favorable to the Browns, and drawing all reasonable inferences in their favor, this Court rules that a reasonable person should have known in 1995 that he suffered an injury of the type alleged in the complaint. No reasonable person would have known of the injury in 1990 when the policy was purchased. This is particularly true given the factual allegation that the illustrations themselves were artificially enhanced by a variety of manipulative accounting practices. In addition, the MONY sales agent's statement in 1992 demanding *three* additional years of payments is significantly different in cost and duration than MONY's 1995 letter demanding $18,477 annually for at least *sixteen* additional years. A reasonable person who is deceived into believing, as the Browns allege they were, that there was a small likelihood of future premium increases would not necessarily be on notice of the deception if only a small number of premium increases were demanded. This is true because a small number of increases is not necessarily inconsistent with the Brown's view that there was a small chance that additional premiums would be required. On the other hand, MONY's demand for sixteen years of additional premiums would signify to a reasonable person that, contrary to MONY's alleged representations during the sales presentation, there was a very high chance that additional premiums would be required. Given the large discrepancies between the 1992 and 1995 demands for additional payments, this Court rules that the statute of limitations does not bar the Browns' claim because a reasonable person would have known that he was wrongfully injured in 1995. The Browns' 1996 complaint in federal district court in Mississippi was therefore timely. MONY's motion for summary judgment as to the Browns is denied.

III. *CONCLUSION*

*7 MONY's motion for summary judgment is granted as to McLean and Driscoll because the doctrine of res judicata precludes their claims under 93A. MONY's motion for summary judgment is denied as to the Browns. The Browns have alleged sufficient evidence of deceptive practices under the ICFA and their claim is not barred by the statute of limitations.

SO ORDERED.

FN1. McLean and Driscoll raise one final argument that can be quickly addressed. The plaintiffs claim that they cannot be bound by *Goshen* because the class notice they received was inadequate. The notice was allegedly defective because it failed to warn absent class members that New York courts could rule against them regarding § 349. At oral argument, however, the plaintiffs conceded that the class notice in *Goshen* was in conformity with Due Process requirements. In addition, the notice specifically stated that "[i]f you are a member of the Class, you will be bound by any judgment in the Action, whether favorable or unfavorable." It is also noteworthy that McLean and Driscoll never objected to the class notice at any time during the seven years of the *Goshen* litigation. This Court therefore rules the plaintiffs' arguments regarding class notice to be without merit.

2003 WL 22801306, 2003 WL 22801306 (D.Mass.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

DEC -9 96

PATRICIA C. HOWARD
CLERK OF THE PANEL

## DOCKET NO. 1143

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK PREMIUM LITIGATION

*William J. McLean v. Mutual Life Insurance Co. of New York,*
D. Massachusetts, C.A. No. 1:96-10411
*Henry Gene Snipes, et al. v. Mutual Life Insurance Co. of New York,*
N.D. Mississippi, C.A. No. 4:95-400

### BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR.,* WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of two actions in the following federal districts: one action each in the District of Massachusetts and Northern District of Mississippi. Before the Panel is a motion by sole defendant The Mutual Life Insurance Company of New York (MONY) to centralize these actions, pursuant to 28 U.S.C. §1407, for coordinated or consolidated pretrial proceedings in the Southern District of New York, where MONY's headquarters is located. The Massachusetts plaintiff supports centralization in the New York court or, alternatively, in the District of Massachusetts, where an action is already pending. The Mississippi plaintiffs oppose centralization, on the grounds that i) only a minimal number of actions is pending, and ii) MONY is engaging in forum shopping; if the Panel deems centralization appropriate, these plaintiffs suggest the Northern District of Mississippi – where the first-filed action is pending – as transferee court.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact arising out of allegations that MONY fraudulently misled plaintiffs, and the overlapping nationwide classes they seek to represent, to purchase MONY insurance policies through the use of a scheme orchestrated from MONY's headquarters with policy illustrations and sales techniques showing that the premiums would "vanish" after a certain number of years. Centralization under Section 1407 in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, while accordingly being desirable in order to avoid duplication of discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary.

---

* Judge Merhige took no part in the decision of this matter.

- 2 -

We are persuaded that the District of Massachusetts is the appropriate transferee forum for this docket.[1] We note that i) one action is already pending there before Judge Harrington; and ii) Massachusetts is reasonably close and accessible to New York, where MONY's headquarters is located and a related New York state court action is pending.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned action pending in the Northern District of Mississippi be, and the same hereby is, transferred to the District of Massachusetts and, with the consent of that court, assigned to the Honorable Edward F. Harrington for coordinated or consolidated pretrial proceedings with the above-captioned action pending in that district.

FOR THE PANEL:

John F. Nangle
Chairman

---

[1] Judges Nangle and Bechtle dissent from this decision insofar as they would have selected the Southern District of New York as transferee district.